**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CLIFFORD G. MARTIN, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>WARNER CHILCOTT PUBLIC LIMITED COMPANY,<br><br>    Defendant. | Civ. No. 2:13-cv-4566<br>Hon. Esther Salas, U.S. D.J.<br>Hon. Joseph A. Dickson, U.S.M.J |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

BRODSKY & SMITH, LLC
Evan J. Smith
Marc L. Ackerman
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
610.667.6200
610.667.9029 (fax)

BROWER PIVEN
  A Professional Corporation
Brian C. Kerr
475 Park Avenue, 33rd Floor
New York, NY 10016
Tel: (212) 501-9000
Fax: (212) 501-0300

*Counsel for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ................................................................................................1

ARGUMENT ....................................................................................................................7

I.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED .................7

      A.    Legal Standard .........................................................................................7

      B.    The Settlement Meets the Legal Standard for Preliminary Approval .........9

II.   PRELIMINARY CERTIFICATION OF A CLASS IS APPROPRIATE............12

      A.    Standards Applicable to Class Certification ...............................................13

      B.    This Litigation Meets the Requirements of Rule 23(a) .............................14

            1.   The Class Is Sufficiently Numerous ....................................................14
            2.   There Are Common Questions of Law and Fact .................................14
            3.   The Proposed Representative Plaintiff's Claims Are Typical............15
            4.   The Proposed Class Representative Will Fairly and
                 Adequately Protect the Interests of the Class .....................................16

      C.    The Proposed Class Satisfies Rules 23(b)(1) and 23(b)(2) ......................16

III.  THE FORM AND MANNER OF NOTICE TO THE CLASS
      SHOULD BE APPROVED ...............................................................................18

IV.   PROPOSED SCHEDULE OF EVENTS ............................................................19

CONCLUSION ...............................................................................................................20

# TABLE OF AUTHORITIES

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................13

*Arnold v. Soc'y for Sav. Bancorp.*, 650 A.2d 1270  (Del. 1994)  ......................................10

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ...........................................................14, 15

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) .............................................12

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010)  ............................................8

*Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461 (E.D. Pa. 2000) ........................................14

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability
    Litigation*, 55 F.3d 768 (3d Cir. 1995) *cert. denied*, 516 U.S. 824 (1995) .............7, 13

*Hawker v. Consovoy*, 198 F.R.D. 619 (D.N.J. 2001).......................................................7, 8

*Henkel v. Battista*, C.A. No. 3419-VCN (Del. Ch. Dec. 16, 2008) ...................................10

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (HB), 2003 WL 21672085
    (S.D.N.Y. July 16, 2003) .............................................................................................16

*Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992)...............................15

*In re Ikon Office Solutions*, 191 F.R.D. 457 (E.D. Pa. 2000) ...........................................17

*Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982) ..................................................................16

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970)............................................................11

*Nagy v. Bistricer*, 770 A.2d 43 (Del. Ch. 2000) ..............................................................10

*In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171 (Del. Ch. 2007)  ...................11

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283
    (3d Cir. 1998).................................................................................................................16

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995)................8

*In re Pure Res. S'holders Litig.*, 808 A.2d 421 (Del. Ch. 2002) .................................10, 11

*In re Qiao Xing Sec. Litig.*, No. 07 Civ. 7097 (DLC), 2008 WL 872298
    (S.D.N.Y. Apr. 2, 2008).................................................................................................12

*In re State St. Bank & Trust Co. ERISA Litig.*, No. 07 Civ. 8488 (RJH), 2009 WL 3458705 (S.D.N.Y. Oct. 28, 2009) ...............................................................8

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001)......................................................14, 15

*Tandycrafts Inc. v. Initio Partners*, 562 A.2d 1162 (Del. 1989)........................................11

*In re Telectronics Pacing Sys.*, 137 F.Supp.2d 985 (S.D. Ohio 2001) ..............................8

*Turberg v. Arcsight, Inc.*, No. 5821-VCL (Del. Ch. Sept. 28, 2011) ..................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................18

*In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ............................................................................................18

*Wis. Inv. Bd. v. Bartlett*, 2002 Del. Ch. LEXIS 42 (Del. Ch. Apr. 9, 2002).....................11

## FEDERAL RULES AND STATUTES

28 U.S.C. § 1715(b) ....................................................................................................19, 20

Fed. R. Civ. P. 23 .................................................................................................. *passim*

## MISCELLANEOUS

Manual for Complex Litigation §21.633 (4th ed. 2010) ...............................................8

Manual for Complex Litigation §30.41 (3d ed. 1995).................................................8

Manual for Complex Litigation (4th) §21.632 (2004).................................................12

Manual for Complex Litigation (2nd) §30.44 (1985).................................................13

4 Newberg on Class Actions, § 11.25 (4th ed. 2002) ...................................................8

## PRELIMINARY STATEMENT

Plaintiff Clifford G. Martin ("Plaintiff") respectfully submits this memorandum of law in support of his unopposed motion pursuant to FED. R. CIV. P. 23(e) for authorization to provide notice of the proposed settlement with Defendant Warner Chilcott Public Limited Company ("Warner Chilcott," the "Company" or "Defendant"),[1] and to schedule a hearing for consideration of approval of the proposed Settlement. Specifically, through this motion, Plaintiff respectfully requests that the Court: preliminarily approve the Settlement by entry of the enclosed Order Setting Schedule, Certifying the Class, and Preliminarily Approving Proposed Settlement ("Preliminary Approval Order"). The Preliminary Approval Order will (i) preliminarily approve the Stipulation; (ii) preliminarily certify the Class; (iii) approve the form and manner of giving notice of the Settlement to the Class by direct mailing of the Notice of Pendency of Class Action, Proposed Settlement, And Settlement Hearing ("Settlement Notice");[2] and (iv) schedule a hearing for final approval of the Settlement and Plaintiff's counsel's motion for an award of attorneys' fees and litigation expenses.

As explained herein, Plaintiff's counsel are satisfied that the proposed Settlement is in the best interests of the Class and respectfully request that the Court preliminarily approve the Settlement and enter the Preliminary Approval Order.

## STATEMENT OF FACTS

On May 20, 2013, Warner Chilcott and Actavis, Inc. ("Actavis") announced that they had entered into an agreement ("Transaction Agreement") pursuant to which Actavis agreed to acquire

---

[1] All capitalized terms used and not otherwise defined herein shall have the same meaning as in the Stipulation and Agreement of Compromise, Settlement and Release, dated April 29, 2014 ("Stipulation" or "Settlement Agreement"), attached as Exhibit A to the accompanying Declaration of Brian C. Kerr ("Kerr Decl.").

[2] Attached to Stipulation as Exhibit B.

(and ultimately acquired) Warner Chilcott in a stock-for-stock "scheme of arrangement" under Irish law, pursuant to which Warner Chilcott shareholders received 0.160 shares in a new holding company incorporated in Ireland for each Warner Chilcott share that they owned (the "Transaction"). Kerr Decl. at ¶5.

On June 18, 2013, Actavis Limited filed a Registration Statement on Form S-4 with the United States Securities and Exchange Commission ("SEC"), which Form S-4 was amended and declared effective on July 31, 2013 ("S-4"). *Id.* at ¶6. The S-4 included a joint proxy statement of Actavis and Warner Chilcott and related public disclosures regarding the Transaction, which disclosures were provided to Warner Chilcott's shareholders in connection with shareholder votes on, among other things, whether to approve the proposed Transaction and related matters. *Id.* at ¶7.

On July 29, 2013, Plaintiff commenced the Action by filing a class action complaint, which alleges, among other things, that Warner Chilcott violated the federal securities laws by issuing an S-4 that omits certain material information, and sought, among other things, to enjoin the Transaction. *Id.* at ¶8.

On July 31, 2013, Actavis and Warner Chilcott announced that the S-4 had been declared effective and that Warner Chilcott had scheduled meetings on September 10, 2013 for shareholders to vote on whether to approve the proposed Transaction and related matters. *Id.* at ¶9.

On August 7, 2013, the parties executed an Agreed Confidentiality Stipulation and [Proposed] Protective Order to govern discovery in the Action, and, in response to requests by Plaintiff, Warner Chilcott produced to Plaintiff document discovery concerning the Transaction. *Id.* at ¶10.

Throughout mid-August 2013, counsel for the parties engaged in arms'-length discussions regarding the allegations made by Plaintiff in the Action. *Id.* at ¶11. In connection with such

discussions and negotiations regarding a potential resolution of the Action, counsel to the parties negotiated various supplemental disclosures to be filed with the SEC by Warner Chilcott on a Current Report on Form 8-K. *Id.*

On August 22, 2013, Warner Chilcott and Plaintiff entered into a memorandum of understanding ("MOU") setting forth the material terms of the Settlement, which included an agreement by Warner Chilcott that it would make certain supplemental disclosures ("Supplemental Disclosures"), as reflected in Exhibit A to the Stipulation, in a Form 8-K filed with the SEC. *Id.* at ¶12.  Also on August 22, 2013, Warner Chilcott filed a Form 8-K with the SEC containing the Supplemental Disclosures. The Supplemental Disclosures included, among other things:

- Details concerning Warner Chilcott and Actavis' prior dealings in the period that preceded the proposed Transaction.

- Disclosure of the details concerning Warner Chilcott's strategic review process that they conducted in early 2012, including, the nature of the market interest in acquiring the Company and the efforts made by the Company.

- Details concerning meetings that occurred between Warner Chilcott and Actavis during the period that led to the Proposed Transaction.

- Specific details concerning the risks to Warner Chilcott of remaining a stand alone business (and not selling itself to Actavis).

- Disclosure of the synergies available to Actavis in acquiring the Company.

- The specific companies selected by Deutsche Bank, which it presented to the Board, in its *Public Trading Comparable Analysis – Warner Chilcott*.

- The specific multiples observed by Deutsche Bank for each of the companies selected for its *Public Trading Comparable Analysis – Warner Chilcott*.

- The specific companies selected by Deutsche Bank, which it presented to the Board, in its *Public Trading Comparable Analysis – Actavis*.

- The specific multiples observed by Deutsche Bank for each of the companies selected for its *Public Trading Comparable Analysis – Actavis*.

- The breadth of analysts considered by Deutsche Bank in its analysis of *Analysts Price Targets – Warner Chilcott*.

3

- The selection criteria utilized by Deutsche Bank in its *Precedent Transaction Analysis*, including the timing, and size of the transactions as well as the specific industry of the selected transactions.

- The specific multiples observed by Deutsche Bank for each of the transactions selected for its *Precedent Transaction Analysis*.

- The breadth of analysts considered by Deutsche Bank in its analysis of *Analysts Price Targets – Actavis*.

- The breadth of analysts considered by Deutsche Bank in its analysis of *Analysts Price Targets – Warner Chilcott*.

- Disclosure of Deutsche Bank's utilization of unaffected prices for its *Transaction Premia Analysis.*

- Disclosure of Deutsche Bank's *Illustrative Value Creation Analysis Based on Trading Multiples* relative to both Warner Chilcott and Actavis and the specific details relevant thereto.

- Disclosure of the specific implied multiples observed for each of the companies included in the *Selected Publicly Traded Companies Analysis – Warner Chilcott* conducted by BofA Merrill Lynch.

- Disclosure of the specific implied multiples observed for each of the companies included in the *Selected Publicly Traded Companies Analysis – Actavis* conducted by BofA Merrill Lynch.

- Disclosure of the specific financial information considered by BofA Merrill Lynch in its *Selected Precedent Transactions Analysis.*

- Disclosure of the specific Enterprise Value/LTM EBITDA observed by BofA Merrill Lynch for each of the transactions considered in its *Selected Precedent Transactions Analysis.*

- The specific EV/EBIDTA and Price to Earnings multiples observed by Greenhill for each of the companies selected for its *Selected Company Analysis.*

- The inputs utilized and considered by Greenhill in its *Precedent Transaction Analysis*.

- The specific multiples observed by Greenhill for each of the transactions selected for its *Precedent Transaction Analysis*.

- The specific transactions, their respective implied premiums, and the material details of the transactions considered by Greenhill in its *Premiums Paid Analyses.*

*Id.* at ¶13.

4

In addition, on August 22, 2013, a second purported shareholder of the Company filed a putative class action lawsuit, captioned *Purnell v. Warner Chilcott Public Ltd. Co.*, Case No. 2.13-cv-5035-WJM-MF, asserting substantially identical claims as the previously filed *Martin* complaint. *Id.* at ¶14. On August 26, 2013, the plaintiff in the *Purnell* litigation voluntarily dismissed that litigation. *Id.*

On September 10, 2013, Warner Chilcott announced that its stockholders had approved the Transaction Agreement and the Transaction. *Id.* at ¶15. On October 1, 2013, Actavis and Warner Chilcott completed the Transaction and, as a result, Warner Chilcott became a wholly owned subsidiary of Actavis. *Id.* at ¶16.

Following the execution of the MOU, Plaintiff's counsel conducted additional discovery to confirm the reasonableness of the terms of the parties' agreement, including taking the depositions of David A. Levin, a managing director of Deutsche Bank (Warner Chilcott's financial advisor in connection with the Transaction) and James H. Bloem, a former director of Warner Chilcott. *Id.* at ¶17.

After the satisfactory conclusion of confirmatory discovery, on April 29, 2014, the parties executed the Settlement Agreement. *Id.* at ¶18.

Prior to entering into the Settlement Agreement, Plaintiff's counsel reviewed and analyzed the facts and circumstances relating to the claims asserted, as known by Plaintiff and his counsel to date, including conducting arm's-length discussions with Warner Chilcott's counsel, analyzing non-public documents produced by Warner Chilcott and documents obtained through public sources, applicable case law, and other authorities, and taking the depositions of Mr. Levin and Mr. Bloem. *Id.* at ¶19. Based upon this investigation, Plaintiff decided to enter into the Stipulation and settle the Action after taking into account, among other things, (i) that the litigation of the Action and the Settlement have delivered substantial benefits to the Class (as defined below);

(ii) the facts developed during discovery; (iii) the attendant risks of continued litigation and the uncertainty of the outcome of the Action; (iv) the probability of success on the merits and the allegations made by Plaintiff, including the uncertainty relating to proof of those allegations; and (v) the desirability of permitting the Settlement to be consummated as provided by the terms of the Stipulation. *Id.*

Plaintiff now submits the Preliminary Approval Order providing for, among other things, the scheduling of the Settlement Hearing; the conditional certification, for settlement purposes only, of a class consisting of any and all record holders and beneficial owners of ordinary shares of Warner Chilcott (which are traded on the NASDAQ) who held such shares at any time during the period beginning on February 1, 2012 through and including October 1, 2013 ("Class Period"), including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, assigns and transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors in interest, predecessors, successors in interest, successors, and assigns, but excluding (a) Warner Chilcott; and (b) any member of the class who has validly and timely requested exclusion from the class (the "Class").

## ARGUMENT

## I.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.   Legal Standard

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is within the Court's discretion, to be exercised in accordance with a public policy that strongly favors pretrial settlement of complex class action lawsuits. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592 (3d Cir. 2010) ("a strong public policy exists, which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation"); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 784 (3d Cir.) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"), *cert. denied*, 516 U.S. 824 (1995). Settlement of complex class actions minimizes the parties' litigation expenses and reduces the strain such litigation imposes on scarce judicial resources. *Ehrheart*, 609 F.3d at 595. ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts. In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.").

"In deciding whether to approve a settlement, the court must carefully balance two competing interests: 'On the one hand, the Court must scrupulously ensure that the proposed settlement is in the best interests of class members by reference to the best possible outcome. On the other hand, the court must not hold counsel to an impossible standard, as settlement is virtually always a compromise.'" *Hawker v. Consovoy*, 198 F.R.D. 619, 627 (D.N.J. 2001). While Rule 23 requires courts to "act as fiduciaries for the absent class members, [it] does not vest [the Court] with broad powers to intrude upon the parties' bargain." *Ehrheart*, 609 F.3d at 592.

After the parties reach a proposed class action settlement, the court should approve the settlement if it is "fair, reasonable and adequate." *Hawker*, 198 F.R.D. at 627; *see also Ehrheart*,

609 F.3d at 592 ("a district court determines whether the settlement is fundamentally fair, reasonable, and adequate").

Federal courts apply a two-step procedure for class action settlements – *i.e.*, before holding a hearing on final approval, federal courts first "make a preliminary determination on the fairness, reasonableness, and adequacy of settlement terms." *See* MANUAL FOR COMPLEX LITIGATION §21.633 (4th ed. 2010). The preliminary approval stage allows the Court to determine whether the proposed settlement is within the range of reasonableness and thus, whether notice to the class of the terms and conditions and the scheduling of a formal fairness hearing is worthwhile. 4 NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Telectronics Pacing Sys.*, 137 F.Supp.2d 985 (S.D. Oh. 2001); *see* MANUAL FOR COMPLEX LITIGATION §30.41 (3d ed. 1995)); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (at preliminary approval stage, "the Court need only find that the proposed settlement fits 'within the range of possible approval'") (citation omitted); *see also In re State St. Bank & Trust Co. ERISA Litig.*, No. 07 Civ. 8488 (RJH), 2009 WL 3458705, at *1 (S.D.N.Y. Oct. 28, 2009) ("preliminary approval is 'at most a determination that there is what might be termed "probable cause" to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness'").

**B.    The Settlement Meets the Legal Standard for Preliminary Approval**

The Settlement here (as memorialized in the Stipulation) was reached after lengthy arm's length negotiations. Plaintiff's counsel conducted a thorough investigation of the facts (including a review of publicly available documents comprised of newspaper articles, online publications, SEC filings, and analyst reports), researched the legal claims, prepared and filed the Complaint,

8

reviewed documents obtained from Defendant and, in confirmatory discovery, took the depositions of David A. Levin, a managing director of Deutsche Bank (Warner Chilcott's financial advisor in connection with the Transaction) and James H. Bloem, a former director of Warner Chilcott. In sum, Plaintiff's counsel had a clear and well-developed understanding of the strengths and weaknesses of their case before finalizing the proposed Stipulation.

Moreover, the risks associated with continued litigation, as well as the complexity, expense and duration of the litigation, strongly weigh in favor of preliminary approval. If the Action had continued, Plaintiff faced substantial challenges in establishing that the Defendant made untrue statements and omissions in violation of the federal proxy rules. Even assuming that Plaintiff had prevailed on the liability issues at trial, a jury would still have to find that any damages were attributable to Defendant's alleged misstatements or omissions. Although Plaintiff believes that he ultimately would have been able to prove his claims, Plaintiff and his counsel have also weighed the risk that the litigation could result in members of the Class receiving no consideration for their shares at all.

When balanced against the risk and expense of continued litigation, the Settlement provides material benefits to the Class that fall squarely within the range of what may be considered fair, reasonable and adequate. Specifically, the Supplemental Disclosures relating to the background of the Transaction enabled Warner Chilcott shareholders to evaluate the sufficiency of the sales process conducted by the Company, including its respective efforts and interactions with potential acquirers during that process. *See* Order & Final Judgment, *Henkel v. Battista*, C.A. No. 3419-VCN (Del. Ch. Dec. 16, 2008) (approving settlement for disclosures of information pertaining to the sales process conducted by the board); *see also Nagy v. Bistricer*, 770 A.2d 43, 60 (Del. Ch. 2000) (stating that information concerning the "process [directors] used in coming to their decision to support the Merger . . . . is self-evidently material to [a stockholder's] decision whether to accept

9

the merger consideration or to seek appraisal"); *see also Arnold v. Soc'y for Sav. Bancorp.*, 650 A.2d 1270, 1280 (Del. 1994).

In addition, the Supplemental Disclosures provided information relating to the companies and transactions selected by the respective bankers, including the respective multiples for the universe of peer companies, precedent transactions and the premiums paid in the various comparables analyzed by the bankers. This market context rendered the analyses understandable, as having the ability to compare the multiples the bankers selected to those observed for the selected comparable companies and transactions was important to understanding the resulting indications of value for Warner Chilcott. *See Turberg v. Arcsight, Inc.*, No. 5821-VCL, Transcript of Proceedings (Del. Ch. Sept. 28, 2011) ("The additional information is information that, I think, if you were to consider what really constitutes a fair summary, then the background multiples should be in there, just like they're in there when you give them to the board."); *see also In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203-04 (Del. Ch. 2007) (holding that "when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and the range of ultimate values generated by those analyses must also be fairly disclosed"); *In re Pure Res. S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002) (noting that the "real informative value of the banker's work is not in its bottom-line conclusion, but in the valuation analysis that buttresses that result.").

The Supplemental Disclosures benefited Warner Chilcott shareholders by fully informing them about the material facts related to the Transaction, including, the sufficiency of the sales process and merger consideration, as well as the work performed by the bankers and how it

supported their respective fairness opinions.[3] *See, e.g., Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395-96 (1970) (recognizing that "an increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a [stockholder's action] . . . [involving] 'corporate therapeutics'"); *Wis. Inv. Bd. v. Bartlett*, 2002 Del. Ch. LEXIS 42 (Del. Ch. Apr. 9, 2002) (recognizing that enhanced disclosures benefit shareholders); *Tandycrafts Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989) (recognizing that the benefit of a settlement "need not be measurable in economic terms. Changes in corporate policy or . . . a heightened level of corporate disclosure, if attributable to the filing of a meritorious suit, may justify an award of counsel fees."). These factors therefore favor preliminary approval.

In sum, nothing in the course of the Action, the Settlement negotiations or the terms of the Stipulation itself raise any questions as to the proposed Settlement's fairness. Counsel has assessed the strengths and weaknesses of this case and the comparative benefits of the proposed Settlement, and based on their considerable experience prosecuting similar claims on behalf of shareholders, they are satisfied that the proposed Settlement achieved here is fair, reasonable, and in the best

_____

[3] As a general rule:

> [W]hen a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Only providing some of that information is insufficient to fulfill the duty of providing a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the board as to how to vote . . . rely.

*Netsmart*, 924 A.2d at 203-04 (quotation and footnote omitted); *see also Pure Res.*, 808 A.2d at 449 ("The real informative value of the banker's work is not in its bottom-line conclusion, but in the valuation analysis that buttress that result."; "[I]nvestment bankers' analyses . . . usually address the most important issue to stockholders – the sufficiency of the consideration being offered to them for their shares in a merger or tender offer.").

interests of Warner Chilcott's shareholders. Thus, Plaintiff respectfully requests that the Stipulation be preliminarily approved.

## II.    PRELIMINARY CERTIFICATION OF A CLASS IS APPROPRIATE

For purposes of the Stipulation, the parties have stipulated to the certification of a Class defined as follows:

> any and all record holders and beneficial owners of ordinary shares of Warner Chilcott (which were traded on the NASDAQ) who held such shares at any time during the period beginning on February 1, 2012 through and including October 1, 2013 (the "Class Period"), including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, assigns and transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors in interest, predecessors, successors in interest, successors, and assigns, but excluding (a) Warner Chilcott; and (b) any member of the class who has validly and timely requested exclusion from the class (the "Class").

*See* Kerr Decl. at Ex. A.

Because Plaintiff seeks class certification in the context of preliminary approval, the Court need only preliminarily certify the Class now, subject to further inquiry or review, to the extent any issues may later arise, at the final approval hearing. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding that "conditional certification survives the 2003 amendment to Rule 23(c)(1)"); *In re Qiao Xing Sec. Litig*., No. 07 Civ. 7097 (DLC), 2008 WL 872298, at *1 (S.D.N.Y. Apr. 2, 2008) (granting preliminary class certification subject to review at final approval hearing); MANUAL FOR COMPLEX LITIGATION (4th) §21.632 (2004) ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."). As noted by the Third Circuit Court of Appeals, "[the] preliminary determination establishes an initial presumption of fairness". *GMC,* 55 F.3d at 785. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing" MANUAL FOR COMPLEX LITIGATION (2nd) §30.44 (1985).

Plaintiff requests that the Court preliminarily certify the Class, which satisfies the certification requirements set forth in Rule 23(a) and (b).

### A.    Standards Applicable to Class Certification

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a).

In addition to demonstrating that the requirements of Rule 23(a) are met, Plaintiff must also establish that at least one subsection of Rule 23(b) is satisfied. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Here, the proposed Class satisfies both Rules 23(b)(1) and 23(b)(2).

Under Rule 23(b)(1), a class may be certified if prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class. FED. R. CIV. P. 23(b)(1)(A). In addition, where defendant is alleged to have "acted . . . on grounds that apply generally to the class," making final equitable relief with respect to the whole Class appropriate, the requirements of Rule 23(b)(2) are satisfied. FED. R. CIV. P. 23(b)(2).

13

Thus, the Class should be certified once Plaintiff establishes that his claims satisfy the prerequisites of Rule 23(a) and (b). The proposed Class in this case satisfies each of these prerequisites.

**B.     This Litigation Meets the Requirements of Rule 23(a)**

**1.     The Class Is Sufficiently Numerous**

Certification under Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable." FED. R. CIV. P. 23(a)(l). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d Cir. 2001). "Class size only need be large enough that it makes joinder impracticable." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). As of July 30, 2013, according to the definitive proxy statement, there were approximately 251.198 million shares of Warner Chilcott outstanding. It is likely that there are thousands of Class members located throughout the world. The number of Class members and their geographic disbursement makes joinder impracticable, and the threshold for numerosity is easily exceeded. Plainly, the proposed Class satisfies the numerosity requirement of Rule 23(a)(1).

**2.     There Are Common Questions of Law and Fact**

The commonality requirement is satisfied if the named plaintiff shares at least one question of fact or law in common with the class. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). "Because the requirement may be satisfied by a single common issue, it is easily met." *Fry*, 198 F.R.D. at 467. Clearly, there are questions of law and fact common to the Settlement Class, the resolution of which would advance the litigation. *See id.* at 467 (existence of single common issue sufficient for certification).

This case presents many common questions of both law and fact, including, among other things: (i) whether Defendant violated Section 14 of the Exchange Act in connection with the Transaction; (ii) whether Plaintiff and the other members of the Class would suffer irreparable injury were the alleged omissions not corrected before the shareholder vote on the Transaction; and (iii) whether Plaintiff and the other members of the Class would suffer irreparable injury were the alleged omissions not corrected before the Transaction was implemented.

Based on the foregoing, the "commonality" requirement is satisfied.

### 3.    The Proposed Representative Plaintiff's Claims Are Typical

The typicality requirement "centers on whether the interests of the named plaintiffs align with the interests of the absent members." *Stewart*, 275 F.3d at 227. It is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Cases challenging the same unlawful conduct that affects both the named plaintiffs and the class usually satisfy the typicality requirement, even if varying fact patterns may underlie individual claims. *Baby Neal*, 43 F.3d at 58. A claim will not be deemed atypical if it "arises from the same event or practices or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992).

Here, like each member of the Class, Plaintiff held shares in Warner Chilcott and was similarly affected by Defendant's alleged wrongful conduct in violation of the federal securities laws. Thus, Plaintiff's claims arise from the same course of conduct that gives rise to the claims of every other Class member who held shares in the Company, and they will focus on the same alleged misrepresentations and omissions, and assert the same legal theories, in proving Defendant's liability. *See id.* at 923. As such, Plaintiff satisfies the typicality requirement.

### 4.    The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Protecting the interests of the class involves two factors: the representative plaintiff's attorneys must be qualified, experienced, and generally able to conduct the proposed litigation, and he or she must not have interests antagonistic to those of the class. *See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. N.J. 1998); *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).

Plaintiff's interests are directly aligned with the interests of the Class who collectively held shares in Warner Chilcott and were affected by the same material untrue statements and omissions. *See Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (HB), 2003 WL 21672085, at *3 (S.D.N.Y. July 16, 2003) (finding proposed class representative adequate where the complaint alleged "a common course of conduct and a unitary legal theory for the entire class period – that is, Defendants issued prospectuses and registration statements that contained false statements"). Plaintiff has also demonstrated a commitment to monitor and supervise the prosecution of this action on behalf of the interests of the Class. Plaintiff has received regular status updates, participated in strategic decisions and has retained experienced counsel.

Moreover, Plaintiff's counsel is qualified and capable of prosecuting this Action. Brower Piven has been prosecuting securities class actions for years and has a proven track record of success in complex securities class actions such as this. *See* Kerr Decl., Exhibit B. Therefore, Rule 23(a)(4) is satisfied.

### C.    The Proposed Class Satisfies Rules 23(b)(1) and 23(b)(2)

Under Rule 23(b)(1), a class may be certified if:

(1)    prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

FED. R. CIV. P. 23(b)(1). Thus, Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re Ikon Office Solutions*, 191 F.R.D. 457, 466 (E.D. Pa. 2000).

Here, Rule 23(b)(1)(A) is satisfied. As stated above, according to the definitive proxy statement, there were approximately 251.198 million shares of Warner Chilcott outstanding. It is likely that there are thousands of Class members located throughout the world. In the absence of class certification there is potential for a large number of individual cases based on the same underlying facts, creating a high risk of inconsistent or varying adjudications that would establish incompatible standards of Defendants conduct. *Ikon*, 191 F.R.D. at 466 (finding a "risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether Ikon had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions"). Moreover, the claims Plaintiff alleges on behalf of the proposed Class are derived from core issues that are not individual in nature: whether the Form S-4 that was filed was materially complete and accurate.

In addition, where Defendant are alleged to have "acted . . . on grounds that apply generally to the class," making final equitable relief with respect to the whole Class appropriate, Rule 23(b)(2) is satisfied. FED. R. CIV. P. 23(b)(2). Here, the claims against Defendant involve one set of actions by Defendant creating a uniform type of impact upon the Class.

Thus the proposed Class satisfies the requirements of both Rule 23(b)(1) and Rule 23(b)(2)

## III.   THE FORM AND MANNER OF NOTICE TO THE CLASS SHOULD BE APPROVED

Federal Rule of Civil Procedure 23(e)(1) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal" (i.e., the proposed Settlement). FED. R. CIV. P. 23(e)(1). Here, the parties negotiated the form of the Settlement Notice to be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort from or through Defendant's records. The Settlement Notice is attached to the Stipulation as Exhibit C.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." FED. R. CIV. P. 23(h)(1). Here, the Settlement Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class members that Plaintiff's Counsel will apply to the Court for attorneys' fees and expenses of no more than $325,000. *See* Stipulation at Ex. C.

Accordingly, the Settlement Notice "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). Similarly, the manner of providing notice represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

Although there is no governmental entity participating in this matter as of this time, full and complete notice is being provided to all appropriate state and federal authorities. Defendant will provide such notice which will include all appropriate information and documents required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b).

## IV.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Stipulation, the parties are requesting the

Court to establish dates by which the Settlement Notice will be sent to potential Class members

and by which Class members may object to the Stipulation, and to set the final approval hearing

date. The following schedule is proposed:

| | |
|---|---|
| Notice mailed to all Class members | At least seventy-five (75) calendar days prior to the Settlement Hearing |
| Deadline for requests for exclusion | No later than sixty (60) calendar days after the date on the Notice |
| Deadline for proof of mailing of Notice to be filed with the Court | At least fourteen (14) calendar days prior to the Settlement Hearing |
| Deadline for submission in support of final approval of the Settlement and attorneys' fees and expenses | At least fourteen (14) calendar days prior to the deadline for Class members to object to the Settlement |
| Deadline to object to the Settlement | At least fourteen (14) calendar days prior to the Settlement Hearing |
| Deadline for replies to objections to the Settlement | At least seven (7) calendar days prior to the Settlement Hearing |
| Settlement Hearing | At the Court's convenience, but no sooner than the later of:<br>• seventy-five (75) calendar days after the date on the Notice;<br>• one hundred (100) calendar days after the filing of this Motion to allow the parties to comply with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), (d) ("Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement . . ."; "An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)."). |

19

This schedule is similar to those used in numerous class action settlements and provides due process to members of the Class with respect to their rights concerning the Stipulation.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order that will (i) preliminarily approve the Settlement; (ii) preliminarily certify the Class for settlement purposes only; (iii) approve the form and manner of giving notice of the Settlement to the Class; and (iv) schedule a date and time for the Settlement Hearing to consider approval of the Settlement and related matters following an opportunity for the Class members to be heard.

Dated: May 29, 2014

BRODSKY & SMITH, LLC
Evan J. Smith
Marc L. Ackerman
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
610.667.6200
610.667.9029 (fax)

BROWER PIVEN
  A PROFESSIONAL CORPORATION


By:   /s/ *Brian C. Kerr*
Brian C. Kerr
475 Park Avenue South, 33d Floor
New York, NY 10016
Tel:  (212) 501-9000

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Evan J. Smith, hereby certify that on May 29, 2014, I caused the foregoing Plaintiff's

Memorandum of Law in Support of Preliminary Approval of Proposed Class Action Settlement to

be served on the following:

All counsel registered on ECF.

_____ /s/ <em>Evan J. Smith</em> _____<br>Evan J. Smith