# EXHIBIT A

**Execution Copy**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLIFFORD G. MARTIN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>WARNER CHILCOTT PUBLIC LIMITED COMPANY, et al.,<br><br>    Defendant, | Civ. No. 2:13-cv-4566<br>Hon. Esther Salas, U.S. D.J.<br>Hon. Michael A. Hammer, U.S.M.J. |

## STIPULATION AND AGREEMENT OF
## <u>COMPROMISE, SETTLEMENT, AND RELEASE</u>

Plaintiff Clifford G. Martin ("Plaintiff") and defendant Warner Chilcott Public Limited Company ("Warner Chilcott"), an Irish company, by and through their respective attorneys, have entered into this Stipulation and Agreement of Compromise, Settlement, and Release (the "Stipulation" or the "Settlement"), and hereby submit this Stipulation for approval by the United States District Court for the District of New Jersey (the "Court"), which Stipulation provides for the settlement of the class action styled *Martin v. Warner Chilcott Public Limited Company*, Civ. No. 2:13-cv-4566-ES-MAH (the "Action") on the terms and subject to the conditions set forth below:

**WHEREAS**:

A.  On May 20, 2013, Warner Chilcott and Actavis, Inc. ("Actavis") announced that they had entered into an agreement (the "Transaction Agreement") pursuant to which Actavis agreed to acquire (and ultimately acquired) Warner Chilcott in a stock-for-stock "scheme of arrangement" under Irish law, pursuant to which Warner Chilcott shareholders received 0.160

**Execution Copy**

shares in a new holding company incorporated in Ireland for each Warner Chilcott share that they owned (the "Transaction");

B.      On June 18, 2013, Actavis Limited filed a Registration Statement on Form S-4 with the United States Securities and Exchange Commission (the "SEC"), which S-4 was amended and declared effective on July 31, 2013 (the "S-4");

C.      The S-4 included a joint proxy statement of Actavis and Warner Chilcott and related public disclosures regarding the Transaction, which disclosures were provided to Warner Chilcott's shareholders in connection with shareholder votes on, among other things, whether to approve the proposed Transaction and related matters;

D.      On July 29, 2013, Plaintiff commenced the Action by filing a class action complaint, which (a) alleges, among other things, that Warner Chilcott violated the federal securities laws by issuing an S-4 that omits certain material information; and (b) sought, among other things, to enjoin the Transaction;

E.      On July 31, 2013, Actavis and Warner Chilcott announced, among other things, that the S-4 had been declared effective and that Warner Chilcott had scheduled meetings on September 10, 2013 for shareholders to vote on, among other things, whether to approve the proposed Transaction and related matters;

F.      On August 7, 2013, the Parties executed an Agreed Confidentiality Stipulation and [Proposed] Protective Order to govern discovery in the Action, and, in response to requests by Plaintiff, Warner Chilcott produced to Plaintiff certain document discovery concerning the Transaction;

G.      Throughout mid-August 2013, counsel for the Parties engaged in arms'-length discussions regarding the allegations made by Plaintiff in the Action.  In connection with such

- 2 -

Execution Copy

discussions and negotiations regarding a potential resolution of the Action, counsel to the Parties negotiated various supplemental disclosures to be filed with the SEC by Warner Chilcott on a Current Report on Form 8-K;

H.     On August 22, 2013, Warner Chilcott and Plaintiff (together, the "Parties") entered into a memorandum of understanding (the "MOU") setting forth the material terms of the Settlement, which included an agreement by Warner Chilcott that it would make certain supplemental disclosures (the "Supplemental Disclosures"), as reflected in Exhibit A hereto, in a Form 8-K filed with the SEC;

I.     Also on August 22, 2013, Warner Chilcott filed a Form 8-K with the SEC containing the Supplemental Disclosures;[1]

J.     Prior to executing the MOU and negotiating all other material terms of this Stipulation, the Parties did not discuss the amount of attorneys' fees and expenses to be awarded to Plaintiff's Counsel (as defined below);

K.     On September 10, 2013, Warner Chilcott announced that its stockholders had approved the Transaction Agreement and the Transaction;

L.     On October 1, 2013, Actavis and Warner Chilcott completed the Transaction and, as a result, Warner Chilcott became a wholly owned subsidiary of Actavis plc;

M.     Following the execution of the MOU, Plaintiff's Counsel (as defined below) conducted additional discovery to confirm the reasonableness of the terms of the Parties' agreement, including taking the depositions of David A. Levin, a managing director of Deutsche

---

[1] In addition, on August 22, 2013, a second purported shareholder of the Company filed a putative class action lawsuit, captioned *Purnell v. Warner Chilcott Public Ltd. Co.*, Case No. 2.13-cv-5035-WJM-MF, asserting substantially identical claims as the previously filed *Martin* complaint. On August 26, 2013, the plaintiff in the *Purnell* litigation voluntarily dismissed that litigation.

- 3 -

**Execution Copy**

Bank (Warner Chilcott's financial advisor in connection with the Transaction) and James H. Bloem, a former director of Warner Chilcott;

N.      Plaintiff represents that he brought his claims in good faith and continues to believe that those claims have legal merit, and that the entry by Plaintiff into this Stipulation is not an admission as to the lack of any merit of any claims asserted in the Action;

O.      Warner Chilcott has denied, and continues to deny, all allegations of wrongdoing, fault, liability, or damage to Plaintiff or the Class (as defined below), denies that it engaged in any wrongdoing, denies that it committed any violation of law, denies that the S-4 or any other public disclosures were in any way deficient, denies that it acted improperly in any way, believes that it acted properly at all times, believes the Action has no merit, and maintains that it has committed no violation of law whatsoever in connection with the Transaction, but wishes to settle the Action in order to, among other things, (i) eliminate the burden, inconvenience, expense, risk, and distraction of further litigation; (ii) finally put to rest and terminate all of the claims that were or could have been asserted against it; and (iii) thereby permit the Transaction to proceed without risk of injunctive or other relief;

P.      Plaintiff's Counsel have reviewed and analyzed the facts and circumstances relating to the claims asserted, as known by Plaintiff and his counsel to date, including conducting arm's-length discussions with Warner Chilcott's counsel, analyzing non-public documents produced by Warner Chilcott and documents obtained through public sources, applicable case law, and other authorities, consulting with an independent financial expert, and taking the depositions of Mr. Levin and Mr. Bloem.  Based upon this investigation, Plaintiff decided to enter into the Stipulation and settle the Action after taking into account, among other things, (i) that the litigation of the Action and the Settlement have delivered substantial benefits

- 4 -

**Execution Copy**

to the Class (as defined below); (ii) the facts developed during discovery; (iii) the attendant risks of continued litigation and the uncertainty of the outcome of the Action; (iv) the probability of success on the merits and the allegations made by Plaintiff, including the uncertainty relating to proof of those allegations; and (v) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation; and

Q.     All Parties have concluded that the terms contained in this Stipulation are fair and adequate to Warner Chilcott, its stockholders, and members of the Class and that it is reasonable to settle the Action based upon the procedures and terms outlined herein and the benefits and protections offered hereby.

**NOW, THEREFORE, IT IS STIPULATED AND AGREED**, subject to approval by the Court, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), for good and valuable consideration, that the Action shall be dismissed with prejudice as to Warner Chilcott and against all members of the Class (as defined below), and all Released Claims (as defined below) shall be completely, fully, finally, and forever compromised, settled, released, discharged, extinguished, and dismissed with prejudice and without costs (except as provided by Paragraphs 8 and 13), as to all Released Parties (as defined below), upon the following terms and conditions:

## DEFINITIONS

1.     In addition to the terms defined above, the following additional terms shall have the meanings specified below:

1.1.     "Class" means an opt-out class, for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), of any and all record holders and beneficial owners of ordinary shares of Warner Chilcott (which are traded on the NASDAQ)

- 5 -

**Execution Copy**

who held such shares at any time during the period beginning on February 1, 2012 through and including October 1, 2013 (the "Class Period"), including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, assigns and transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors in interest, predecessors, successors in interest, successors, and assigns, but excluding (a) Warner Chilcott; and (b) any member of the class who has validly and timely requested exclusion from the class.

1.2.    "Final Court Approval" means the date on which the Order and Final Judgment (as defined below) approving the Settlement and dismissing the Action with prejudice becomes final and no longer subject to further appeal or review, whether by the passage of time, affirmance on appeal, or otherwise.

1.3.    "Notice" means the Notice of Pendency and Settlement of Class Action, substantially in the form attached hereto as Exhibit C.

1.4.    "Order and Final Judgment" means an order or orders entered by the Court, substantially in the form attached hereto as Exhibit D, approving this Settlement and dismissing the Action with prejudice and without costs to either Party (except as provided in Paragraphs 8 and 13 below).

1.5.    "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government, or any political subdivision or agency thereof, or any other business or legal entity.

- 6 -

#84066073v6

**Execution Copy**

1.6.     "Plaintiff's Counsel" means the law firms Brower Piven, A Professional Corporation, and Brodsky & Smith, LLC.

1.7.     "Released Claims" means any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims (as defined below), that Plaintiff or any or all other members of the Class ever had, now has, or may have, whether direct, derivative, individual, class, representative, legal, equitable or of any other type, or in any other capacity, based on his, her, or its ownership of Warner Chilcott ordinary shares during the Class Period, against any of the Released Parties (as defined below), whether based on state, local, foreign, federal, statutory, regulatory, common or other law or rule, which arise out of, relate in any way to, or involve any of the actions, transactions, occurrences, statements, representations, misrepresentations, omissions, allegations, facts, practices, events, claims or any other matters, things or causes whatsoever, that have been, could have been, or in the future can or might be alleged, asserted, set forth, claimed, embraced, involved, or referred to in, or related to, the Action or the Transaction; provided, however, that the Released Claims shall not include the right to enforce this Stipulation or the Settlement.

1.8.     "Released Parties" means, whether or not any or all of the following persons or entities were named, served with process, or appeared in the Action:  (i) Warner Chilcott Public Limited Company, James H. Bloem, Roger M. Boissonneault, John P. Connaughton, Paul

- 7 -

**Execution Copy**

Herendeen, Tamar D. Howson, John A. King, Patrick J. O'Sullivan, Deutsche Bank Securities Inc., Actavis Limited, Actavis, Inc., Bank of America Merrill Lynch, and Greenhill & Co.; (ii) any person or entity which is or was related to or affiliated with any or all of the foregoing or in which any or all of them has or had a controlling interest, and which is or was involved in the Transaction; and (iii) the respective past or present family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, foundations, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, shareholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, underwriters, brokers, dealers, lenders, commercial bankers, attorneys, personal or legal representatives, accountants, insurers, co-insurers, reinsurers, and associates, of each and all of the foregoing.

    1.9.    "Preliminary Approval Order" means an order in substantially the form attached hereto as Exhibit B providing for, among other things, preliminary approval of the Settlement, certification of the Class for settlement purposes, approval of the Notice, and scheduling of the Settlement Hearing (as defined below).

    1.10.    "Settlement Hearing" means the hearing or hearings at which the Court will consider, among other things, the fairness, reasonableness, and adequacy of the Settlement, the entry of the Order and Final Judgment, and an award of attorneys' fees and expenses payable to Plaintiff's Counsel.

- 8 -

**Execution Copy**

1.11.   "Unknown Claims" means any and all claims that Plaintiff or any other member of the Class do not know or suspect exist in his, her, or its favor at the time of the release set forth below, including without limitation those which, if known, might have affected the decision to enter into or to object to the Settlement.

## SETTLEMENT CONSIDERATION

2.   As a result of Plaintiff's prosecution and settlement of the Action, and in consideration for the full settlement and release of all Released Claims, Warner Chilcott included the Supplemental Disclosures in a Current Report on Form 8-K filed with the SEC on August 22, 2013.  Warner Chilcott acknowledges that the pendency and efforts to settle the Action were the sole causal factors underlying Warner Chilcott's decision to file with the SEC the Supplemental Disclosures.

## RELEASES

3.   Upon Final Court Approval, Plaintiff and each and every member of the Class, individually and collectively, shall and hereby do completely, fully, finally, and forever dismiss, release, relinquish, settle, and discharge each and all of the Released Parties from and with respect to any and all of the Released Claims, and will be forever barred and enjoined from commencing, instituting, or prosecuting any action or other proceeding, in any forum, asserting any Released Claims against any of the Released Parties.

4.   Upon Final Court Approval, Warner Chilcott shall and hereby does completely, fully, finally, and forever dismiss, release, relinquish, settle, and discharge Plaintiff and Plaintiff's Counsel from all claims arising out of the commencement, prosecution, settlement, and resolution of the Action; provided, however, that such release does not include a release of the right to enforce this Stipulation or the Settlement.

- 9 -

**Execution Copy**

5.     The releases described above include any and all Unknown Claims, and the Parties to this Stipulation expressly stipulate and agree that, upon Final Court Approval, Plaintiff and each and every member of the Class shall be deemed to have expressly waived, relinquished, and released any and all provisions, rights, and benefits conferred by or under any law of the United States or any state or territory of the United States, or principle of common law or foreign law, which may have the effect of limiting the releases.  In particular, Plaintiff and each and every member of the Class shall be deemed by operation of law to have waived, relinquished, and released, to the fullest extent permitted by law, the provisions, rights, and benefits of section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiff and each and every member of the Class shall be deemed to have waived, relinquished, and released, to the extent they are applicable, and to the fullest extent permitted by law, the provisions, rights, and benefits of any law of any state or territory of the United States, federal law, or principle of common law, which is similar, comparable, or equivalent to section 1542 of the California Civil Code.  Plaintiff and each and every member of the Class acknowledge that they may discover facts in addition to or different from those now known or believed to be true with respect to the Released Claims, but that it is their intention to hereby completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all Released Claims known or unknown, suspected or unsuspected, which now exist, heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of additional or different facts.  The Parties to this Stipulation acknowledge, and the members of the Class by

- 10 -

**Execution Copy**

operation of law shall be deemed to have acknowledged, that the inclusion of Unknown Claims in the definition of Released Claims was separately bargained for and was a material element of the Settlement, and was relied upon by each of the Parties in entering into the Settlement.

## CLASS CERTIFICATION

6.     For purposes of settlement only, the Parties agree that the Action should be maintained as an opt-out class action, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), on behalf of the Class, subject to Final Court Approval.

## PRELIMINARY APPROVAL

7.     As soon as practicable after the Stipulation has been executed, the Parties to the Action shall jointly submit this Stipulation, together with its related documents, to the Court and request entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit B.

## NOTICE

8.     Warner Chilcott or its successor-in-interest shall be responsible for hiring and overseeing a notice administrator to provide notice to the Class.  All costs and expenses in providing notice to the Class shall be paid by Warner Chilcott or its successor-in-interest.  The Notice shall be substantially in the form attached hereto as Exhibit C, and provided to Class members in the manner provided in the Preliminary Approval Order, or as otherwise approved by the Court.  The Notice shall provide potential Class members with the opportunity to request exclusion from (*i.e.*, to opt out of) the Class.  Such members must submit a written request for exclusion ("Request for Exclusion").  To be effective, such Request for Exclusion must include: (a) the name, address, telephone number, and Social Security number of the person seeking exclusion; (b) a clear and unequivocal statement that the person wishes to be excluded from the

**Execution Copy**

Class; (c) identification and evidence of the shares for which the person seeks exclusion; and (d) the signature of the person.   The Request for Exclusion must be mailed to the notice administrator and Plaintiff's Counsel at the addresses provided in the Notice and must be postmarked no later than 60 days after the date on the Notice.

## STAY OF PROCEEDINGS

9.      The Parties agree to stay the proceedings in the Action and not to initiate any proceedings other than those related to the Settlement itself.   The Parties also agree to use their best efforts to prevent, stay, or seek dismissal of, or oppose entry of any interim or final relief in favor of, any member of the Class in any other litigation against any of the Released Parties that challenges the Settlement or otherwise involves any Released Claims.

## DISMISSAL WITH PREJUDICE

10.      If the Settlement is approved by the Court, the Parties shall jointly and promptly request that the Court enter an Order and Final Judgment in the Action substantially in the form attached hereto as Exhibit D.

## CONDITIONS OF SETTLEMENT

11.      The Settlement shall be null and void and of no force and effect, unless otherwise agreed by the Parties pursuant to Paragraph 32 herein, if:  (i) the Court does not enter the Order and Final Judgment; (ii) the Class does not receive final certification; (iii) the Settlement does not obtain Final Court Approval for any reason; (iv) the number of shares for which exclusion from the Class is sought (*i.e.*, the number of shares held by those persons who opt out of the Class) equals or exceeds 5% of the total share capital issued of Warner Chilcott as of the date of the Transaction (provided, however, that this condition may be waived by Warner Chilcott); and (v) the Action is not dismissed with prejudice against Warner Chilcott, with such dismissal

- 12 -

**Execution Copy**

becoming final and no longer subject to further appeal or review by lapse of time or otherwise, without the award of any damages, costs, fees, or the grant of further relief except for the payments contemplated by this Stipulation.   In addition, Warner Chilcott has the right to withdraw from the Settlement in the event that any claim relating to the subject matter of the Action or the Transaction is commenced or prosecuted against any of the Released Parties and (subject to a motion by such Released Party(ies)) such claims are not dismissed with prejudice or stayed in contemplation of the dismissal of the Action.   In the event that any such claim is commenced or prosecuted against any of the Released Parties, the Parties shall cooperate and use reasonable efforts to secure the dismissal with prejudice thereof (or a stay thereof in contemplation of dismissal with prejudice following Final Court Approval of the Settlement).

12.      If the Settlement does not receive Final Court Approval, or if the Stipulation is disapproved, canceled, or terminated pursuant to its terms, both of the Parties to this Stipulation shall be deemed to have reverted to their respective litigation status immediately prior to the execution of the MOU, and they shall proceed in all respects as if the MOU and this Stipulation had not been executed, and the related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in any of the Action shall be preserved without prejudice in any way.   In the event that Final Court Approval does not occur or the Settlement otherwise does not become final for any reason, the Class shall automatically be decertified and Warner Chilcott reserves the right to oppose the certification of any plaintiff class in any future proceedings (including, but not limited to, in the Action).

## ATTORNEYS' FEES

13.      After negotiating the substantive terms of the Settlement, the Parties negotiated an award of up to $325,000 for Plaintiffs' attorneys' fees and expenses (including costs,

- 13 -

**Execution Copy**

disbursements, and expert and consulting fees) in connection with the Action (the "Fee Application"), which, subject to the terms and conditions of this Stipulation and approval by the Court, will be paid to Plaintiffs' counsel, and which shall be the only fee application made in the Action. Warner Chilcott agrees not to oppose the amount sought in the Fee Application provided it does not exceed the amount set forth in the preceding sentence. Warner Chilcott (or its successor(s)-in-interest) shall pay the fees, costs, and expenses awarded to Plaintiff's counsel in the Action within ten (10) business days after the later of (a) entry of an order by the Court finally approving the Settlement; (b) dismissal with prejudice of the Action; and (c) consummation of the Transaction, and which obligation shall be subject to the joint and several obligation of Plaintiff's counsel to refund, within ten (10) business days, all amounts received, if and when, as a result of any appeal and/or further proceeding on remand, or successful collateral attack, the award of fees, costs, and expenses is reduced or reversed or if the award order does not become final, if the Settlement itself is voided by either Party as provided herein or in the Settlement Agreement, or if the Settlement is later reversed by any court.

14.     The Court may consider and rule upon the fairness, reasonableness, and adequacy of the Settlement independently of any award of attorneys' fees and expenses. Neither the resolution of, nor any ruling regarding, any award of attorneys' fees and expenses shall be a precondition to this Settlement or to the dismissal with prejudice of the Action. Notwithstanding anything in this Stipulation to the contrary, the effectiveness of the release of the Released Claims and the other obligations of the Parties under the Settlement (except with respect to the payment of attorneys' fees and expenses) shall not be conditioned upon or subject to the resolution of any appeal from any order, if such appeal relates solely to the issue of any award of attorneys' fees and/or the reimbursement of expenses.

- 14 -

**Execution Copy**

15.     Warner Chilcott and its counsel shall have no responsibility for, and no liability whatsoever with respect to, any fee allocation among Plaintiff's Counsel.  Any dispute regarding any allocation among Plaintiff's Counsel shall have no effect on the Settlement, the Released Claims, or any other terms set forth herein.

## COOPERATION

16.     The Parties and their counsel agree to cooperate fully with one another in seeking the Court's approval of this Stipulation and the Settlement and to use their best efforts to effect the consummation of this Stipulation and the Settlement (including, but not limited to, resolving any objections raised with respect to the Settlement).  Plaintiff's Counsel agree not to represent, encourage, solicit, or otherwise assist, in any way whatsoever (including but not limited to referrals to other counsel), any person requesting exclusion from the Class.

17.     The Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation, subject to approval by the Court and a modification of any order establishing deadlines or timeframes applicable to these provisions.

18.     If any claims that are or would be subject to the releases and dismissal contemplated by the Settlement are asserted against any of the Released Parties in any court prior to Final Court Approval of the Settlement, Plaintiff and his counsel shall join, if requested by Warner Chilcott, in any motion to dismiss or stay such proceedings and otherwise shall use their reasonable efforts to cooperate with Warner Chilcott to effect a withdrawal or dismissal of the claims.

## STIPULATION NOT AN ADMISSION

19.     The existence of this Stipulation, its contents, and any negotiations, statements, or proceedings in connection therewith will not be argued to be, and will not be construed or

- 15 -

Execution Copy

deemed to be, a presumption, concession, or admission by any of the Released Parties or any other person of any fault, liability, or wrongdoing as to any facts or claims alleged or asserted in the Action or otherwise, or that Plaintiff or Plaintiff's Counsel, the Class, or any present or former stockholders of Warner Chilcott, or any other person, have suffered any damage attributable in any manner to any of the Released Parties.   Nor shall the existence of this Stipulation and its contents or any negotiations, statements, or proceedings in connection therewith be construed as a presumption, concession, or admission by Plaintiff, any member of the Class, or Plaintiff's Counsel of any lack of merit of the Released Claims.  The existence of the Stipulation, its contents, or any negotiations, statements, or proceedings in connection therewith, shall not be offered or admitted in evidence or referred to, interpreted, construed, invoked, or otherwise used by any person for any purpose in the Action or otherwise, except as may be necessary to enforce or obtain Final Court Approval of the Settlement.  Notwithstanding the foregoing, any of the Released Parties may file the Stipulation or any judgment or order of the Court related hereto, in any other action that may be brought against them, in order to support any and all defenses or counterclaims based on *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim.  This provision shall remain in force in the event that the Settlement is terminated.

## <u>NO WAIVER</u>

20.     Any failure by either Party to insist upon the strict performance by the other Party of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon

**Execution Copy**

the strict performance of any and all of the provisions of this Stipulation to be performed by such other Party.

21.     No waiver, express or implied, by either Party of any breach or default in the performance by the other Party of its obligations under this Stipulation shall be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

## AUTHORITY

22.     This Stipulation will be executed by counsel to the Parties, each of whom represents and warrants that he or she has been duly authorized and empowered to execute this Stipulation on behalf of such Party, and that it shall be binding on such Party in accordance with its terms.

## SUCCESSORS AND ASSIGNS

23.     This Stipulation is, and shall be, binding upon, and inure to the benefit of, the Parties and their respective agents, executors, administrators, heirs, successors, and assigns, including, without limitation, any corporation or other entity with which any Party hereto may merge or otherwise consolidate.

## GOVERNING LAW AND FORUM

24.     The Stipulation and the Settlement contemplated by it, and any dispute arising out of or relating in any way to the Stipulation or the Settlement, whether in contract, tort or otherwise, shall be governed by and construed in accordance with the laws of the State of New Jersey, without regard to conflict of laws principles.  Each of the Parties to the Stipulation (a) irrevocably submits to the personal jurisdiction of the United States District Court for the District of New Jersey, as well as to the jurisdiction of all courts to which an appeal may be

#84066073v6

**Execution Copy**

taken from such courts, in any suit, action or proceeding arising out of or relating to the Stipulation and/or the Settlement; (b) agrees that all claims in respect of such suit, action or proceeding shall be brought, heard and determined exclusively in the Court (*provided that*, in the event that subject matter jurisdiction is unavailable in the Court, all such claims shall be brought, heard and determined exclusively in any other state or federal court sitting in New Jersey); (c) agrees that it shall not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from such court; (d) agrees not to bring any action or proceeding arising out of or relating to the Stipulation and/or the Settlement in any other court; and (e) EXPRESSLY WAIVES, AND AGREES NOT TO PLEAD OR TO MAKE ANY CLAIM THAT ANY SUCH ACTION OR PROCEEDING IS SUBJECT (IN WHOLE OR IN PART) TO A JURY TRIAL. Each of the Parties waives any defense of inconvenient forum to the maintenance of any action or proceeding brought in accordance with this paragraph.  Each of the Parties further agrees to waive any bond, surety or other security that might be required of any other Party with respect to any such action or proceeding, including an appeal thereof.   Each of the Parties further consents and agrees that process in any such suit, action or proceeding may be served on such Party by certified mail, return receipt requested, addressed to such Party or such Party's registered agent in the state of its incorporation or organization, or in any other manner provided by law.

## <u>WARRANTY</u>

25.     Plaintiff's Counsel each represent and warrant, on behalf of Plaintiff, that (i) Plaintiff has been a continuous stockholder of Warner Chilcott stock throughout the Class Period and at all relevant times; and (ii) none of the Released Claims has been assigned, encumbered, or in any manner transferred in whole or in part, and that they and their respective clients will not attempt to assign, encumber, or in any manner transfer in whole or in part any of

- 18 -

**Execution Copy**

the Released Claims.

26.     Each Party represents and warrants that the Party has made such investigation of the facts pertaining to the Settlement provided for in this Stipulation, and all of the matters pertaining thereto, as the Party deems necessary and advisable.

### ENTIRE AGREEMENT

27.     This Stipulation and the attached exhibits constitute the entire agreement among the Parties with respect to the subject matter hereof, and supersede all prior or contemporaneous oral or written agreements, understandings, or representations.  All of the exhibits hereto are incorporated herein by reference as if set forth herein verbatim, and the terms of all exhibits are expressly made part of this Stipulation.  This Stipulation replaces the MOU, which shall be of no further force or effect upon execution of this Stipulation.

### INTERPRETATION

28.     Each term of this Stipulation is contractual and not merely a recital.

29.     This Stipulation will be deemed to have been mutually prepared by the Parties and will not be construed against any of them by reason of authorship.

30.     Section and/or paragraph titles have been inserted for convenience only and will not be used in determining the terms of this Stipulation.

31.     The terms and provisions of this Stipulation are intended solely for the benefit of the Parties, the Class, and their respective successors and permitted assigns, and it is not the intention of the Parties to confer third-party beneficiary rights or remedies upon any other person or entity, except any attorneys' fees and expenses to be paid pursuant to the terms of this Stipulation.

- 19 -

**Execution Copy**

## AMENDMENTS

32.     This Stipulation may not be amended, changed, waived, discharged, or terminated (except as explicitly provided herein), in whole or in part, except by an instrument in writing signed by the Parties to this Stipulation or their respective successors-in-interest without further notice to the Class, unless the Court requires such notice.

## COUNTERPARTS

33.     This Stipulation may be executed in any number of actual, telecopied, or electronically mailed counterparts and by each of the Parties on several counterparts, each of which when so executed and delivered will be an original.  This Stipulation will become effective when the actual or telecopied counterparts have been signed by each of the Parties and delivered to the other Party.  The executed signature page(s) from each actual, telecopied, or electronically mailed counterpart may be joined together and attached and will constitute one and the same instrument.

**IN WITNESS WHEREOF**, the Parties have caused this Stipulation, dated as of April 29, 2014, to be executed by their duly authorized attorneys.

**[Remainder of Page Intentionally Left Blank; Signature Pages to Follow]**

#84066073v6

Execution Copy

Liza M. Walsh
Hector Daniel Ruiz
**CONNELL FOLEY LLP**
85 Livingston Avenue
Roseland, NJ 07068
Phone: 973-535-0500

*Counsel for Defendant*

Evan J. Smith
Mark L. Ackerman
**BRODSKY & SMITH, LLC**
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 190004
Phone: 610-667-6200

*Counsel for Plaintiff*

Lawrence Portnoy
Scott B. Luftglass
Jason M. Spitalnick
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
Phone: 212-450-4000

*Of Counsel for Defendant*

Brian C. Kerr
**BROWER PIVEN,**
**A Professional Corporation**
475 Park Avenue South, 33rd Floor
New York, NY 10016
Phone: 212-501-9000

*Of Counsel for Plaintiff*

Blair Connelly
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022
Phone: 212-906-1200

*Of Counsel for Defendant*

- 21 -

#84066073v6

Execution Copy

---

Liza M. Walsh
Hector Daniel Ruiz
**CONNELL FOLEY LLP**
85 Livingston Avenue
Roseland, NJ 07068
Phone: 973-535-0500

*Counsel for Defendant*

---

Lawrence Portnoy
Scott B. Luftglass
Jason M. Spitalnick
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
Phone: 212-450-4000

*Of Counsel for Defendant*

---

Blair Connelly
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022
Phone: 212-906-1200

*Of Counsel for Defendant*

---

Evan J. Smith
Mark L. Ackerman
**BRODSKY & SMITH, LLC**
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 190004
Phone: 610-667-6200

*Counsel for Plaintiff*

---

Brian C. Kerr
**BROWER PIVEN,**
  **A Professional Corporation**
475 Park Avenue South, 33rd Floor
New York, NY 10016
Phone: 212-501-9000

*Of Counsel for Plaintiff*

- 21 -

**Execution Copy**

_Evan J. Smith / By BCK w/ permission_

---

Liza M. Walsh
Hector Daniel Ruiz
**CONNELL FOLEY LLP**
85 Livingston Avenue
Roseland, NJ 07068
Phone:  973-535-0500

_Counsel for Defendant_

Evan J. Smith
Mark L. Ackerman
**BRODSKY & SMITH, LLC**
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 190004
Phone: 610-667-6200

_Counsel for Plaintiff_

---

Lawrence Portnoy
Scott B. Luftglass
Jason M. Spitalnick
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
Phone:  212-450-4000

_Of Counsel for Defendant_

Brian C. Kerr
**BROWER PIVEN,**
   **A Professional Corporation**
475 Park Avenue South, 33rd Floor
New York, NY 10016
Phone:  212-501-9000

_Of Counsel for Plaintiff_

---

Blair Connelly
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022
Phone:  212-906-1200

_Of Counsel for Defendant_

- 21 -

# Exhibit A

**Background of the Transaction**

As part of the ongoing evaluation of each of Warner Chilcott's and Actavis' business, members of Warner Chilcott's senior management and board of directors, and Actavis' senior management and board of directors, respectively, periodically review and assess the operations and financial performance of their respective companies, as well as industry conditions and related regulatory developments as they may each impact their respective companies' long-term strategic goals and plans, including the consideration of potential opportunities for business combinations, acquisitions, and other financial and strategic alternatives. As part of this ongoing evaluation process, from time to time representatives of Warner Chilcott and Actavis had discussed each other's businesses and potential opportunities to explore business combinations, including in connection with Warner Chilcott's review of strategic alternatives conducted in 2012 and described below.  During that process, representatives of Warner Chilcott and Actavis engaged in preliminary discussions regarding a possible acquisition of Warner Chilcott by Actavis, although no specific transaction terms were discussed and such discussions did not lead to an indication of interest by Actavis in pursuing such an acquisition.  During the two years leading up to entry into the Transaction Agreement, representatives of Warner Chilcott and Actavis also discussed a number of matters in the ordinary course of business, including, among other things, certain matters relating to the exclusive license granted by Warner Chilcott to Actavis to market and sell Actavis' oral contraceptive product Generess Fe and several patent litigation matters.

In early 2012, Warner Chilcott initiated a process to explore a broad range of potential strategic alternatives to enhance shareholder value, and engaged in preliminary discussions with twelveincluding potential acquisitions, a potential sale of Warner Chilcott, other potential business combination transactions, a potential leveraged recapitalization, the establishment of a regular dividend and the refresh of Warner Chilcott's share redemption program.  As part of this process, representatives of Warner Chilcott initially contacted twelve parties to gauge their interest on a no-names basis in the potential acquisition of a company in the pharmaceutical industry.  These representatives indicated that they would disclose the identity of the company (Warner Chilcott) upon execution of a short-form confidentiality agreement. Five of the parties, including Actavis, were strategic buyers, and the other seven potential offerors were financial sponsors.  One of the strategic buyers to which representatives of Warner Chilcott reached out responded that it was not interested in the potential transaction, and the other eleven potential offerors, including Actavis, entered into short-form confidentiality agreements with representatives of Warner Chilcott in exchange for the disclosure of Warner Chilcott's identity.

After the disclosure of Warner Chilcott's identity, nine of the eleven remaining potential offerors, including Actavis, expressed interest in receiving additional information about Warner Chilcott and, between February 2012 and April 2012, those nine potential offerors entered into separate long-form confidentiality agreements with Warner Chilcott, each of which contained a customary standstill provision and pursuant to which confidential information regarding Warner Chilcott was provided.  Warner Chilcott publicly announced this strategic review process on April 30, 2012. In connection with such process (which occurred prior to Warner Chilcott's declaration of the $4.00 per share special cash dividend and the two $0.25 per share semi-annual dividends described below), Warner Chilcott received two preliminary, non-binding indications of interest in acquiring Warner Chilcott (neither of which were made by Actavis) for prices ranging from $20.00 to $22.50 per share (representing a premium of approximately 7.8% to 21.3% to Warner Chilcott's volume-weighted average trading price for the 30 trading day period ending on May 3, 2012, the day prior to receipt of that indication of interest) and $22.00 to $24.00 per share (representing a premium of approximately 32.2% to 44.2% to Warner Chilcott's volume-weighted average trading price for the 30 trading day period ending on March 5, 2012, the day prior to receipt of that indication of interest]), respectively. However, neither of the two parties that submitted preliminary, non-binding indications of interest conducted significant due diligence or otherwise indicated a further interest in pursuing an acquisition of Warner Chilcott, and this process, which concluded during the summer of 2012, did not result in any business combination transaction; rather.

Rather, in August 2012, Warner Chilcott announced a number of strategic initiatives intended to enhance shareholder value, namely a special dividend transaction pursuant to which Warner Chilcott declared a special cash dividend of $4.00 per share on August 21, 2012, the adoption of a new dividend policy pursuant to which Warner Chilcott has declared two regular semi-annual dividends of $0.25 per share on November 6, 2012 and May 7, 2013, and the renewal of its share redemption program.

From time to time, Actavis has considered strategic transactions. During the months of April and May 2013, it was presented with certain strategic opportunities and engaged in preliminary discussions with third

1

parties. The board of directors of Actavis ultimately determined those strategic alternatives were not in the best interests of its stockholders.

On May 3, 2013, in response to an earlier telephone call from Roger M. Boissonneault, the President and Chief Executive Officer and a Director of Warner Chilcott, Paul M. Bisaro, the President and Chief Executive Officer and a Director of Actavis, had a phone conversation with Mr. Boissonneault during which they discussed, among other things, the companies' respective businesses and a possible acquisition of Warner Chilcott by Actavis, although no specific transaction terms were discussed.

On May 3 and May 4, 2013, Mr. Boissonneault and Paul Herendeen, the Executive Vice President and Chief Financial Officer and a Director of Warner Chilcott, reported this conversation to other members of Warner Chilcott's board of directors in advance of the next regularly scheduled board meeting scheduled for May 7, 2013.

On May 4 and May 5, 2013, representatives of Actavis and Warner Chilcott, including their respective financial and legal advisors, engaged in preliminary discussions regarding the potential strategic synergies that might result from the combination of the two companies and instructed their respective advisors to explore potential transaction structures, including a stock-for-stock acquisition of Warner Chilcott by Actavis. The parties did not discuss a proposed exchange ratio for the transaction at that time. The parties also began exchanging high-level financial and business information pursuant to ~~an~~the existing long-form confidentiality agreement that had been previously entered into between the parties on February 15, 2012 in connection with Warner Chilcott's exploration of strategic alternatives in early 2012 and has a term of two years.

On May 5, 2013, Mr. Bisaro met with Mr. Boissonneault to discuss preliminary issues with respect to a potential transaction. Mr. Bisaro did not propose an exchange ratio or other economic terms of an acquisition proposal at that time. Later that day, representatives of Warner Chilcott and Actavis held a conference call to discuss potential synergies from a transaction.

On May 7, 2013, at a regularly-scheduled meeting of Warner Chilcott's board of directors at which all directors were present, the board discussed, among other topics, Actavis' interest in exploring a potential transaction with Warner Chilcott. At that meeting, Warner Chilcott's board of directors authorized senior management to continue its preliminary discussions with Actavis in order to assess the feasibility and merits of a potential transaction.

On May 8, 2013, during a meeting of the Actavis board of directors scheduled in conjunction with Actavis' annual meeting of stockholders, the board discussed, among other topics, the attractiveness of a potential acquisition of Warner Chilcott. The board reviewed a financial overview of Warner Chilcott prepared by management and discussed certain assumptions regarding a potential acquisition. At that meeting, Actavis' board of directors authorized senior management to continue exploratory discussions with Warner Chilcott in order to assess the feasibility and merits of a potential transaction.

On May 9, 2013, Mr. Bisaro informed Mr. ~~Boissoneault~~Boissonneault that the Actavis board of directors supported further exploration of a potential transaction with Warner Chilcott. Neither individual proposed an exchange ratio or other economic terms of an acquisition proposal at that time. Subsequently, representatives of Warner Chilcott and Actavis and their respective legal and financial advisors engaged in additional discussions and exchanged financial and business information.

On May 10, 2013, Bloomberg reported that Actavis was in early talks to acquire Warner Chilcott. Shortly thereafter, and as required by the Irish Takeover Rules 2007 (as amended) (the "Irish Takeover Rules" or the "Takeover Rules"), Warner Chilcott released an announcement confirming that it was engaged in preliminary discussions with Actavis regarding a potential business combination transaction. Actavis also released a statement confirming the preliminary discussions. Warner Chilcott's and Actavis' stock prices closed up 16.4% and 11.4%, respectively, from their volume-weighted average trading prices for the period from market open on May 10 until the Bloomberg story was published later that day.

Also on May 10, 2013, Warner Chilcott and Actavis, together with their respective legal and financial advisors, commenced in-depth business, legal and financial due diligence.

On May 11, 2013, Warner Chilcott provided Actavis access to an electronic data room containing certain non-public information regarding Warner Chilcott's business and operations. During the next several days, Warner Chilcott supplied Actavis and its representatives with extensive due diligence information regarding Warner Chilcott, and Warner Chilcott engaged in extensive "reverse" due diligence of Actavis. Members of senior management and other representatives of both parties also engaged in several in-person and telephonic discussions, including in-person management meetings on May 14 and May 15, 2013, in Parsippany, New Jersey, and multiple follow-up diligence and "reverse" diligence calls on individual topics.

On May 13, 2013, Actavis' board of directors held a special telephonic meeting at which Actavis' management updated the Actavis board on discussions with, and their preliminary due diligence review of, Warner Chilcott. Actavis' board of directors discussed the pro forma ownership of a combined company that would be represented by various illustrative exchange ratios and provided guidance to Actavis management on a potentially acceptable range of exchange ratios. At the conclusion of that meeting, Actavis' board of directors authorized senior management to continue discussions with, and proceed with the due diligence review of, Warner Chilcott.

On May 13, 2013, Messrs. ~~Boissoneault~~Boissonneault, Bisaro, Herendeen and Sigurdur Olafsson, Actavis' President, Global Generics, met to discuss preliminary issues regarding a potential transaction, including the structuring of such a transaction and potential synergies that might result from such a transaction. Later that day, Mr. Bisaro indicated to Mr. ~~Boissoneault~~Boissonneault during a telephonic conversation that Actavis would be interested in pursuing an acquisition of Warner Chilcott pursuant to a so-called "double dummy" structure (*i.e.*, involving the acquisition of both Actavis and Warner Chilcott by New Actavis, an Irish holding company) at a fixed exchange ratio of 0.1373 of a New Actavis ordinary share for each Warner Chilcott ordinary share. This proposed exchange ratio was derived from the ratio of the two companies' respective closing stock prices on May 3, 2013, and, valuing the New Actavis ordinary shares at Actavis' closing stock price on that date, represented a 0% premium to Warner Chilcott's closing price on May 3, 2013 and a 6% discount to Warner Chilcott's volume-weighted average trading price for the period from market open on May 10, 2013 until the Bloomberg story was published later that day. Mr. Bisaro stated that Actavis did not believe it was appropriate to offer a premium to Warner Chilcott's stock price in the context of the proposed transaction. Mr. ~~Boissoneault~~Boissonneault subsequently indicated that, in his view, Warner Chilcott's board of directors likely would view Actavis' proposed consideration as financially inadequate.

During the morning of May 14, 2013, Mr. Bisaro and Mr. Herendeen verbally negotiated the exchange ratio, along with the respective financial advisors of Actavis and Warner Chilcott. During this negotiation, Mr. Bisaro increased Actavis' preliminary, non-binding offer to an exchange ratio of 0.151 New Actavis shares for each Warner Chilcott share (representing a 10% premium to the previously proposed "unaffected" exchange ratio of 0.1373). Mr. Herendeen indicated that he would communicate Mr. Bisaro's revised proposal to the Warner Chilcott board.

At a special telephonic meeting of the Warner Chilcott board of directors later on May 14, 2013, the board and members of Warner Chilcott's senior management and legal and financial advisors reviewed discussions that had occurred between representatives of Warner Chilcott and Actavis since the prior board meeting. Representatives of Deutsche Bank Securities Inc. ("Deutsche Bank"), Warner Chilcott's financial advisor, reviewed with the board certain preliminary financial analyses and data regarding Warner Chilcott, various preliminary valuation observations, and various process considerations. Representatives of Deutsche Bank also discussed the likelihood of alternative proposals for the acquisition of Warner Chilcott from parties other than Actavis. Representatives of Warner Chilcott's legal advisors, Davis Polk & Wardwell LLP ("Davis Polk") and Arthur Cox, reviewed the duties of Warner Chilcott's directors and officers in connection with a potential transaction. Arthur Cox also reviewed certain applicable provisions of the Irish Takeover Rules.

The Warner Chilcott board of directors discussed the potential opportunities and considerations presented by a potential transaction with Actavis and associated with Warner Chilcott continuing to operate as an independent company. The Warner Chilcott board of directors discussed the risks associated with Warner Chilcott's business on a standalone basis, including the risks relating to the litigation disclosed in Warner Chilcott's public filings, the loss of patent and/or market exclusivity for certain of Warner Chilcott's key products, the concentration of a significant percentage of Warner Chilcott's revenues in certain key products and the potential that any events that adversely affect the markets for those products could materially reduce Warner

Chilcott's revenues, earnings and cash flows. The board also discussed the value that Warner Chilcott's shareholders would receive in a potential business combination with Actavis, including the potential to participate in the accretive effects of the transaction as continuing shareholders of the combined company. The Warner Chilcott board of directors then engaged in extensive discussions regarding Actavis' proposal and whether it was in the best interests of Warner Chilcott shareholders to engage in further discussions with Actavis. The board also considered whether it was in the best interest of Warner Chilcott's shareholders to solicit potential alternative proposals from other parties. The board considered it unlikely that a third party would be willing and capable of making an offer superior to the offer made by Actavis given (a) the potential operational cost efficiencies, including the after tax operational synergies and related cost reductions and tax savings discussed under "*Merger Benefit Statement*" beginning on page 301 of this joint proxy statement/prospectus, and incremental revenue opportunities of the potential transaction with Actavis, (b) the strategic review process undertaken by Warner Chilcott in 2012 did not result in a business combination and (c) the fact that despite the public report and confirmation by Warner Chilcott and Actavis that discussions were taking place between the two companies, no other potential acquirers had approached Warner Chilcott. The board concluded that it would be advisable to continue negotiating only with Actavis in order not to lose the attractive opportunity presented by the Actavis proposal, but to negotiate a provision in the transaction agreement allowing Warner Chilcott to terminate a transaction agreement with Actavis, subject to certain conditions, including payment of a customary expense reimbursement, to enter into an agreement with a third party should such a third party make a superior proposal. At the conclusion of this board meeting, the Warner Chilcott board of directors instructed Warner Chilcott's senior management and Deutsche Bank to contact Actavis and request that Actavis improve the terms of its proposal, including the consideration to be offered to Warner Chilcott's shareholders. The Warner Chilcott board of directors also instructed Warner Chilcott's senior management to express to Actavis that certainty of completion of the transaction was paramount in any potential transaction, and therefore any definitive agreement would need to minimize conditionality for Warner Chilcott's shareholders.

After the Warner Chilcott board meeting on May 14, 2013, representatives of Warner Chilcott and Actavis, as well as representatives of Deutsche Bank, Actavis' financial advisors Greenhill & Co. ("Greenhill") and Bank of America Merrill Lynch ("BofA Merrill Lynch"), Davis Polk and Actavis' legal advisor, Latham & Watkins LLP ("Latham & Watkins"), met at Actavis' headquarters in Parsippany, New Jersey to further discuss certain terms of the transaction. During this meeting, Actavis verbally increased the proposed exchange ratio from 0.151 to 0.160 (representing a 16.5% premium to the previously proposed "unaffected" exchange ratio of 0.1373). Actavis stated that this was its best and final offer. Also at this time, Actavis proposed that the companies move expeditiously with respect to the proposed transaction, with the aim of completing discussions and negotiations by May 19, 2013. During the course of the meeting, representatives of Warner Chilcott and Actavis and their respective advisors discussed certain key issues relating to a potential transaction, including certainty of closing, financing-related issues, regulatory approvals, and governance of the combined company.

On May 15, 2013, Latham & Watkins delivered to Davis Polk drafts of a transaction agreement and an expenses reimbursement agreement. During the course of that day, representatives of Davis Polk and Latham & Watkins engaged in discussions regarding certain proposed terms of these agreements, including closing conditions, the deal protection provisions, and the composition of the board of directors of the combined company.

Also on May 15, 2013, representatives of Arthur Cox and Actavis' Irish legal counsel, Matheson, together with representatives of Deutsche Bank, Greenhill and BofA Merrill Lynch contacted the Irish Takeover Panel (the "Panel") to discuss the possibility of a transaction between Warner Chilcott and Actavis.

On May 16, 2013, at a special telephonic meeting of the Warner Chilcott board of directors in which all directors participated, Michael Halstead, Warner Chilcott's Senior Vice President, Corporate Development, informed the board that Actavis had verbally increased its proposed exchange ratio to 0.160 New Actavis ordinary shares for each Warner Chilcott share. Representatives of Davis Polk and Arthur Cox reviewed and discussed with the board the terms of the draft agreements that Latham & Watkins had sent to Davis Polk on May 15, 2013, including the proposed transaction structure, the deal protection provisions of the transaction agreement, the representation of Warner Chilcott directors on the board of directors of the combined company, the closing conditions and the termination provisions. The board discussed with its legal advisors the nature of the proposed deal protection provisions, including the fact that, were a third party willing and able to make a superior proposal, the board retained the ability to terminate the transaction agreement, subject to certain

conditions, including payment of a customary expense reimbursement, to enter into an agreement with such third party. The board also discussed with its advisors the expected tax treatment of the proposed transaction, including the fact that the proposed transaction was expected to be non-taxable to Warner Chilcott shareholders for U.S. federal income tax purposes. The board also reviewed with counsel information previously provided by Deutsche Bank concerning the extent of their business relationships with, and the amount of fees received from, Actavis and its affiliates in the previous two years, which matters are described in the section entitled "—*Opinion of Warner Chilcott's Financial Advisor*".

The Warner Chilcott board of directors then discussed the potential opportunities and considerations presented by a potential transaction with Actavis and associated with Warner Chilcott continuing to operate as an independent company. The Warner Chilcott board of directors revisited and continued its earlier discussion of the risks associated with Warner Chilcott's business on a standalone basis, including the risks relating to the litigation disclosed in Warner Chilcott's public filings, the loss of patent and/or market exclusivity for certain of Warner Chilcott's key products, the concentration of a significant percentage of Warner Chilcott's revenues in certain key products and the potential that any events that adversely affect the markets for those products could materially reduce Warner Chilcott's revenues, earnings and cash flows. The board also revisited and continued its earlier discussion of the value that Warner Chilcott's shareholders would receive in a potential business combination with Actavis, including the potential to participate in the accretive effects of the transaction as continuing shareholders of the combined company. The Warner Chilcott board of directors then engaged in extensive discussions regarding Actavis' proposal and whether it was in the best interests of Warner Chilcott shareholders to engage in further discussions with Actavis. The Board also considered the desirability of entering into a binding transaction agreement on an expedited basis given, among other reasons, the attractiveness of Actavis' revised proposal. The board discussed the terms contained in the draft transaction agreement provided by Actavis' counsel and the desirability and likelihood of improving certain of those terms, including the desirability of subjecting Actavis to a "no-shop" restriction following the signing of a definitive transaction agreement. Following these discussions, the Warner Chilcott board of directors instructed Warner Chilcott's senior management and advisors to continue engaging in non-binding discussions and negotiations with Actavis regarding the terms of a proposed transaction in order to obtain the best terms possible for Warner Chilcott and its shareholders and with the aim of completing discussions and negotiations in the near term.

Later on May 16, 2013, representatives of Davis Polk and Latham & Watkins engaged in discussions regarding the draft agreements, including with respect to the composition of the board of directors of the combined company, the amount of the reverse termination fee that Actavis would be required to pay if the transaction agreement were terminated under certain circumstances, and the imposition of a "no-shop" restriction on Actavis.

Later on May 16, 2013, at a special telephonic meeting of the Actavis board of directors in which all directors participated, members of Actavis management discussed the results of ongoing due diligence and the negotiations of the acquisition, including the proposed exchange ratio of 0.160 New Actavis ordinary shares for each Warner Chilcott share. Representatives of Latham & Watkins reviewed and discussed with the board their fiduciary duties in considering a potential acquisition. Representatives of Latham & Watkins and Matheson then discussed the key terms of the draft agreements that Latham & Watkins had sent to Davis Polk on May 15, 2013, and the subsequent negotiations including the proposed transaction structure, treatment of Warner Chilcott equity awards, the proposed deal protection provisions of the transaction agreement, the representations, warranties and covenants of the parties, the required regulatory approvals to consummate the transaction, the composition of the board of directors of the combined company, the termination provisions, and closing conditions, as well as the terms and conditions of the expenses reimbursement agreement. The board discussed with its legal advisors the nature of the deal protection provisions, including the fact that, were a third party willing and able to make a superior proposal that would be contingent upon termination of the transaction agreement, the board retained the ability to change its recommendation to the Actavis stockholders, subject to certain conditions, and the requirement that a reverse termination fee be payable to Warner Chilcott under certain circumstances. Representatives of Latham & Watkins and Matheson then discussed the post-closing public disclosure obligations of the parties given the joint oversight of the transaction of U.S. securities regulators and the Panel. The board also discussed with its advisors the expected tax treatment of the proposed transaction, including the fact that the proposed transaction was expected to be taxable to Actavis stockholders for U.S. federal income tax purposes. The board also reviewed with counsel information previously provided by Greenhill and BofA Merrill Lynch concerning the extent of their business relationships with, and the amount of

fees received from, Warner Chilcott and its affiliates in the previous two years, which matters are described in the section entitled "—*Opinion of Actavis' Financial Advisor*".

The Actavis board of directors then discussed the potential opportunities and considerations presented by a potential transaction with Warner Chilcott. Following these discussions, the Actavis board of directors instructed Actavis' senior management and advisors to continue engaging in non-binding discussions and negotiations with Warner Chilcott regarding the terms of a proposed transaction in order to obtain the best terms possible for Actavis and its stockholders and with the aim of completing discussions and negotiations in the near term.

Subsequently on May 16, 2013, Davis Polk delivered to Latham & Watkins revised drafts of the transaction agreement and the expenses reimbursement agreement.

On May 17, 2013, Latham & Watkins delivered to Davis Polk a revised draft of the transaction agreement.

On May 17, 2013, the Panel approved the form of the proposed expenses reimbursement agreement.

On May 18, 2013, Davis Polk delivered to Latham & Watkins a revised draft of the transaction agreement and a draft of Warner Chilcott's disclosure schedule. In the course of the evening of May 18, 2013, Latham & Watkins delivered to Davis Polk a revised draft of Warner Chilcott's disclosure schedule and a draft of Actavis' disclosure schedule.

During May 18, 2013 and the morning of May 19, 2013, the parties engaged in further discussions regarding the terms of the proposed transaction, and reached a tentative agreement (subject to the approval of each party's board of directors) regarding, among other things, the amount of the reverse termination fee payable by Actavis if the transaction were to be terminated under certain circumstances.

On May 19, 2013, the full Warner Chilcott board of directors held a special telephonic meeting to consider the terms of the proposed transaction. Prior to the meeting, the directors received copies of the Transaction Agreement and of the other transaction documents and a summary of the terms thereof, as well as presentation materials prepared by Deutsche Bank. At the meeting, Mr. Halstead reported on the status of negotiations with Actavis and provided an overview of certain terms of the proposed transaction. Representatives of Deutsche Bank reviewed Deutsche Bank's financial analysis of the proposed transaction, including discussing the various financial methodologies used in its analysis. The board discussed the terms of the proposed transaction, including the amount of the termination payment that would be payable by Actavis in certain circumstances. Representatives of Deutsche Bank then delivered the oral opinion of Deutsche Bank (which was subsequently confirmed in writing) that, based upon and subject to the assumptions, limitations, qualifications and conditions set forth in its written opinion, it was of the opinion, as of such date, that the exchange ratio of 0.160 New Actavis ordinary shares for each Warner Chilcott share was fair, from a financial point of view, to holders of Warner Chilcott shares. The full text of the written opinion of Deutsche Bank dated May 19, 2013, which sets forth assumptions made, procedures followed, matters considered and limitations on the review undertaken in connection with the opinion, is attached as Annex G to this joint proxy statement/prospectus. Subsequently, representatives of Davis Polk and Arthur Cox reviewed the key terms of the Transaction Agreement and Expenses Reimbursement Agreement based on the discussion materials. The representatives of Davis Polk and Arthur Cox also reviewed the duties of Warner Chilcott's directors and officers in connection with a potential transaction.

After considering the proposed terms of the Transaction Agreement and the Expenses Reimbursement Agreement and the various presentations of Warner Chilcott's financial and legal advisors, and taking into consideration the matters discussed during that meeting and prior meetings of the board, including the factors described under "—*Recommendation of the Warner Chilcott Board of Directors and Warner Chilcott's Reasons for the Transaction*", the Warner Chilcott board of directors unanimously determined that the Transaction Agreement, the Expenses Reimbursement Agreement and the transactions contemplated by the Transaction Agreement, including the scheme, are fair and reasonable and in the best interests of Warner Chilcott and its shareholders, approved the Transaction Agreement and the Expenses Reimbursement Agreement and the transactions contemplated by the Transaction Agreement, including the scheme, and resolved to recommend that the Warner Chilcott shareholders vote in favor of the scheme.

On May 19, 2013, the full Actavis board of directors held a special telephonic meeting to consider the terms of the proposed transaction. Prior to the meeting, the directors received copies of the Transaction

FOR SETTLEMENT PURPOSES ONLY

Agreement and of the other transaction documents and a summary of the terms thereof, as well as presentation materials prepared by each of Greenhill, BofA Merrill Lynch and Latham & Watkins. At the meeting, Mr. Bisaro reported on the status of negotiations with Warner Chilcott and provided an overview of certain terms of the proposed transaction, and management provided the board of directors with an update on key due diligence items. Representatives of Latham & Watkins reviewed the key terms of the Transaction Agreement and Expenses Reimbursement Agreement based on the discussion materials. The representatives of Latham & Watkins also reviewed the duties of Actavis' directors and officers in connection with a potential transaction. Representatives of Matheson reviewed the terms of the Rule 2.5 Announcement and discussed the director responsibility statement. Representatives of Greenhill reviewed Greenhill's financial analysis of the proposed transaction, including discussing the various financial methodologies used in its analysis. Representatives of BofA Merrill Lynch reviewed BofA Merrill Lynch's financial analysis of the proposed transaction, including discussing the various financial methodologies used in its analysis. Representatives of Greenhill then delivered the oral opinion of Greenhill, and representatives of BofA Merrill Lynch then delivered the oral opinion of BofA Merrill Lynch (in each case, which was subsequently confirmed in writing) that, based upon and subject to the assumptions, limitations, qualifications and conditions set forth in such advisor's written opinion, it was of the opinion, as of such date, that the exchange ratio of one New Actavis ordinary share for each Actavis share in connection with the merger (taking into account the acquisition of Warner Chilcott) as provided for in the Transaction Agreement was fair, from a financial point of view, to the holders of Actavis shares. The full text of the written opinion of each of Greenhill and BofA Merrill Lynch, each dated May 19, 2013, which sets forth assumptions made, procedures followed, matters considered and limitations on the review undertaken in connection with the opinion, are attached as Annex E and Annex F, respectively, to this joint proxy statement/prospectus.

After considering the proposed terms of the Transaction Agreement and the Expenses Reimbursement Agreement and the various presentations of Actavis' financial and legal advisors, and taking into consideration the matters discussed during that meeting and prior meetings of the board, including the factors described under "—*Recommendation of the Actavis Board of Directors and Actavis' Reasons for the Transaction*", the Actavis board of directors unanimously determined that the Transaction Agreement, the Expenses Reimbursement Agreement and the transactions contemplated by the Transaction Agreement, including the scheme, are fair and reasonable and in the best interests of Actavis and its stockholders, approved the Transaction Agreement and the Expenses Reimbursement Agreement and the transactions contemplated by the Transaction Agreement, including the scheme, and resolved to recommend that the Actavis stockholders vote in favor of the Transaction Agreement and the merger.

Warner Chilcott and Actavis subsequently executed the definitive Transaction Agreement and Expenses Reimbursement Agreement, and, on May 20, 2013, Warner Chilcott and Actavis jointly issued a Rule 2.5 announcement and press release with respect to the transaction.

## Opinion of Warner Chilcott's Financial Advisor

At the May 19, 2013 meeting of the Warner Chilcott board of directors, Deutsche Bank delivered its oral opinion to the Warner Chilcott board of directors, subsequently confirmed in writing as of the same date, that, based upon and subject to the assumptions, limitations, qualifications and conditions set forth in the opinion, as of the date of such opinion, the exchange ratio was fair, from a financial point of view, to the holders of Warner Chilcott shares.

**The full text of the written opinion of Deutsche Bank, dated May 19, 2013, which sets forth, among other things, the assumptions made, procedures followed, matters considered, and the limitations, qualifications and conditions of the review undertaken by Deutsche Bank in connection with the opinion, is attached to this joint proxy statement/prospectus as Annex G and is incorporated herein by reference. The summary of Deutsche Bank's opinion set forth in this joint proxy statement/ prospectus is qualified in its entirety by reference to the full text of the opinion. Deutsche Bank's opinion was approved and authorized for issuance by a Deutsche Bank fairness opinion review committee and was addressed to, and for the use and benefit of, the Warner Chilcott board of directors in connection with and for the purpose of its evaluation of the transaction. Deutsche Bank's opinion was limited to the fairness of the exchange ratio, from a financial point of view, to the holders of Warner Chilcott shares as of the date of the opinion. Deutsche Bank expressed no opinion as to what the value of the New Actavis ordinary shares will be when issued pursuant to the scheme or the price at which the New Actavis ordinary shares will trade at any time. Deutsche Bank's opinion did not address any other terms of the transaction or the Transaction Agreement. Deutsche Bank was not asked to, and Deutsche Bank's opinion did not, address the fairness of the transaction, or any consideration received in connection therewith, to the holders of any other class of securities, creditors, or other constituencies of Warner Chilcott, nor did it address the fairness of the contemplated benefits of the transaction. Deutsche Bank expressed no opinion as to the relative merits of the transaction as compared to any alternative transactions or business strategies. Nor did Deutsche Bank express an opinion, and Deutsche Bank's opinion does not constitute a recommendation, as to how any holder of Warner Chilcott shares should vote with respect to the scheme or whether or not any holder of Warner Chilcott shares should tender shares pursuant to the takeover offer implemented as an alternative to the scheme, if any. In addition, Deutsche Bank did not express any view or opinion as to the fairness, financial or otherwise, of the amount or nature of any compensation payable to or to be received by any of Warner Chilcott's officers, directors or employees, or any class of such persons, in connection with the transaction relative to the consideration to be received by the holders of Warner Chilcott shares.**

In connection with its role as financial advisor to Warner Chilcott, and in arriving at its opinion, Deutsche Bank reviewed certain publicly available financial and other information concerning Warner Chilcott and Actavis, and certain internal analyses, financial forecasts and other information relating to Warner Chilcott and Actavis prepared by the respective managements of Warner Chilcott and Actavis, including the Warner Chilcott Management Case, the Warner Chilcott Street Case and the Actavis Public Forecasts described above under "*Warner Chilcott and Actavis Unaudited Prospective Financial Information*" beginning on page 72 of this joint proxy statement/prospectus. Deutsche Bank also held discussions with certain senior officers and other representatives and advisors of Warner Chilcott and Actavis regarding the business and prospects of Warner Chilcott and Actavis. In addition, Deutsche Bank:

- reviewed the reported prices and trading activity for the Warner Chilcott shares and the Actavis common stock;

- compared certain financial and stock market information for Warner Chilcott and Actavis with similar information for certain other companies Deutsche Bank considered relevant whose securities are publicly traded;

- reviewed, to the extent publicly available, the financial terms of certain recent business combinations which Deutsche Bank deemed relevant;

FOR SETTLEMENT PURPOSES ONLY

- reviewed the Transaction Agreement and certain related documents, including the Rule 2.5 Announcement issued in connection therewith;

- reviewed information relating to, and a range of estimates of, certain potential strategic, tax, financial and operational benefits anticipated to result from the transaction, based on public estimates and estimates prepared by the management of Actavis; and

- performed such other studies and analyses and considered such other factors as Deutsche Bank considered appropriate.

Deutsche Bank did not assume responsibility for independent verification of, and did not independently verify, any information, whether publicly available or furnished to it, concerning Warner Chilcott or Actavis, including, without limitation, any financial information considered in connection with the rendering of its opinion. Accordingly, for purposes of its opinion, Deutsche Bank, with the knowledge and permission of the Warner Chilcott board of directors, assumed and relied upon the accuracy and completeness of all such information. Deutsche Bank did not conduct a physical inspection of any of the properties or assets, and did not prepare, obtain or review any independent evaluation or appraisal of any of the assets or liabilities (including any contingent, derivative or off-balance-sheet assets or liabilities), of Warner Chilcott or Actavis or any of their respective subsidiaries, nor did it evaluate the solvency or fair value of Warner Chilcott under any law relating to bankruptcy, insolvency or similar matters.

Deutsche Bank was advised by the management of Warner Chilcott that the financial forecasts made available to Deutsche Bank regarding Warner Chilcott, referred to in this joint proxy statement/prospectus as the Warner Chilcott Management Case and described above under "*Warner Chilcott and Actavis Unaudited Prospective Financial Information*" beginning on page 72 of this joint proxy statement/prospectus, were prepared for certain internal planning purposes and did not incorporate a risk adjustment related to potential loss of exclusivity on key marketed products or the approval of key pipeline products that were expected to be launched during the projection period. Accordingly, Deutsche Bank was directed by management of Warner Chilcott and by the Warner Chilcott board of directors to use in its analyses, and to rely primarily on, a set of forecasts based on publicly available consensus estimates of the future financial performance of Warner Chilcott for the calendar years 2013-2017, including (for the calendar years 2016 and 2017) financial forecasts extrapolated from publicly available forecasts, such estimates being referred to in this joint proxy statement/prospectus as the Warner Chilcott Street Case and described above under "*Warner Chilcott and Actavis Unaudited Prospective Financial Information*" beginning on page 72 of this joint proxy statement/prospectus. Deutsche Bank was advised by the management of Warner Chilcott, and assumed, that these consensus estimates were reflective of potential risk adjustments related to the potential loss of exclusivity on key marketed products and the approval of key pipeline products that were expected to be launched during the projection period, and that such estimates were a reasonable basis upon which to evaluate the future financial performance of Warner Chilcott. With respect to Actavis, Deutsche Bank was instructed to use, and, with the permission and knowledge of the Warner Chilcott board of directors, used, a set of forecasts based on publicly available estimates of the future financial performance of Actavis provided to Deutsche Bank by the management of Actavis and its representatives referred to in this joint proxy statement/prospectus as the Actavis Public Forecasts and described under "*Warner Chilcott and Actavis Unaudited Prospective Financial Information*" beginning on page 72 of this joint proxy statement/prospectus. Deutsche Bank was advised by the management of Actavis, and assumed, that the Actavis Public Forecasts were a reasonable basis upon which to evaluate the future performance of Actavis. Deutsche Bank assumed, with the consent of the Warner Chilcott board of directors, that the financial results reflected in the foregoing forecasts will be realized in the amounts and at the times projected. In rendering its opinion, Deutsche Bank expressed no view as to the reasonableness of such forecasts and projections or the assumptions on which they were based.

Deutsche Bank's opinion was necessarily based upon economic, market and other conditions as in effect on, and the information made available to it as of, the date of the opinion. Deutsche Bank expressly disclaimed any undertaking or obligation to advise any person of any change in any fact or matter affecting its opinion of which it becomes aware after the date of the opinion.

For purposes of rendering its opinion, Deutsche Bank assumed with the knowledge and permission of the Warner Chilcott board of directors that, in all respects material to its analysis, the transaction will be consummated in accordance with the terms of the Transaction Agreement, without any waiver, modification or

amendment of any term, condition or agreement that would be material to its analysis. Deutsche Bank also assumed with the knowledge and permission of the Warner Chilcott board of directors that all material governmental, regulatory or other approvals and consents required in connection with the consummation of the transaction will be obtained and that in connection with obtaining any necessary governmental, regulatory or other approvals and consents, no restrictions, terms or conditions will be imposed that would be material to its analysis. Deutsche Bank is not a legal, regulatory, tax or accounting expert and relied on the assessments made by Warner Chilcott and its other advisors with respect to such issues.

The following is a summary of the material financial analyses contained in the presentation that was made by Deutsche Bank to the Warner Chilcott board of directors on May 19, 2013, and that were used by Deutsche Bank in connection with rendering its opinion described above. The following summary, however, does not purport to be a complete description of the financial analyses performed by Deutsche Bank, nor does the order in which the analyses are described represent the relative importance or weight given to the analyses by Deutsche Bank. Some of the summaries of the financial analyses include information presented in tabular format. The tables must be read together with the full text of each summary and are alone not a complete description of Deutsche Bank's financial analyses. Except as otherwise noted, the following quantitative information, to the extent that it is based on market data, is based on market data as it existed on or before May 17, 2013, and is not necessarily indicative of current market conditions.

### Historical Exchange Ratio Analysis

Deutsche Bank calculated, reviewed and analyzed the average historical exchange ratios implied by dividing the daily closing prices of the Warner Chilcott shares by those of the shares of Actavis common stock, over historical periods up to and including 12:08 PM Eastern Time on May 10, 2013, which we refer to as the "leak time", and as of May 17, 2013. The leak time corresponds to the release time of a news article stating that Actavis was in early talks to acquire Warner Chilcott. Using this time, Deutsche Bank calculated, and used for purposes of its analyses, the "unaffected price" of the Warner Chilcott shares and the shares of Actavis common stock, that is the price of these shares unaffected by the leak disclosing the potential transaction. As used herein and in Deutsche Bank's analysis, "unaffected price" means the average trading price of such shares calculated on a volume-weighted-average basis, from the market opening on May 10, 2013, to 12:08 PM Eastern Time on that date, which was $15.47 for the Warner Chilcott shares and $107.56 for the shares of Actavis common stock.

The results of this historical exchange ratio analysis are as follows:

|  | Average Exchange Ratios |
| --- | --- |
| Current (as of May 17, 2013) | 0.1531 |
| Warner Chilcott unaffected price and Actavis unaffected price | 0.1438 |
| 5-day | 0.1406 |
| 10-day | 0.1380 |
| 1-month | 0.1394 |
| 3-month | 0.1487 |
| 6-month | 0.1464 |

In addition, Deutsche Bank reviewed the range of exchange ratios over the 6-month period prior to the leak time. Deutsche Bank found that the exchange ratio ranged from 0.1238 to 0.1720 over that period. Deutsche Bank noted that the exchange ratio of 0.1600 fell within that range and was higher than each of the average exchange ratios implied by the calculations listed above.

### Implied Exchange Ratio Analysis

In assessing the fairness of the exchange ratio, Deutsche Bank derived values for each of Warner Chilcott and Actavis using several valuation methodologies, including a comparable companies analysis in which implied values are derived using valuation multiples from selected publicly-traded companies and a discounted cash flow analysis, each of which is described in more detail in the summaries set forth below. In its valuation analyses of Warner Chilcott, Deutsche Bank used both the Warner Chilcott Management Case (referred to in the table below as "WC Management") and the Warner Chilcott Street Case (referred to in the table below as "WC Street") for

FOR SETTLEMENT PURPOSES ONLY

its estimates of future results. In its valuation analyses of Actavis, Deutsche Bank used the Actavis Public Forecasts (referred to in the table below as "A Street"). Each of these methodologies was used to generate implied per share valuation ranges on a fully diluted common share basis. For each methodology, an implied exchange ratio range was then calculated based on these implied per share valuation ranges.

The following table outlines the implied exchange ratios derived using each of these methodologies. With respect to any given range of exchange ratios, the low exchange ratio represents the ratio of the lowest value per Warner Chilcott share implied by such valuation (as described in greater detail in the summaries set forth below) and the highest value per share of Actavis common stock implied by such valuation (as described in greater detail in the summaries set forth below), and the high exchange ratio represents the ratio of the highest value per Warner Chilcott share implied by such valuation (as described in greater detail in the summaries set forth below) and the lowest value per share of Actavis common stock implied by such valuation (as described in greater detail in the summaries set forth below). The table should be read together with the more detailed summary of each of the valuation analyses set forth below.

|  | Implied Exchange Ratio |
|---|---|
| Trading Comparables Valuation | |
| TEV/2013E EBITDA – WC Management/A Street estimates | 0.1202-0.2429 |
| TEV/2014E EBITDA – WC Management/A Street estimates | 0.1102-0.2304 |
| Price/2013E EPS – WC Management/A Street estimates | 0.1348-0.2696 |
| Price/2014E EPS – WC Management/A Street estimates | 0.1269-0.2598 |
| TEV/2013E EBITDA – WC Street/A Street estimates | 0.1176-0.2384 |
| TEV/2014E EBITDA – WC Street/A Street estimates | 0.0917-0.1981 |
| Price/2013E EPS – WC Street/A Street estimates | 0.1343-0.2686 |
| Price/2014E EPS – WC Street/A Street estimates | 0.1215-0.2487 |
| Discounted Cash Flow Valuation | |
| WC Management/A Street estimates | 0.1403-0.2471 |
| WC Street/A Street estimates | 0.0969-0.1745 |

Deutsche Bank noted that the exchange ratio of 0.1600 fell within each of the above implied exchange ratio ranges.

### *Public Trading Comparables Analysis – Warner Chilcott*

Deutsche Bank reviewed and compared certain financial information and commonly used valuation measurements for Warner Chilcott to corresponding financial information and measurements for the following selected companies:

- Endo Health Solutions Inc.

- Salix Pharmaceuticals Ltd.

- Jazz Pharmaceuticals Public Limited Company

- United Therapeutics Corporation

- Questcor Pharmaceuticals, Inc.

Although none of the selected companies is either identical or directly comparable to Warner Chilcott, the companies included were chosen because they are publicly traded companies with operations that, for purposes of analysis and based on Deutsche Bank's professional judgment and experience, may be considered similar to certain operations of Warner Chilcott. Accordingly, the selection and analysis of publicly traded comparable companies was not simply mathematical. Rather, it involved complex considerations and qualitative judgments, reflected in Deutsche Bank's opinion, concerning differences in financial and operating characteristics of the selected companies and other factors that could affect the public trading value of such companies.

With respect to each of the selected companies and Warner Chilcott, Deutsche Bank calculated the following trading multiples:

- the multiple of total enterprise value ("TEV") to estimated earnings before interest, taxes, depreciation and amortization ("EBITDA"), which we refer to as "TEV/EBITDA", for calendar years 2013 and 2014; and

- the multiple of price to estimated earnings per share (or, with respect to Warner Chilcott, estimated adjusted cash net income per share) ("EPS"), which we refer to as "P/E", for calendar years 2013 and 2014.

The trading multiples of the selected companies and Warner Chilcott were calculated using the closing prices of the common stock of the selected companies and the Warner Chilcott shares on May 17, 2013 and the unaffected price of the Warner Chilcott shares, and were based on: (i) the most recent publicly available information; and (ii) Institutional Brokers' Estimate System consensus estimates as of May 17, 2013, for calendar years 2013 and 2014. The results of these analyses are summarized as follows:

| | TEV/EBITDA | | P/E | |
|---|---|---|---|---|
| | 2013E | 2014E | 2013E | 2014E |
| Warner Chilcott | | | | |
| Current (as of May 17, 2013) (a) | 6.8x | 7.5x | 5.8x | 6.1x |
| Unaffected price (b) | 6.0x | 6.6x | 4.6x | 4.9x |
| Selected Companies | | | | |
| Endo Health Solutions Inc. | 7.5 | 8.5 | 8.1 | 9.7x |
| ~~High~~Salix Pharmaceuticals Ltd. | 11.2x | 8.8x | 17.5x | 13.2x |
| Jazz Pharmaceuticals Public Limited Company | 7.6 | 6.1 | 9.5 | 7.8x |
| united Therapeutics Corporation | 6.7 | 6.0 | 11.1 | 9.7x |
| ~~Low~~Questcor Pharmaceuticals, Inc. | 5.8x | 4.0x | ~~8.1~~9.4x | ~~7.8~~8.0x |
| Mean | 7.8x | 6.7x | 11.1x | 9.7x |
| Median | 7.5x | 6.1x | 9.5x | 9.7x |

(a)  Warner Chilcott calculations based on publicly available information as of May 17, 2013.

(b)  Warner Chilcott calculations based on publicly available information as of the leak time on May 10, 2013.

Based in part on the trading multiples described above and on its professional judgment and experience, Deutsche Bank selected certain reference ranges of multiples and calculated corresponding ranges of implied equity values per Warner Chilcott share as follows:

- Deutsche Bank applied TEV/EBITDA multiples ranging from 5.5x to 7.0x to the estimated EBITDA of Warner Chilcott for the calendar years 2013 and 2014, as reflected in each of (i) the Warner Chilcott Management Case and (ii) the Warner Chilcott Street Case; and

- Deutsche Bank applied P/E multiples ranging from 4.5x to 7.0x to the estimated adjusted cash net income per share of Warner Chilcott for the calendar years 2013 and 2014, as reflected in each of (i) the Warner Chilcott Management Case and (ii) the Warner Chilcott Street Case.

The ranges of approximate implied equity values per Warner Chilcott share resulting from the foregoing calculation are presented in the following table:

| | Approximate Implied Value per Share |
|---|---|
| WC Management Case | |
| TEV/2013E EBITDA | $13.99-$21.16 |
| TEV/2014E EBITDA | $13.52-$20.57 |
| Price/2013E EPS (as defined) | $15.08-$23.46 |
| Price/2014E EPS (as defined) | $14.80-$23.03 |
| WC Street Case | |

FOR SETTLEMENT PURPOSES ONLY

|  | Approximate Implied Value per Share |
| --- | --- |
| TEV/2013E EBITDA | $13.68-$20.77 |
| TEV/2014E EBITDA | $11.26-$17.69 |
| Price/2013E EPS (as defined) | $15.03-$23.37 |
| Price/2014E EPS (as defined) | $14.17 -$22.04 |

### Public Trading Comparables Analysis – Actavis

Deutsche Bank reviewed and compared certain financial information and commonly used valuation measurements for Actavis to corresponding financial information and measurements for the following selected companies:

- Teva Pharmaceuticals Industries Limited

- Mylan, Inc.

- Perrigo Co.

- Hospira Inc.

Although none of the selected companies is either identical or directly comparable to Actavis, the companies included were chosen because they are publicly traded companies with operations that, for purposes of analysis and based on Deutsche Bank's professional judgment and experience, may be considered similar to certain operations of Actavis. Accordingly, the selection and analysis of publicly traded comparable companies was not simply mathematical. Rather, it involved complex considerations and qualitative judgments, reflected in Deutsche Bank's opinion, concerning differences in financial and operating characteristics of the selected companies and other factors that could affect the public trading value of such companies.

With respect to each of the selected companies and Actavis, Deutsche Bank calculated the following trading multiples:

- the TEV/EBITDA multiple for calendar years 2013 and 2014; and

- the P/E multiple for calendar years 2013 and 2014.

The trading multiples of the selected companies and Actavis were calculated using the closing prices of the common stock of the selected companies and the Actavis shares on May 17, 2013 and the unaffected price of the Actavis shares, and were based on: (i) the most recent publicly available information; and (ii) Institutional Brokers' Estimate System consensus estimates as of May 17, 2013, for calendar years 2013 and 2014. The results of these analyses are summarized as follows:

|  | TEV/EBITDA | | P/E | |
| --- | --- | --- | --- | --- |
|  | 2013E | 2014E | 2013E | 2014E |
| Actavis |  |  |  |  |
| Current (a s of May 17, 2013) (a) | 11.4x | 10.2x | 15.0x | 13.5x |
| Unaffected price (b) | 10.3x | 9.2x | 12.9x | 11.5x |
| Selected Companies |  |  |  |  |
| Teva Pharmaceuticals Industries Limited | 7.x | 6.x | 8.x | 7.4x |
| Mylan, Inc. | 9.x | 8.x | 11.x | 9.7x |
| ~~High~~Perrigo Co. | 12.9x | 11.6x | 19.5x | ~~17.3~~17.2x |
| ~~Low~~Hospira Inc. | ~~7.4~~10.8x | ~~6.9~~10.5x | ~~8.0~~17.6x | ~~7.4~~17.3x |
| Mean | 10.2x | 9.5x | 14.0x | 12.9x |
| Median | 10.3x | 9.7x | 14.3x | 13.5x |

(a)  Actavis calculations based on publicly available information as of May 17, 2013.

FOR SETTLEMENT PURPOSES ONLY

(b)  Actavis calculations based on publicly available information as of the leak time on May 10, 2013.

Based in part on the trading multiples described above and on its professional judgment and experience, Deutsche Bank selected certain reference ranges of multiples and calculated corresponding ranges of implied equity values per share of Actavis common stock as follows:

- Deutsche Bank applied TEV/EBITDA multiples ranging from 9.0x to 11.0x and from 8.0x to 10.0x to the estimated EBITDA of Actavis for the calendar years 2013 and 2014, respectively, reflected in the Actavis Public Forecasts; and

- Deutsche Bank applied P/E multiples ranging from 10.5x to 13.5x and from 9.5x to 12.5x to the estimated earnings per share of Actavis for the calendar years 2013 and 2014, respectively, reflected in the Actavis Public Forecasts.

The ranges of approximate implied equity values per Warner Chilcott share resulting from the foregoing calculation are presented in the following table:

|  | Approximate Implied Value per Share |
|---|---|
| TEV/2013E EBITDA | $87.15-$116.39 |
| TEV/2014E EBITDA | $89.29-$122.73 |
| Price/2013E EPS (as defined) | $87.03-$111.89 |
| Price/2014E EPS (as defined) | $88.65-$116.64 |

### *Discounted Cash Flow Analysis – Warner Chilcott*

Based on the Warner Chilcott Management Case estimates and the Warner Chilcott Street Case estimates, Deutsche Bank performed a discounted cash flow analysis to determine a range of implied present values per Warner Chilcott share as of March 31, 2013. Deutsche Bank calculated ranges of present values per Warner Chilcott share as the sum of (i) the present value of the estimated free cash flow per share for the nine months ended December 31, 2013 and for the years 2014 through 2017, using the midyear convention, using discount rates ranging from 8.0% to 10.0%, which were derived by Deutsche Bank utilizing a weighted average cost of capital analysis based on certain financial metrics, including betas, for Warner Chilcott and selected companies which exhibited similar characteristics to Warner Chilcott, and (ii) the present value of illustrative terminal values per share derived by applying EBITDA multiples ranging from 5.0x to 6.0x to Warner Chilcott's estimated EBITDA for 2017 and applying discount rates ranging from 8.0% to 10.0% to such terminal values. Deutsche Bank selected the terminal value multiples used in this analysis based upon the historical trading values and multiples of Warner Chilcott shares. Based on the above analysis, Deutsche Bank determined a range of present values per Warner Chilcott share of approximately $22.34 to $28.88 on the basis of the Warner Chilcott Management Case estimates and of approximately $15.43 to $20.39 on the basis of the Warner Chilcott Street Case estimates.

### *Discounted Cash Flow Analysis – Actavis*

Based on the Actavis Public Forecasts estimates, Deutsche Bank performed a discounted cash flow analysis to determine a range of implied present values per share of Actavis common stock as of March 31, 2013. Deutsche Bank calculated ranges of present values per share of Actavis common stock as the sum of (i) the present value of the estimated free cash flow per share for the nine months ended December 31, 2013 and for the years 2014 through 2017, using the midyear convention, using discount rates ranging from 7.0% to 9.0%, which were derived by Deutsche Bank utilizing a weighted average cost of capital analysis based on certain financial metrics, including betas, for Actavis and selected companies which exhibited similar characteristics to Actavis, and (ii) the present value of illustrative terminal values per share derived by applying EBITDA multiples ranging from 9.0x to 11.0x to Actavis' estimated EBITDA for 2017 and applying discount rates ranging from 7.0% to 9.0% to such terminal values. Deutsche Bank selected the terminal value multiples used in this analysis based upon the trading values and TEV/EBITDA multiples for the last 12 months of Actavis and of the selected companies described in the Public Trading Comparables Analysis above. Based on the above

analysis, Deutsche Bank determined a range of present values per share of Actavis common stock of approximately $116.88 to $159.18.

### Additional Valuation Analyses – Warner Chilcott

#### Historical Trading Analysis

Deutsche Bank reviewed the historical closing trading prices for Warner Chilcott shares during the 52-week period ending at the leak time on May 10, 2013. The trading range over the 52-week period was between $10.91 and $16.44, adjusting pre-dividend trading prices to reflect the $4.00 special dividend per share issued on August 31, 2012. Deutsche Bank also observed that the highest closing trading price for Warner Chilcott shares in the period between the leak time and May 17, 2013 was $19.28.

#### Analysts Price Targets

Deutsche Bank reviewed, for reference and informational purposes, share price targets for Warner Chilcott shares reflected in the latest publicly available equity research analyst reports issued both before and after the leak time by sixteen analysts covering Warner Chilcott. Deutsche Bank observed that, in the reports issued before the leak time, the targets ranged from $14.50 to $23.00 per share and, in the reports issued between the leak time and May 17, 2013, the targets ranged from $14.50 to $24.00 per share.

#### Precedent Transaction Analysis

Deutsche Bank reviewed the financial terms, to the extent publicly available, of the following selected completed business combination and similar transactions since September 2008, involving companies that Deutsche Bank deemed, in its selected these transactions because they involved specialty pharmaceutical companies with a value greater than $1 billion that had product concentration and potential generic competition risk characteristics similar to those of Warner Chilcott, which, in Deutsche Bank's professional judgment and experience, as made them sufficiently comparable to Warner Chilcott in certain business and financial respects. Deutsche Bank selected transactions that occurred since September 2008 because Deutsche Bank deemed it more appropriate to look at transactions occurring at or about the time the financial crisis disrupted the markets and thereafter and believed that the nearly five year period since September 2008 provided sufficient data for the analysis. The transactions reviewed were as follows:

| Date Announced | Acquirer | Target |
|---|---|---|
| 09/2012 | Valeant Pharmaceuticals International, Inc. | Medicis Pharmaceuticals Corporation |
| 05/2011 | Teva Pharmaceutical Industries Ltd. | Cephalon, Inc. |
| 10/2010 | Pfizer Inc. | King Pharmaceuticals, Inc. |
| 06/2010 | Valeant Pharmaceuticals International | Biovail Corporation (a) |
| 09/2009 | Abbott Laboratories | Solvay – Pharmaceutical business |
| 09/2009 | Leo Pharma Inc. | Warner Chilcott (licensing rights) |
| 09/2009 | Dainippon Sumitomo Pharma Co. | Sepracor Inc. |
| 08/2009 | Warner Chilcott | P&G – Global branded prescription pharmaceuticals business |
| 04/2009 | GlaxoSmithKline PLC | Stiefel Laboratories, Inc. |
| 11/2008 | King Pharmaceuticals, Inc. | Alpharma Inc. |
| 09/2008 | Shionogi & Co., Ltd. | Sciele Pharma, Inc. |

(a)  Reverse merger between Valeant Pharmaceuticals International and Biovail Corporation shown as an acquisition by Valeant Pharmaceuticals International of Biovail Corporation for valuation analysis.

Although none of the selected transactions is directly comparable to the transaction, the companies that participated in the selected transactions are such that, for purposes of analysis, the selected transactions may be considered similar to the transaction. Accordingly, the selection and analysis of precedent transactions was not simply mathematical. Rather, it involved complex considerations and qualitative judgments, reflected in Deutsche Bank's opinion, concerning differences between the characteristics of the selected transactions and the transaction that could affect the value of the subject companies and Warner Chilcott.

With respect to each selected transaction, Deutsche Bank calculated the multiple of the target's total enterprise value to its EBITDA for the 12-month period prior to announcement of the applicable transaction ("LTM"), which we refer to as "TEV/LTM EBITDA", on the basis of certain publicly available information. The results of this analysis are summarized as follows:

| Selected Transactions | TEV/LTM EBITDA |
|---|---|
| ~~High~~Valeant/Medicis | ~~11.9~~9.0x |
| ~~Low~~Teva/Cephalon | ~~3.8~~6.3x |
| Pfizer/King | 8.5x |
| Valeant/Biovail | 6.2x |
| Abbott/Solvay | 8.1x |
| Leo/Warner Chilcott | 6.3x |
| Dainippon Sumitomo/Sepracor | 8.0x |
| Warner Chilcott/P&G | 3.8x |
| GlaxoSmithKline/Stiefel | na |
| King/Alpharma | nm |
| Shionogi/Sciele | 11.9x |
| Mean | 7.6x |
| Median | 8.0x |

Based in part upon the multiples of the selected transactions described above and on its professional judgment and experience, Deutsche Bank calculated a range of estimated implied values per Warner Chilcott share by applying multiples of 6.0x to 8.0x to the estimated EBITDA of Warner Chilcott for the calendar year 2013, as reflected in the Warner Chilcott Management Case estimates. Deutsche Bank determined to use the estimated 2013 EBITDA rather than LTM EBITDA because estimated EBITDA is lower than LTM EBITDA. This analysis resulted in a range of implied values of approximately $16.38 to $25.95 per Warner Chilcott share. Deutsche Bank noted that the value of the consideration to be received in the transaction based on the unaffected price of Actavis common stock and on the closing price of Actavis common stock as of May 17, 2013, was $17.21 and $20.08, respectively, each of which is in the range of implied values from this analysis.

### Additional Valuation Analyses – Actavis

#### Historical Trading Analysis

Deutsche Bank reviewed the historical closing trading prices for shares of Actavis common stock during the 52-week period ending at the leak time on May 10, 2013. The trading range over the 52-week period was between $67.92 and $107.56, represented by the unaffected price of the Actavis common stock. Deutsche Bank also observed that the highest closing trading price for shares of Actavis common stock in the period between the leak time and May 17, 2013 was $125.50.

#### Analysts Price Targets

Deutsche Bank reviewed, for reference and informational purposes, share price targets for shares of Actavis common stock reflected in the latest publicly available equity research analyst reports issued both before and after the leak time by twenty-one analysts covering Actavis. Deutsche Bank observed that, in the reports issued before the leak time, the targets ranged from $81.00 to $128.00 per share and, in the reports issued between the leak time and May 17, 2013, the targets ranged from $105.00 to $140.00 per share.

### Additional Analyses

#### Transaction Premia Analysis

Deutsche Bank reviewed publicly available information relating to 19 selected stock-for-stock business combination transactions since 2009 that involved a U.S. publicly-traded target company with a total enterprise value of over $1 billion in which the holders of equity in the target company received less than 40% of the pro-forma ownership of the combined entity. These transactions are referred to below as the "selected premium transactions".

Although none of the selected premium transactions is directly comparable to the transaction, the size of the target and pro forma ownership of the target's equity holders in the selected premium transactions are such that, for purposes of analysis, Deutsche Bank believed in its professional judgment and experience that the selected premium transactions may be considered similar to the transaction.

With respect to each selected premium transaction, Deutsche Bank calculated the premium of the per-share consideration paid in such transaction, based on the applicable exchange ratio and the closing price of the acquirer's common stock one day prior to the announcement of the transaction, to the closing price of the target's common stock on the trading day prior to the announcement of the transaction (or, where applicable, prior to the date on which a leak or other disclosure of the potential transaction affected the price of the target's equity), thus using unaffected prices.

Deutsche Bank also calculated the premia of the per-share consideration to be paid in the transaction, based on the exchange ratio and each of the closing price of the Actavis shares as of May 17, 2013, and the unaffected price of the Actavis shares, to the unaffected price of the Warner Chilcott shares. The premia calculated on the basis of the closing price of the Actavis shares as of May 17, 2013, and of the unaffected price of the Actavis shares were equal to 29.8% and 11.2%, respectively.

Deutsche Bank noted that, of the 19 selected premium transactions, four had premia in the 10-20% range, corresponding to the premium to be paid in the transaction based on the unaffected price of the Actavis shares, and seven had premia in the 20-30% range, corresponding to the premium to be paid in the transaction based on the Actavis share price as of May 17, 2013.

*Illustrative Accretion/Dilution Analysis*

Deutsche Bank reviewed the potential pro-forma financial effect of the transaction on New Actavis' projected earnings per share for calendar years 2014 and 2015. Estimated financial data were based on the Warner Chilcott Street Case estimates and the Actavis Public Forecasts estimates.

The accretion/dilution analysis indicated that the transaction could be accretive to Actavis' projected standalone earnings per share in calendar years 2014 and 2015 whether or not including an illustrative amount of $300 million in synergies per year that may result from the transaction. The results of this analysis are summarized as follows:

|                              | Pro-Forma EPS | EPS Accretion |
|------------------------------|:-------------:|:-------------:|
| Without Illustrative Synergies |             |               |
| 2014                         | $11.62        | 24.5%         |
| 2015                         | $12.67        | 23.4%         |
| With Illustrative Synergies  |               |               |
| 2014                         | $12.84        | 37.6%         |
| 2015                         | $13.89        | 35.2%         |

The actual results achieved by the combined business after the effective time may vary from projected results and any such variation may be material.

*Illustrative Value Creation Analysis Based on Trading Multiples*

Deutsche Bank reviewed the potential value creation for Actavis stockholders and Warner Chilcott shareholders by comparing the unaffected price per share of Actavis common stock and the unaffected price per Warner Chilcott share with a hypothetical range of possible trading prices for New Actavis shares following the transaction. Estimated financial data were based on the Warner Chilcott Street Case estimates and the Actavis Public Forecasts estimates. In this analysis, Deutsche Bank illustrated the hypothetical price of a New Actavis share if it were to be priced based on pro forma 2014 estimated earnings per share and EBITDA, including the $300 million of illustrative synergies, at a range of trading multiples.  The range of illustrative trading multiples was derived from the calculated trading multiples of the unaffected price of each of the Warner Chilcott shares and the shares of Actavis common stock to 2014 estimated earnings per share and EBITDA, respectively, as described above under the Public Trading Comparables Analyses, and ranged, at the low end, from the weighted average of such multiples (based on net income and EBITDA contributions of Warner Chilcott and Actavis to

the pro forma totals) to, at the high end, the historical trading multiples observed of the unaffected price per share of Actavis common stock to 2014 estimated EPS and 2014 estimated EBITDA of Actavis.  The resulting illustrative P/E and TEV/EBITDA multiples ranged from 9.0x to 11.5x and from 8.3x to 9.2x, respectively.  Applying the range of illustrative P/E multiples to 2014E pro forma EPS resulted in a range of hypothetical trading prices per New Actavis share of $115.39 to $148.03.  Applying the range of illustrative TEV/EBITDA multiples to 2014E pro forma EBITDA resulted in a range of hypothetical trading prices per New Actavis share of $120.68 to $138.23.

*Actavis:*  Deutsche Bank noted that these hypothetical trading prices represented increases over the unaffected price of the shares of Actavis common stock, suggesting an implied gain in equity value to Actavis stockholders, ranging from 7.3% to 37.6% in the P/E multiple analysis and from 12.2% to 28.5% in the TEV/EBITDA multiple analysis.

*Warner Chilcott:*  Based on the exchange ratio, Deutsche Bank derived values per Warner Chilcott share reflected by the hypothetical New Actavis trading prices, ranging from $18.46 to $23.69 in the P/E multiple analysis and from $19.31 to $22.12 in the TEV/EBITDA multiple analysis. Deutsche Bank noted that these hypothetical trading prices represented increases over the unaffected price of the Warner Chilcott shares, suggesting an implied gain in equity value to Warner Chilcott shareholders, ranging from 19.3% to 53.1% in the P/E multiple analysis and from 24.8% to 43.0% in the TEV/EBITDA multiple analysis.

Deutsche Bank noted that ~~neither~~none of the transaction premia analysis ~~nor~~, the ~~foregoing~~ accretion/dilution analysis or the value creation analysis is a valuation methodology and each was presented merely for informational purposes.

### General

The preparation of a fairness opinion is a complex process involving the application of subjective business judgment in determining the most appropriate and relevant methods of financial analysis and the application of those methods to the particular circumstances and, therefore, is not readily susceptible to summary description. Deutsche Bank believes that its analyses must be considered as a whole and that considering any portion of such analyses and of the factors considered without considering all analyses and factors could create a misleading view of the process underlying the opinion. In arriving at its fairness determination, Deutsche Bank did not assign specific weights to any particular analyses.

In conducting its analyses and arriving at its opinion, Deutsche Bank utilized a variety of generally accepted valuation methods. The analyses were prepared solely for the purpose of enabling Deutsche Bank to provide its opinion to the Warner Chilcott board of directors as to the fairness, from a financial point of view, to the holders of Warner Chilcott shares, of the exchange ratio, as of the date of its opinion, and do not purport to be appraisals or necessarily reflect the prices at which businesses or securities actually may be sold, which are inherently subject to uncertainty. In connection with its analyses, Deutsche Bank made, and was provided by the managements of Warner Chilcott and Actavis with, numerous assumptions with respect to industry performance, general business and economic conditions and other matters, many of which are beyond the control of Deutsche Bank, Warner Chilcott or Actavis. Analyses based on estimates or forecasts of future results are not necessarily indicative of actual past or future values or results, which may be significantly more or less favorable than suggested by such analyses. Because such analyses are inherently subject to uncertainty, being based upon numerous factors or events beyond the control of Warner Chilcott, Actavis or their respective advisors, none of Warner Chilcott, Actavis, Deutsche Bank or any other person assumes responsibility if future results or actual values are materially different from these forecasts or assumptions.

The terms of the transaction, including the exchange ratio, were determined through arm's-length negotiations between Warner Chilcott and Actavis and were approved by the Warner Chilcott board of directors. Representatives of Deutsche Bank provided advice to Warner Chilcott during these negotiations; however, Deutsche Bank did not recommend any specific exchange ratio to Warner Chilcott or the Warner Chilcott board of directors, nor did Deutsche Bank advise that any specific exchange ratio constituted the only appropriate exchange ratio for the transaction. The decision to enter into the transaction was solely that of the Warner Chilcott board of directors. As described above, the opinion and presentation of Deutsche Bank to the Warner Chilcott board of directors were only one of a number of factors taken into consideration by the Warner Chilcott

FOR SETTLEMENT PURPOSES ONLY

board of directors in making its determination to approve the Transaction Agreement and the transactions contemplated by it, including the transaction.

The Warner Chilcott board of directors selected Deutsche Bank as financial advisor in connection with the transaction based on Deutsche Bank's qualifications, expertise, reputation and experience in mergers and acquisitions. Pursuant to an engagement letter between Warner Chilcott and Deutsche Bank dated May 19, 2013, and as subsequently amended, Warner Chilcott agreed to pay Deutsche Bank an aggregate fee of $12 million, of which $3 million became payable upon the delivery of Deutsche Bank's opinion (or would have become payable upon Deutsche Bank advising Warner Chilcott that it was unable to render an opinion) and the remaining portion of which is contingent upon consummation of the transaction. Warner Chilcott has also agreed to reimburse Deutsche Bank for all reasonable fees, expenses and disbursements of Deutsche Bank's outside counsel and all of Deutsche Bank's reasonable travel and other documented out-of-pocket expenses incurred in connection with the transaction or otherwise arising out of the retention of Deutsche Bank under the engagement letter, in each case on the terms set forth in the engagement letter. Warner Chilcott has also agreed to indemnify Deutsche Bank and certain related persons against certain liabilities, including certain liabilities under the federal securities laws arising out of its engagement or the transaction.

Deutsche Bank is an internationally recognized investment banking firm experienced in providing advice in connection with mergers and acquisitions and related transactions. Deutsche Bank is an affiliate of Deutsche Bank AG, which, together with its affiliates, is referred to as the DB Group. One or more members of the DB Group have, from time to time, provided, and are currently providing, investment banking, commercial banking (including extension of credit) and other financial services to Actavis or its affiliates for which they have received compensation of approximately €8.1 million since January 1, 2011, including having served as lender to Watson Pharmaceuticals, Inc., the predecessor to Actavis, in September 2011 on a $500 million revolving credit facility; having served as lender to Watson Pharmaceuticals, Inc. in June 2012 on a $1.8 billion term loan facility; having served as underwriter in September 2012 on an offering of $3.9 billion aggregate principal amount of notes; and having served as financial advisor to the former Actavis plc in connection with its October 2012 sale to Watson Pharmaceuticals, Inc. In addition, one or more members of the DB Group have, from time to time, provided, and are currently providing, investment banking, commercial banking (including extension of credit) and other financial services to Warner Chilcott or its affiliates for which they have received compensation of approximately €2.1 million since January 1, 2011, including having served as co-manager in March 2011 of a secondary offering of approximately $580 million of Warner Chilcott shares; and having served as co-lead arranger and joint bookrunner in March 2011 on term loan and revolving credit facilities totaling $3.25 billion. In connection with the consummation of the transaction, it is anticipated that indebtedness of Warner Chilcott which has been extended in part by one or more members of the DB Group will be repaid or refinanced. The DB Group may also provide investment and commercial banking services to New Actavis and its affiliates in the future, for which Deutsche Bank would expect the DB Group to receive compensation. In the ordinary course of business, members of the DB Group may actively trade in the securities and other instruments and obligations of Actavis, Warner Chilcott and their respective affiliates for their own accounts and for the accounts of their customers. Accordingly, the DB Group may at any time hold a long or short position in such securities, instruments and obligations.

### Opinion of BofA Merrill Lynch

The full text of BofA Merrill Lynch's written opinion to Actavis' board of directors, which describes, among other things, the assumptions made, procedures followed, factors considered and limitations on the review undertaken, is attached as Annex E to this document and is incorporated by reference herein in its entirety. The following summary of BofA Merrill Lynch's opinion is qualified in its entirety by reference to the full text of the opinion. BofA Merrill Lynch delivered its opinion to Actavis' board of directors for the benefit and use of Actavis' board of directors in connection with and for purposes of its evaluation of the Actavis exchange ratio from a financial point of view. BofA Merrill Lynch's opinion does not address any other aspect of the transaction and no opinion or view was expressed as to the relative merits of the transaction in comparison to other strategies or transactions that might be available to Actavis or in which Actavis might engage or as to the underlying business decision of Actavis to proceed with or effect the transaction. BofA Merrill Lynch's opinion does not address any other aspect of the transaction and does not constitute a recommendation to any stockholders as to how to vote or act in connection with the proposed transaction or any related matter.

In connection with rendering its opinion, BofA Merrill Lynch:

- reviewed certain publicly available business and financial information relating to Warner Chilcott and Actavis;

- reviewed certain internal financial and operating information with respect to the business, operations and prospects of Warner Chilcott furnished to or discussed with BofA Merrill Lynch by the management of Warner Chilcott, including the Warner Chilcott Management Case;

- reviewed the Actavis-Adjusted Warner Chilcott Management Case and discussed with the management of Actavis its assessments as to the relative likelihood of achieving the future financial results reflected in the Warner Chilcott Management Case and the Actavis-Adjusted Warner Chilcott Management Case;

- reviewed the 2013 Actavis Guidance and the Actavis Public Forecasts;

- reviewed certain estimates as to the amount and timing of cost savings and tax benefits (the "Synergies") anticipated by the management of Actavis to result from the transaction;

- discussed with the management of Actavis its assessment as to the products, product candidates and technology of Warner Chilcott;

- discussed the past and current business, operations, financial condition and prospects of Warner Chilcott with members of senior managements of Warner Chilcott and Actavis, and discussed the past and current business, operations, financial condition and prospects of Actavis with members of senior management of Actavis;

- reviewed the potential pro forma financial impact of the transaction on the future financial performance of New Actavis, including the potential effect on New Actavis' estimated earnings per share;

- reviewed the trading histories for Warner Chilcott shares and Actavis common stock and a comparison of such trading histories with each other and with the trading histories of other companies BofA Merrill Lynch deemed relevant;

- compared certain financial and stock market information of Warner Chilcott and Actavis with similar information of other companies BofA Merrill Lynch deemed relevant;

- compared certain financial terms of the transaction to financial terms, to the extent publicly available, of other transactions BofA Merrill Lynch deemed relevant;

- reviewed the Transaction Agreement, the Expenses Reimbursement Agreement, the Rule 2.5 Announcement and certain related documents; and

- performed such other analyses and studies and considered such other information and factors as BofA Merrill Lynch deemed appropriate.

In arriving at its opinion, BofA Merrill Lynch assumed and relied upon, without independent verification, the accuracy and completeness of the financial and other information and data publicly available or provided to or otherwise reviewed by or discussed with it and relied upon the assurances of the managements of Actavis and Warner Chilcott that they were not aware of any facts or circumstances that would make such information or data inaccurate or misleading in any material respect. With respect to the Actavis-Adjusted Warner Chilcott Management Case and the Synergies, BofA Merrill Lynch assumed, at the direction of Actavis, that they were reasonably prepared on bases reflecting the best currently available estimates and good faith judgments of the management of Actavis as to the future financial performance of Warner Chilcott and the other matters covered thereby and, based on the assessments of the management of Actavis as to the relative likelihood of achieving the future financial results reflected in the Warner Chilcott Management Case and the Actavis-Adjusted Warner Chilcott Management Case, BofA Merrill Lynch relied, at the direction of Actavis, on the Actavis-Adjusted Warner Chilcott Management Case for purposes of its opinion. BofA Merrill Lynch relied, at the direction of Actavis, on the assessment of the management of Actavis as to New Actavis' ability to achieve the Synergies and was advised by Actavis, and assumed that the Synergies will be realized in the amounts and at the times projected. BofA Merrill Lynch was advised by Actavis and assumed that the Actavis Public Forecasts are a reasonable basis upon which to evaluate the future financial performance of Actavis and, at the direction of the management of Actavis, BofA Merrill Lynch used the Actavis Public Forecasts in performing its analyses. BofA Merrill Lynch did not make and was not provided with any independent evaluation or appraisal of the assets or liabilities (contingent or otherwise) of Warner Chilcott or Actavis, nor did it make any physical inspection of the properties or assets of Warner Chilcott or Actavis. Except to the extent reflected in the Actavis-Adjusted Warner Chilcott Management Case at Actavis' direction BofA Merrill Lynch did not take into account any potential financial impact of the governmental investigations or litigations to which Warner Chilcott is subject and assumed that any such financial impact would not be material to its analyses or opinion. In addition, at Actavis' direction, BofA Merrill Lynch did not take into account for purposes of its analyses any costs arising as a result of taxes that may be payable in connection with the transactions. BofA Merrill Lynch did not evaluate the solvency or fair value of Warner Chilcott or Actavis under any state, federal or other laws relating to bankruptcy, insolvency or similar matters. BofA Merrill Lynch assumed, at the direction of Actavis, that the transaction would be consummated in accordance with its terms, without waiver, modification or amendment of any material term, condition or agreement and that, in the course of obtaining the necessary governmental, regulatory and other approvals, consents, releases and waivers for the transaction, no delay, limitation, restriction or condition, including any divestiture requirements or amendments or modifications, would be imposed that would have an adverse effect on Actavis, or the contemplated benefits of the transaction.

BofA Merrill Lynch expressed no view or opinion as to any terms or other aspects of the transaction (other than the Actavis exchange ratio to the extent expressly specified in its opinion), including, without limitation, the form or structure of the transaction. BofA Merrill Lynch's opinion was limited to the fairness, from a financial point of view, to the holders of Actavis common stock of the Actavis exchange ratio (taking into account the acquisition), and no opinion or view was expressed with respect to any consideration received in connection with the transaction by the holders of any other class of securities, creditors or other constituencies of any party. In addition, no opinion or view was expressed with respect to the fairness (financial or otherwise) of the amount, nature or any other aspect of any compensation to any of the officers, directors or employees of any party to the transaction, or class of such persons, relative to the New Actavis ordinary shares to be received by holders of Actavis common stock in the transaction. Furthermore, no opinion or view was expressed as to the relative merits of the transaction in comparison to other strategies or transactions that might be available to Actavis or in which Actavis might engage or as to the underlying business decision of Actavis to proceed with or effect the transaction. BofA Merrill Lynch did not express any opinion as to what the value of New Actavis ordinary shares actually would be when issued or the prices at which New Actavis ordinary shares, Actavis common stock or Warner Chilcott shares would trade at any time, including following announcement or effective time. In addition, BofA Merrill Lynch expressed no opinion or recommendation as to how any shareholder should vote or act in connection with the transaction or any related matter. Except as described above, Actavis imposed no other limitations on the investigations made or procedures followed by BofA Merrill Lynch in rendering its opinion.

BofA Merrill Lynch's opinion was necessarily based on financial, economic, monetary, market and other conditions and circumstances as in effect on, and the information made available to BofA Merrill Lynch as of, the date of its opinion. It should be understood that subsequent developments may affect its opinion, and BofA Merrill Lynch does not have any obligation to update, revise or reaffirm its opinion. The issuance of BofA Merrill Lynch's opinion was approved by BofA Merrill Lynch's Americas Fairness Opinion Review Committee.

The following represents a brief summary of the material financial analyses presented by BofA Merrill Lynch to Actavis' board of directors in connection with its opinion. The financial analyses summarized below include information presented in tabular format. In order to fully understand the financial analyses performed by BofA Merrill Lynch, the tables must be read together with the text of each summary. The tables alone do not constitute a complete description of the financial analyses performed by BofA Merrill Lynch. Considering the data set forth in the tables below without considering the full narrative description of the financial analyses, including the methodologies and assumptions underlying the analyses, could create a misleading or incomplete view of the financial analyses performed by BofA Merrill Lynch.

*Summary of Material Financial Analyses*

*Selected Publicly Traded Companies Analysis*

Warner Chilcott. In performing a selected publicly traded companies analysis of Warner Chilcott, BofA Merrill Lynch reviewed publicly available financial and stock market information for Warner Chilcott and the following seven publicly traded companies in the pharmaceuticals industry which, based on its professional judgment and experience, BofA Merrill Lynch deemed most relevant to consider in relation to Warner Chilcott:

- Endo Health Solutions, Inc.;

- Jazz Pharmaceuticals Public Limited Company;

- Questcor Pharmaceuticals, Inc.;

- Salix Pharmaceuticals, Ltd.;

- Shire plc;

- United Therapeutics Corporation; and

- Valeant Pharmaceuticals International, Inc.

BofA Merrill Lynch reviewed, among other things, per share equity values of the selected companies as a multiple of 2013 and 2014 estimated earnings per share (commonly referred to as EPS) or P/E. BofA Merrill Lynch also reviewed enterprise values of the selected companies, calculated as equity values plus debt, plus minority interest, less cash, as a multiple of 2013 and 2014 estimated earnings before interest, taxes, depreciation and amortization, commonly referred to as Adjusted EBITDA, or Enterprise Value / Adjusted EBITDA. The per share values of the selected companies used for this analysis were based on the closing share prices of the selected companies on May 17, 2013. The estimated financial data used by BofA Merrill Lynch for the selected publicly traded companies were from publicly available research analysts' estimates.  This analysis indicated the following implied multiples for the selected companies.

| | P/E | | Enterprise Value / Adjusted EBITDA | |
| --- | --- | --- | --- | --- |
| | 2013E | 2014E | 2013E | 2014E |
| Endo Health Solutions Inc. | 8.1x | 9.7x | 7.6x | 8.6x |
| Jazz Pharmaceuticals Public Limited Company | 9.5x | 7.8x | 7.8x | 6.2x |
| Questcor Pharmaceuticals, Inc. | 9.4x | 8.0x | 5.7x | 3.9x |
| Salix Pharmaceuticals, Ltd. | 17.5x | 13.2x | 10.9x | 8.6x |

FOR SETTLEMENT PURPOSES ONLY

| | | | | |
|---|---|---|---|---|
| Shire plc | 14.1x | 12.5x | 10.1x | 9.0x |
| United Therapeutics Corp. | 11.1x | 9.7x | 7.2x | 6.4x |
| Valeant Pharmaceuticals International, Inc. | 13.7x | 11.8x | 14.3x | 12.8x |
| Median | 11.1x | 9.7x | 7.8x | 8.6x |

BofA Merrill Lynch then applied a reference range of 2013 EPS multiples of 8.0x to 10.0x and a reference range of 2014 EPS multiples of 7.5x to 9.5x, in each case derived by BofA Merrill Lynch based on its review of the selected companies, to Warner Chilcott's 2013 and 2014 estimated EPS (non-U.S. GAAP). BofA Merrill Lynch also applied a reference range of 2013 Adjusted EBITDA multiples of 7.0x to 8.5x and 2014 Adjusted EBITDA multiples of 6.5x to 8.5x, in each case derived by BofA Merrill Lynch based on its review of the selected companies, to Warner Chilcott's 2013 and 2014 estimated Adjusted EBITDA. The estimated financial data utilized by BofA Merrill Lynch for Warner Chilcott were from the Actavis-Adjusted Warner Chilcott Management Case.

This analysis indicated the following approximate implied per share equity value reference ranges for Warner Chilcott (rounded to the nearest $0.25 per share), as compared to:

- the implied value, as of May 19, 2013, of the consideration payable per ordinary share of Warner Chilcott, which is referred to as the Implied Value of the Consideration,

- the implied value as of 12:07 p.m. Eastern Time on May 10, 2013, the time prior to the publication of a media report of a potential transaction between Actavis and Warner Chilcott, of the consideration payable per ordinary share of Warner Chilcott, which is referred to as the Unaffected Implied Value of the Consideration, and

- the value of an ordinary share of Warner Chilcott as of 12:07 p.m. Eastern Time on May 10, 2013, which is referred to as the Unaffected Warner Chilcott Share Price:

| Implied Per Share Equity Value Reference Ranges for Warner Chilcott | | | | Implied Value of the Consideration | Unaffected Implied Value of the Consideration | Unaffected Warner Chilcott Share Price |
|---|---|---|---|---|---|---|
| 2013E Non-U.S. GAAP EPS | 2014E Non-U.S. GAAP EPS | 2013E Adj. EBITDA | 2014E Adj. EBITDA | | | |
| $25.50 - $32.00 | $19.25 - $24.50 | $19.50 - $26.25 | $12.25 - $20.00 | $ 20.08 | $ 17.24 | $ 15.49 |

No company used in this analysis is identical or directly comparable to Warner Chilcott. Accordingly, an evaluation of the results of this analysis is not entirely mathematical. Rather, this analysis involves complex considerations and judgments concerning differences in financial and operating characteristics and other factors that could affect the public trading or other values of the companies to which Warner Chilcott were compared.

Actavis. In performing a selected publicly traded companies analysis of Actavis, BofA Merrill Lynch reviewed publicly available financial and stock market information for Actavis and the following six publicly traded companies in the generic pharmaceuticals industry which, based on its professional judgment and experience, BofA Merrill Lynch deemed most relevant to consider in relation to Actavis.

Exhibit A                                                        FOR SETTLEMENT PURPOSES ONLY

- Akorn, Inc.;

- Hospira Inc.;

- Impax Laboratories, Inc.;

- Mylan Inc.;

- Perrigo Co.; and

- Teva Pharmaceutical Industries Limited.

BofA Merrill Lynch reviewed, among other things, per share equity values, of the selected companies as a multiple of 2013 and 2014 estimated EPS. BofA Merrill Lynch also reviewed enterprise values of the selected companies, calculated as equity values plus debt, plus minority interest, less cash, as a multiple of 2013 and 2014 estimated Adjusted EBITDA. The per share values of the selected companies used for this analysis were based on closing share prices of the selected companies on May 17, 2013 (other than Mylan, Inc., which is based on the closing stock price on May 13, 2013, the last trading day before media reports of an offer by Mylan to acquire Actavis). The estimated financial data used by BofA Merrill Lynch for the selected publicly traded companies were from publicly available research analysts' estimates.  This analysis indicated the following implied multiples for the selected companies.  For purposes of the table below, "NM" means not meaningful.

| | P/E | | Enterprise Value / Adjusted EBITDA | |
|---|---|---|---|---|
| | 2013E | 2014E | 2013E | 2014E |
| Akorn, Inc. | 26.7x | 18.6x | 16.0x | 11.4x |
| Hospira Inc. | 17.6x | 17.3x | 10.8x | 10.4x |
| Impax Laboratories, Inc. | NM | 31.8x | 22.9x | 12.5x |
| Mylan Inc. | 10.2x | 9.0x | 8.9x | 8.0x |
| Perrigo Co. | 19.5x | 17.2x | 12.9x | 11.6x |
| Teva Pharmaceutical Industries Limited | 8.0x | 7.4x | 7.4x | 6.9x |

| Median | | | | |
|---|---|---|---|---|
| | 17.6x | 17.3x | 11.8x | 10.9x |

BofA Merrill Lynch then derived reference ranges of 2013 EPS multiples, 2014 EPS multiples, 2013 Adjusted EBITDA multiples and 2014 Adjusted EBITDA multiples, in each case based on its review of the selected companies. BofA Merrill Lynch then compared these reference ranges of multiples to corresponding multiples implied for Actavis based on its stock price at 12:07 p.m. Eastern Time on May 10, 2013:

| | Reference Ranges of Multiples | Implied Multiples for Actavis Based on Stock Price at 12:07 p.m. Eastern Time on May 10, 2013 |
|---|---|---|
| **Per Share Equity Value as a Multiple of:** | | |
| Estimated Calendar Year 2013E EPS | 12.0x - 16.0x | 13.0x |
| Estimated Calendar Year 2014E EPS | 10.0x - 14.0x | 11.5x |
| Enterprise Value as a Multiple of: | | |
| Estimated Calendar Year 2013E Adj. EBITDA | 10.0x - 12.0x | 10.4x |
| Estimated Calendar Year 2014E Adj. EBITDA | 9.5x - 11.5x | 9.1x |

No company used in this analysis is identical or directly comparable to Actavis. Accordingly, an evaluation of the results of this analysis is not entirely mathematical. Rather, this analysis involves complex considerations and judgments concerning differences in financial and operating characteristics and other factors that could affect the public trading or other values of the companies to which Actavis were compared.

*Selected Precedent Transactions Analysis*

BofA Merrill Lynch reviewed, to the extent publicly available, financial information relating to the following 17 selected transactions involving companies in the pharmaceutical industry, which, based on its professional judgment and experience, BofA Merrill Lynch deemed relevant to consider in relation to Warner Chilcott and the transaction.

BofA Merrill Lynch reviewed transaction values, calculated as the enterprise value implied for the target company based on the consideration payable in the selected transaction, as a multiple of the target company's last 12 months, or LTM, EBITDA. This analysis indicated the following implied multiples for the selected transactions. For purposes of the table below, "NA" means data not publicly available, and "NM" means not meaningful.

Exhibit A                                                                    FOR SETTLEMENT PURPOSES ONLY

| Target | Acquiror | Announcement Date | Enterprise Value / LTM EBITDA |
|--------|----------|-------------------|-------------------------------|
| Actient Holdings LLC | Auxilium Pharmaceuticals, Inc. | 4-29-2013 | 9.6x |
| Medicis Pharmaceutical Corporation | Valeant Pharmaceuticals International, Inc. | 9-3-2012 | 9.0x |
| ISTA Pharmaceuticals, Inc. | Bausch & Lomb Incorporated | 3-26-2012 | NM |
| Cephalon, Inc. | Teva Pharmaceutical Industries Ltd. | 5-2-2011 | 6.8x |
| King Pharmaceuticals, Inc. | Pfizer Inc. | 10-12-2010 | 7.9x |
| Biovail Corporation | Valeant Pharmaceuticals International | 6-21-2010 | 6.2x |
| Solvay Pharmaceutical | Abbott Laboratories | 9-28-2009 | 7.9x |
| Sepracor Inc. | Dainippon Sumitomo Pharma Co., Ltd. | 9-3-2009 | 7.7x |

FOR SETTLEMENT PURPOSES ONLY

| | | | |
|---|---|---|---|
| P&G Pharmaceuticals | Warner Chilcott plc | 8-24-2009 | 3.7x |
| Alpharma Inc. | King Pharmaceuticals, Inc. | 11-24-2008 | NM |
| Sciele Pharma, Inc. | Shionogi & Co., Ltd. | 9-1-2008 | 11.4x |
| Axcan Pharma Inc. | TPG Capital | 11-29-2007 | 7.6x |
| Reliant Pharmaceuticals, Inc. | GlaxoSmithKline plc | 11-21-2007 | NA |
| 3M Pharmaceutical Business in U.S., Canada, and Latin America | Graceway Pharmaceuticals, LLC | 11-9-2006 | NA |
| Kos Pharmaceuticals, Inc. | Abbott Laboratories | 11-5-2006 | 20.1x |
| Schwarz Pharma AG | UCB SA | 9-26-2006 | NM |
| Altana Pharma AG | Nycomed AG | 9-21-2006 | 5.4x |

Exhibit A                                                                   FOR SETTLEMENT PURPOSES ONLY

~~BofA Merrill Lynch reviewed transaction values, calculated as the enterprise value implied for the target company based on the consideration payable in the selected transaction, as a multiple of the target company's last 12 months, or LTM, EBITDA.~~ This analysis indicated mean and median multiples for Enterprise Value / LTM EBITDA of 8.6x and 7.8x, respectively.

BofA Merrill Lynch then applied Enterprise Value / LTM EBITDA multiples of 6.0x to 8.0x derived from the selected transactions to Warner Chilcott's LTM Adjusted EBITDA through March 31, 2013. The financial data used by BofA Merrill Lynch for the selected transactions were based on publicly available information at the time of announcement of the relevant transaction. The financial data utilized by BofA Merrill Lynch for Warner Chilcott were derived from Warner Chilcott's public filings with the SEC. This analysis indicated the following approximate implied per share equity value reference range for Warner Chilcott (rounded to the nearest $0.25 per share), as compared to (i) the Implied Value of the Consideration, (ii) the Unaffected Implied Value of the Consideration, and (iii) the Unaffected Warner Chilcott Share Price:

| Implied Per Share Equity Value Reference Range for Warner Chilcott | Implied Value of the Consideration | Unaffected Implied Value of the Consideration | Unaffected Warner Chilcott Share Price |
|---|---|---|---|
| $19.25 - $30.00 | $   20.08 | $   17.24 | $   15.49 |

No company, business or transaction used in this analysis is identical or directly comparable to Warner Chilcott or the transaction. Accordingly, an evaluation of the results of this analysis is not entirely mathematical. Rather, this analysis involves complex considerations and judgments concerning differences in financial and operating characteristics and other factors that could affect the acquisition or other values of the companies, business segments or transactions to which Warner Chilcott or the transaction were compared.

*Discounted Cash Flow Analysis*

Warner Chilcott: BofA Merrill Lynch performed a discounted cash flow analysis of Warner Chilcott to calculate the estimated present value of the standalone unlevered, after-tax free cash flows that Warner Chilcott was forecasted to generate from the second quarter of 2013 through fiscal year 2017 as reflected in the Actavis-Adjusted Warner Chilcott Management Case. BofA Merrill Lynch also calculated terminal values for Warner Chilcott by applying a perpetuity growth rate, based on its professional judgment given the nature of Warner Chilcott, its business and its industry, of negative 2.5% to positive 0.5% to projected unlevered, after-tax free cash flows in the terminal year. The cash flows and terminal values were then discounted to present value as of March 31, 2013 using discount rates ranging from 8.0% to 10.0%, which were based on an estimate of Warner Chilcott's weighted average cost of capital, to derive a range of implied enterprises values for Warner Chilcott. A range of implied equity values for Warner Chilcott was calculated by reducing the range of implied enterprise values by the amount of Warner Chilcott's net debt (debt less cash and cash equivalents) as of March 31, 2013. This analysis indicated the following approximate implied per share equity value reference range for Warner Chilcott (rounded to the nearest $0.25 per share), as compared to (i) the Implied Value of the Consideration, (ii) the Unaffected Implied Value of the Consideration, and (iii) the Unaffected Warner Chilcott Share Price:

| Implied Per Share Equity Value Reference Range for Warner Chilcott | Implied Value of the Consideration | Unaffected Implied Value of the Consideration | Unaffected Warner Chilcott Share Price |
|---|---|---|---|
| | | | |



| LTM EBITDA | | | |
|---|---|---|---|
| $17.00 - $28.00 | $ 20.08 | $ 17.24 | $ 15.49 |

*Actavis*: BofA Merrill Lynch performed a discounted cash flow analysis of Actavis to calculate the estimated present value of the standalone unlevered, after-tax free cash flows that Actavis was forecasted to generate from the second quarter of 2013 through fiscal year 2017 based on the Actavis Public Forecasts. BofA Merrill Lynch also calculated terminal values for Actavis by applying a perpetuity growth rate, based on its professional judgment given the nature of Actavis, its business and its industry, of 0.0% to 1.0% to projected unlevered, after-tax free cash flows in the terminal year. The cash flows and terminal values were then discounted to present value as of March 31, 2013 using discount rates ranging from 6.5% to 8.0%, which were based on an estimate of Actavis' weighted average cost of capital, to derive a range of implied enterprises values for Actavis. A range of implied equity values for Actavis was calculated by reducing the range of implied enterprise values by the amount of Actavis' net debt (debt less cash and cash equivalents plus minority interest) as of March 31, 2013. This analysis indicated the following approximate implied per share equity value reference range for Actavis rounded to the nearest $0.25 per share:



Implied Per Share Equity Value Reference Range for Actavis

$112.25 - $178.25

*Value Creation Analysis Based on Discounted Cash Flow*

BofA Merrill Lynch performed a value creation analysis by comparing the implied equity value of Actavis based on the discounted cash flow analysis described above to the portion of implied pro forma equity value of New Actavis after the transaction attributable to the equity ownership interest of Actavis stockholders.

To calculate the implied pro forma equity value of New Actavis, BofA Merrill Lynch summed (i) the mid-point of the discounted cash flow implied equity value of Actavis, (ii) the mid-point of the discounted cash flow implied intrinsic equity value of Warner Chilcott, (iii) the implied present value of expected operational synergies, as projected by the management of Actavis, discounted using a 9.0% discount rate and a negative 1.5% perpetuity growth rate (net of acquisition integration costs) and (iv) the implied present value of expected tax synergies, as projected by the management of Actavis, discounted using a 9.0% discount rate and a 0.5% perpetuity growth rate.

BofA Merrill Lynch then compared the portion of implied pro forma equity value of New Actavis calculated above attributable to the equity ownership interest of Actavis stockholders to the implied equity value of Actavis on a standalone basis derived from the discounted cash flow analysis described above, yielding an implied accretion in equity value to Actavis stockholders of 13%.

*Value Creation Analysis Based on Trading Multiples*

BofA Merrill Lynch also prepared a value creation analysis by comparing the price for a share of Actavis common stock at 12:07 p.m. Eastern Time on May 10, 2013, the time prior to the publication of a media report of a potential transaction between Actavis and Warner Chilcott, to the estimated pro forma market value per ordinary share of New Actavis after the transaction. BofA Merrill Lynch calculated a reference range of pro forma market values of New Actavis ordinary shares following the transaction by applying calendar year 2014 EPS multiples of 10.0x to 12.0x to estimated (non-U.S. GAAP) EPS for New Actavis for 2014. The estimated financial data utilized by BofA Merrill Lynch for New Actavis for 2014 were from the Actavis Public Forecasts and Actavis-Adjusted Warner Chilcott Management Case, reflects 75% of run-rate operational synergies, as projected by the management of Actavis, and per Actavis management assumes Actavis earnings before taxes taxed at 20% on a non-GAAP basis. This value creation analysis yielded an implied accretion in equity value to Actavis stockholders ranging from 16% to 40%.

*Other Factors*

In rendering its opinion, BofA Merrill Lynch also reviewed and considered other factors, including (i) historical trading prices of Actavis common stock and Warner Chilcott ordinary shares during the one-year period ended May 10, 2013, the day a media report of a potential transaction between Actavis and Warner Chilcott was published noting that the low and high closing prices during such period were $10.91 and $17.86, respectively; and (ii) selected analyst price targets found in publicly available equity research as of

May 19, 2013, noting that the low and high share price targets ranged, when rounded to the nearest $0.25 per share, from $14.00 to $23.00.

*Miscellaneous*

As noted above, the discussion set forth above is a summary of the material financial analyses presented by BofA Merrill Lynch to Actavis' board of directors in connection with its opinion and is not a comprehensive description of all analyses undertaken by BofA Merrill Lynch in connection with its opinion. The preparation of a financial opinion is a complex analytical process involving various determinations as to the most appropriate and relevant methods of financial analysis and the application of those methods to the particular circumstances and, therefore, a financial opinion is not readily susceptible to partial analysis or summary description. BofA Merrill Lynch believes that its analyses summarized above must be considered as a whole. BofA Merrill Lynch further believes that selecting portions of its analyses and the factors considered or focusing on information presented in tabular format, without considering all analyses and factors or the narrative description of the analyses, could create a misleading or incomplete view of the processes underlying BofA Merrill Lynch's analyses and opinion. The fact that any specific analysis has been referred to in the summary above is not meant to indicate that such analysis was given greater weight than any other analysis referred to in the summary.

In performing its analyses, BofA Merrill Lynch considered industry performance, general business and economic conditions and other matters, many of which are beyond the control of Actavis and Warner Chilcott.

The estimates of the future performance of New Actavis, Actavis and Warner Chilcott in or underlying BofA Merrill Lynch's analyses are not necessarily indicative of actual values or actual future results, which may be significantly more or less favorable than those estimates or those suggested by BofA Merrill Lynch's analyses. These analyses were prepared solely as part of BofA Merrill Lynch's analysis of the fairness, from a financial point of view, to the holders of Actavis common stock of the Actavis exchange ratio (taking into account the acquisition) and were provided to Actavis' board of directors in connection with the delivery of BofA Merrill Lynch's opinion. The analyses do not purport to be appraisals or to reflect the prices at which a company might actually be sold or the prices at which any securities have traded or may trade at any time in the future. Accordingly, the estimates used in, and the ranges of valuations resulting from, any particular analysis described above are inherently subject to substantial uncertainty and should not be taken to be BofA Merrill Lynch's view of the actual values of New Actavis, Actavis or Warner Chilcott.

The type and amount of consideration payable in the transaction was determined through negotiations between Actavis and Warner Chilcott, rather than by any financial advisor, and was approved by Actavis' board of directors. The decision to enter into the Transaction Agreement was solely that of Actavis' board of directors. As described above, BofA Merrill Lynch's opinion and analyses were only one of many factors considered by Actavis' board of directors in its evaluation of the proposed transaction and should not be viewed as determinative of the views of Actavis' board of directors or management with respect to the transaction or the Actavis exchange ratio.

Actavis has agreed to pay BofA Merrill Lynch for its services in connection with the transaction an aggregate fee of $10.5 million, $2 million of which was payable in connection with its opinion and the remainder of which is contingent upon the completion of the transaction. In negotiating the fee payable to BofA Merrill Lynch, Actavis considered the fact that it intended to engage two financial advisors and, taking into account its financial analysis of the transaction, the fees that it expected should be payable to its financial advisors in the aggregate. Actavis also has agreed to reimburse BofA Merrill Lynch for its expenses incurred in connection with BofA Merrill Lynch's engagement and to indemnify BofA Merrill Lynch, any controlling person of BofA Merrill Lynch and each of their respective directors, officers, employees, agents and affiliates against specified liabilities, including liabilities under the federal securities laws.

BofA Merrill Lynch and its affiliates comprise a full service securities firm and commercial bank engaged in securities, commodities and derivatives trading, foreign exchange and other brokerage activities, and principal investing as well as providing investment, corporate and private banking, asset and investment management, financing and financial advisory services and other commercial services and products to a wide range of companies, governments and individuals. In the ordinary course of their businesses, BofA Merrill Lynch and its affiliates invest on a principal basis or on behalf of customers or manage funds that invest, make or hold long or short positions, finance positions or trade or otherwise effect transactions in the equity, debt or other securities or financial instruments (including derivatives, bank loans or other obligations) of New Actavis, Actavis, Warner Chilcott and certain of their respective affiliates.

BofA Merrill Lynch and its affiliates in the past have provided, currently are providing, and in the future may provide, investment banking, commercial banking and other financial services to Actavis and have received or in the future may receive compensation for the rendering of these services, including having acted or acting as (i) financial advisor in connection with certain mergers and acquisitions transactions, (ii) book-running manager and/or arranger for various debt offerings and (iii) book-running manager, lead arranger and/or agent bank for, and lender under, certain credit facilities, as well as having provided or providing certain cash and treasury management services.

In addition, BofA Merrill Lynch and its affiliates in the past have provided, currently are providing, and in the future may provide, investment banking, commercial banking and other financial services to Warner Chilcott and have received or in the future

may receive compensation for the rendering of these services, including having acted or acting as (i) manager or arranger for various equity offerings and (ii) arranger and/or agent bank for, and lender under, certain credit facilities.

In selecting BofA Merrill Lynch as one of its financial advisors in connection with the transaction, Actavis considered, among other things, its qualifications, capabilities, and reputation for providing high-quality financial advisory services. In addition, BofA Merrill Lynch has a long-standing relationship and is familiar with Actavis and has substantial knowledge of and experience in the pharmaceutical sector. BofA Merrill Lynch is an internationally recognized investment banking firm which regularly engages in the valuation of businesses and their securities in connection with mergers and acquisitions, underwritings, competitive bids and private placements. For the foregoing reasons, Actavis selected BofA Merrill Lynch as one of its financial advisors.

*Opinion of Greenhill*

The full text of Greenhill's written opinion dated May 19, 2013, which contains the assumptions made, procedures followed, matters considered and limitations on the review undertaken in connection with the opinion, is attached as Annex F to this joint proxy statement/prospectus and is incorporated herein by reference. The summary of Greenhill's opinion that follows is qualified in its entirety by reference to the full text of the opinion. You are urged to read the opinion in its entirety.

In arriving at its opinion, Greenhill, among other things:

- reviewed the Rule 2.5 Announcement, the Transaction Agreement, the Expenses Reimbursement Agreement and certain related documents;

- reviewed certain publicly available financial statements of Actavis and Warner Chilcott;

- reviewed certain other publicly available business and financial information relating to Actavis and Warner Chilcott that Greenhill deemed relevant;

- reviewed certain information, including the Warner Chilcott Management Case, prepared by the management of Warner Chilcott;

- reviewed the Actavis-Adjusted Warner Chilcott Management Case, and discussed with the management of Actavis its rationale for the changes to the Warner Chilcott Management Case;

- reviewed the Actavis Public Forecasts;

- discussed the past and present operations and financial condition and the prospects of Actavis with senior executives of Actavis;

- discussed the past and present operations and financial condition and the prospects of Warner Chilcott with Warner Chilcott's financial advisor;

- reviewed the Synergies anticipated by the management of Actavis to result from the transaction;

- reviewed the pro forma impact of the transaction on New Actavis earnings, cash flow, consolidated capitalization and financial ratios;

- reviewed the historical market prices and trading activity for Actavis common stock and Warner Chilcott ordinary shares and analyzed their respective implied valuation multiples;

- compared the value of the consideration to be paid in the acquisition with that paid in certain publicly available acquisition transactions that Greenhill deemed relevant;

FOR SETTLEMENT PURPOSES ONLY

- compared the financial performance of Warner Chilcott with the trading valuations of certain publicly traded companies that Greenhill deemed relevant;

- compared the value of the consideration to be paid in the acquisition to the valuation derived by discounting future cash flows and a terminal value of the business of Warner Chilcott based upon the Actavis-Adjusted Warner Chilcott Management Case discount rates Greenhill deemed appropriate;

- compared a valuation of the shares of Actavis common stock derived by discounting future cash flows and a terminal value of the business of Actavis to a valuation of the New Actavis ordinary shares to be issued in the merger in exchange for shares of Actavis common stock derived by discounting future cash flows and a terminal value of the business of New Actavis after giving effect to the transactions, in each case applying discount rates Greenhill deemed appropriate;

- compared certain market prices for Actavis common stock prior to the transactions to illustrative prices for New Actavis ordinary shares after giving effect to the transactions;

- participated in discussions and negotiations among representatives of Actavis and its legal advisors and representatives of Warner Chilcott and its legal and financial advisors; and

- performed such other analyses and considered such other factors as Greenhill deemed appropriate.

Greenhill's written opinion was addressed to the Actavis board of directors. It was not a recommendation to the Actavis board of directors as to whether it should approve the transaction, the Rule 2.5 Announcement or the Transaction Agreement, nor does it constitute a recommendation as to whether the stockholders of Actavis should approve the transaction or any other matter at any meeting of the shareholders convened in connection with the transaction. Greenhill has not expressed any opinion as to any aspect of the transactions contemplated by the Transaction Agreement other than the fairness, from a financial point of view, as of May 19, 2013, of the exchange ratio to the holders of Actavis common stock pursuant to the Transaction Agreement. Greenhill's opinion did not address in any manner the price at which Actavis common stock or New Actavis ordinary shares will trade at any future time. Greenhill's opinion did not address the amount or nature of any compensation to any officers, directors or employees of Actavis, or any class of such persons relative to the New Actavis ordinary shares to be received by holders of Actavis common stock in the transaction or with respect to the fairness of any such compensation. Greenhill was not requested to opine as to, and its opinion does not in any manner address, the relative merits of the transaction in comparison to any alternative transactions or strategies that might be available to Actavis or in which Actavis might engage or as to the underlying business decision of Actavis to proceed with or effect the transaction.

In conducting its review and analysis and rendering its opinion, Greenhill assumed and relied on, without independent verification, the accuracy and completeness in all material respects of the information publicly available, supplied or otherwise made available to it by representatives and management of Actavis and Warner Chilcott for the purposes of its opinion and further relied on the assurances of representatives and management of Actavis and Warner Chilcott, as applicable, that they were not aware of any facts or circumstances that would make such information inaccurate or misleading.

With respect to the 2013 Actavis Guidance, the Actavis-Adjusted Warner Chilcott Management Case, the Synergies and other data that have been furnished or otherwise provided to Greenhill, Greenhill assumed that such guidance, forecasts, Synergies, and data were reasonably prepared on a basis reflecting the best currently available estimates and good faith judgments of the management of Actavis as to those matters, and Greenhill relied upon such guidance, forecasts, Synergies, and data in arriving at its opinion. Greenhill was advised by Actavis and assumed that the Actavis Public Forecasts are a reasonable basis upon which to evaluate the future financial performance of Actavis and, at the direction of the management of Actavis, Greenhill used the Actavis Public Forecasts in arriving at its opinion. Greenhill expressed no opinion with respect to the 2013 Actavis Guidance, the Actavis-Adjusted Warner Chilcott Management Case, the Synergies, the Actavis Public Forecasts and other data or the assumptions upon which they are based. Except to the extent reflected in the Actavis-Adjusted Warner Chilcott Management Case, at Actavis' direction, Greenhill did not take into account any potential financial impact of the governmental investigations or litigation to which Warner Chilcott is subject and has assumed that any such financial impact would not be material to its analyses or opinion. In addition, at Actavis' direction, Greenhill did not take into account for purposes of its analyses any costs arising as a result of taxes that may be payable in connection with the transactions.

Greenhill did not make any independent valuation or appraisal of the assets or liabilities of Actavis or Warner Chilcott, nor was it furnished with any such appraisals. Greenhill assumed that the transaction will be consummated in accordance with the terms set forth in the Rule 2.5 Announcement and the Transaction Agreement and without waiver of any material terms or conditions set forth in

FOR SETTLEMENT PURPOSES ONLY

the Rule 2.5 Announcement and the Transaction Agreement. Greenhill further assumed that all material governmental, regulatory and other consents and approvals necessary for the consummation of the transactions will be obtained without any effect on Actavis, Warner Chilcott, the transaction or the contemplated benefits of the transaction material to its analyses.

Greenhill's opinion is necessarily based on financial, economic, market and other conditions as in effect on, and the information made available to it as of, the date of its opinion. It should be understood that subsequent developments may affect Greenhill's opinion, and Greenhill does not have any obligation to update, revise or reaffirm its opinion. The most recent market data used by Greenhill was as of May 17, 2013.

The following is a summary of the material financial and comparative analyses provided by Greenhill to the Actavis board of directors in connection with rendering its opinion described above. The summary set forth below does not purport to be a complete description of the analyses performed by Greenhill, nor does the order of analyses described represent relative importance or weight given to those analyses by Greenhill. Some of the summaries of the financial analyses include information presented in tabular format. The tables must be read together with the full text of each summary and are not alone a complete description of Greenhill's analyses.

*Selected Company Analysis*

Greenhill compared selected financial information, ratios and multiples for Warner Chilcott to the corresponding data for the following publicly traded companies selected by Greenhill:

- Endo Health Solutions Inc.;

- Forest Laboratories, Inc.;

- Jazz Pharmaceuticals plc;

- The Medicines Company;

- Questcor Pharmaceuticals, Inc.;

- Salix Pharmaceuticals, Ltd.;

- Shire plc;

- United Therapeutics Corp.; and

- Valeant Pharmaceuticals International, Inc.

Although none of the selected companies is directly comparable to Warner Chilcott, Greenhill chose these companies because they are publicly traded companies in the specialty pharmaceutical industry with operations that, for purposes of Greenhill's analysis, may be considered similar or reasonably comparable to the operations of Warner Chilcott. However, because of the inherent differences between the business, operations and prospects of Warner Chilcott and those of the selected companies, Greenhill believed that it was inappropriate to, and therefore did not, rely solely on the numerical results of the selected company analysis. Accordingly, Greenhill also made qualitative judgments concerning differences between the business, financial and operating characteristics and prospects of Warner Chilcott and the selected companies that could affect the public trading values of each in order to provide a context in which to consider the results of the quantitative analysis. These qualitative judgments related primarily to the differing sizes, growth prospects, revenue mix, profitability levels and degree of operational risk between Warner Chilcott and the companies included in the selected company analysis. Greenhill also made judgments as to the relative comparability of the various valuation parameters with respect to those companies.

For each of the selected companies, Greenhill reviewed, among other information:

- The ratio of enterprise value, which is referred to as EV, which was calculated as fully diluted equity value plus value of debt, plus minority interest, less cash and cash equivalents, as a multiple of estimated earnings from operations before interest expense, income taxes and depreciation and amortization, which is referred to as EBITDA, for 2013 and 2014; and

- The ratio of fully diluted equity value to cash net income (excluding one-time items and amortization), which is referred to as Price to Earnings, for 2013 and 2014.

For purposes of these calculations, Greenhill utilized an equity value for each company derived by multiplying the number of fully diluted outstanding shares of that company as reported in its most recent SEC filings by the company's common stock closing share price on May 17, 2013. Greenhill compared financial information and calculated such ratios with respect to the selected companies and Warner Chilcott based on information it obtained from public filings and from consensus estimates as published by the Institutional Brokers Estimate System, which is referred to as IBES. The multiple ranges multiples resulting from this analysis are summarized below:

|  | Implied Mean Multiples for Selected Companies | Implied Median Multiples for Selected Companies |
|---|---|---|
| Warner Chilcott Comparables: | | |
| Price to Earnings Multiple | | |
| 2013E | 18.6x | 13.7x |
| 2014E | 13.4x | 11.8x |
| EV to EBITDA Multiple | | |
| 2013E | 12.4x | 10.1x |
| 2014E | 9.4x | 8.6x |

| | EV to EBITDA Multiple | | Price to Earnings Multiple | |
|---|---|---|---|---|
| | 2013E | 2014E | 2013E | 2014E |

| Warner Chilcott Comparables: | | | | |
|---|---|---|---|---|
| Endo Health Solutions Inc. | 7.6x | 8.6x | 8.1x | 9.7x |
| Forest Laboratories, Inc. | 27.2x | 16.5x | 47.3x | 26.0x |
| Jazz Pharmaceuticals plc | 7.8x | 6.2x | 9.5x | 7.8x |
| The Medicines Company | 21.1x | 12.9x | 36.5x | 21.9x |
| Questcor Pharmaceuticals, Inc. | 5.7x | 3.9x | 9.4x | 8.0x |
| Salix Pharmaceuticals, Ltd. | 10.9x | 8.6x | 17.5x | 13.2x |
| Shire plc | 10.1x | 9.0x | 14.1x | 12.5x |
| United Therapeutics Corp. | 7.2x | 6.4x | 11.1x | 9.7x |
| Valeant Pharmaceuticals International, Inc. | 14.3x | 12.8x | 13.7x | 11.8x |
| Mean | 12.4x | 9.4x | 18.6x | 13.4x |
| Median | 10.1x | 8.6x | 13.7x | 11.8x |

From this data, and based on its professional judgment and experience in the pharmaceuticals industry, Greenhill derived ranges of multiples it deemed most meaningful for its analysis.

Greenhill then calculated a range of implied equity values of Warner Chilcott by (i) applying 2013 price to earnings multiples of 8.0x to 10.0x to Warner Chilcott's estimated 2013 net income based on IBES consensus estimates and Warner Chilcott's estimated 2013 net income from the Actavis-Adjusted Warner Chilcott Management Case and (ii) applying 2014 price to net income multiples of 7.5x to 9.5x to Warner Chilcott's estimated 2014 net income based on IBES consensus estimates and Warner Chilcott's estimated 2014 net income based on the Actavis-Adjusted Warner Chilcott Management Case. Greenhill also calculated a range of implied enterprise values for Warner Chilcott by (i) applying 2013 EV to EBITDA multiples of 7.0x to 9.0x to Warner Chilcott's estimated 2013 EBITDA based on IBES consensus estimates and Warner Chilcott's estimated 2013 EBITDA from the Actavis-Adjusted Warner Chilcott Management Case and (ii) applying 2014 EV to EBITDA multiples of 6.5x to 8.5x to Warner Chilcott's estimated 2014 EBITDA based on IBES consensus estimates and Warner Chilcott's estimated 2014 EBITDA from the Actavis-Adjusted Warner Chilcott Management Case. Greenhill then subtracted debt (approximately $3.675 billion) and added cash (approximately $290 million) to Warner Chilcott's implied enterprise value to arrive at its implied equity value. This analysis indicated the following ranges of implied prices per ordinary share of Warner Chilcott (all share prices are rounded to the nearest $0.10):

FOR SETTLEMENT PURPOSES ONLY

| | Implied Price Per Ordinary Share of Warner Chilcott |
|---|---|
| **Price to Earnings Multiples** | |
| 8.0x – 10.0x 2013E Net Income (IBES) | $26.10 - $32.60 |
| 8.0x – 10.0x 2013E Net Income (Actavis-Adjusted Warner Chilcott Management Case) | $25.00 - $31.20 |
| 7.5x – 9.5x 2014E Net Income (IBES) | $23.40 - $29.50 |
| 7.5x – 9.5x 2014E Net Income (Actavis-Adjusted Warner Chilcott Management Case) | $19.10 - $24.10 |
| **Enterprise Value to EBITDA Multiples** | |
| 7.0x – 9.0x 2013E EBITDA (IBES) | $20.40 - $29.80 |
| 7.0x – 9.0x 2013E EBITDA (Actavis-Adjusted Warner Chilcott Management Case) | $19.40 - $28.60 |
| 6.5x – 8.5x 2014E EBITDA (IBES) | $15.10 - $23.70 |
| 6.5x – 8.5x 2014E EBITDA (Actavis-Adjusted Warner Chilcott Management Case) | $12.20 - $19.90 |

To determine the implied price per ordinary share of Warner Chilcott reflected above, Greenhill assumed a fully diluted share count based on 250.9 million shares outstanding, 2.3 million stock units outstanding and 6.5 million options outstanding at a weighted average exercise price of $11.38. Greenhill compared these ranges of implied prices per share to (i) the implied value of the consideration payable per ordinary share of Warner Chilcott as of May 19, 2013, (the "Implied Value of the Consideration"), and (ii) the price per ordinary share of Warner Chilcott as of 12:07 p.m. Eastern Daylight Time on May 10, 2013, the time prior to the publication of a media report of a potential transaction between Actavis and Warner Chilcott (the "Unaffected Warner Chilcott Share Price").

*Discounted Cash Flow Analysis*

Greenhill performed a discounted cash flow analysis of Warner Chilcott on a standalone basis using the Actavis-Adjusted Warner Chilcott Management Case for the second quarter of 2013 through 2017. Greenhill calculated a range of implied present values of the standalone, unlevered, after-tax free cash flows that Warner Chilcott was forecasted to generate from April 1, 2013 through December 31, 2017. Greenhill also calculated estimated terminal values for Warner Chilcott, as of December 31, 2017, by applying perpetuity growth rates ranging from negative 3.0% to negative 1.0% to the standalone, unlevered, after-tax free cash flows that Warner Chilcott was forecasted to generate in 2017. Greenhill then added the net present values of the standalone, unlevered, after-tax free cash flows for the second quarter of 2013 through 2017 to the present value of the estimated terminal values, in each case discounted to March 31, 2013, using discount rates ranging from 8.0% to 9.0%, to derive a range of implied enterprise values for Warner Chilcott. Greenhill then calculated a range of implied present values per share of Warner Chilcott ordinary stock by subtracting Warner Chilcott's debt amount (approximately $3.675 billion) and adding Warner Chilcott's cash and cash equivalents (approximately $290 million) to the range of implied enterprise values that it derived for Warner Chilcott, and divided the results by the number of fully diluted shares of Warner Chilcott ordinary shares as of March 31, 2013, which were calculated using the methodology described above. The discount rates and perpetuity growth rates used in this analysis were selected based on Greenhill's application of its

Exhibit A                                                                                                    FOR SETTLEMENT PURPOSES ONLY

professional judgment and expertise. This analysis implied the range of prices per ordinary share of Warner Chilcott (rounded to the nearest $0.10) of $18.70 - $26.60. Greenhill compared this range of implied prices per share to the Implied Value of the Consideration and the Unaffected Warner Chilcott Share Price.

*Precedent Transaction Analysis*

Greenhill performed an analysis of selected precedent change-in-control transactions since November 2007 with values greater than $1 billion involving specialty pharmaceutical organizations that in Greenhill's judgment were relevant for its analysis. The following table below identifies the 16 transactions reviewed by Greenhill in this analysis, which is are referred to as the Precedent Transactions:.   Using publicly available information for the Precedent Transactions, Greenhill reviewed the consideration paid in each such transaction and analyzed the transaction value implied by such consideration as a multiple of last 12 months (LTM) EBITDA.  This analysis indicated the following implied multiples for the Precedent Transactions. For purposes of the table below, "NA" means data not publicly available, and "NM" means not meaningful.

| Target | Purchaser | Announcement Month and Year | Transaction Value / LTM EBITDA |
|---|---|---|---|
| Medicis Pharmaceutical Corporation | Valeant Pharmaceuticals International, Inc. | September 2012 | 9.0x |
| Par Pharmaceutical Companies, Inc. | TPG Capital | July 2012 | 8.8x |
| Actavis, Inc. | Watson Pharmaceuticals Inc. | April 2012 | 14.6x |
| Nycomed A/S | Takeda Pharmaceutical Company Limited | May 2011 | 12.2x |
| Cephalon, Inc. | Teva Pharmaceutical Industries Ltd. | May 2011 | 6.8x |
| King Pharmaceuticals Inc. | Pfizer, Inc. | October 2010 | 7.9x |

Exhibit A                                                                    FOR SETTLEMENT PURPOSES ONLY

| | | | |
|---|---|---|---|
| Biovail Corporation | Valeant Pharmaceuticals International | June 2010 | 6.2x |
| Solvay Pharmaceuticals | Abbott Laboratories | September 2009 | 7.9x |
| P&G Pharmaceutical Business | Warner Chilcott plc | August 2009 | NA |
| Stiefel Laboratories, Inc. | GlaxoSmithKline plc | April 2009 | NA |
| Sepracor Inc. | Dainippon Sumitomo Pharma Co., Ltd. | September 2009 | 7.7x |
| Alpharma Inc. | King Pharmaceuticals, Inc. | November 2008 | NM |
| Sciele Pharma, Inc. | Shionogi & Co., Ltd. | September 2008 | 11.4x |
| Barr Pharmaceuticals, Inc. | Teva Pharmaceutical Industries Ltd. | July 2008 | 13.2x |
| Axcan Pharma Inc. | TPG Capital | November 2007 | 7.6x |

Exhibit A                                                                  FOR SETTLEMENT PURPOSES ONLY

| Reliant Pharmaceuticals, Inc. | GlaxoSmithKline plc | November 2007 | NM |

Although Greenhill analyzed the multiples implied by the Precedent Transactions, none of the Precedent Transactions or associated companies is identical to the transaction or to Warner Chilcott. Accordingly, Greenhill's analysis of the Precedent Transactions necessarily involved complex considerations and judgments concerning the differences in financial and operating characteristics, the parties involved and terms of their transactions and other factors that would necessarily affect the implied value of Warner Chilcott versus the values of the companies in the Precedent Transactions. In evaluating the Precedent Transactions, Greenhill made judgments and assumptions concerning industry performance, general business, economic, market and financial conditions and other matters. Greenhill also made judgments as to the relative comparability of those companies to Actavis and judgments as to the relative comparability of the various valuation parameters with respect to the companies. ~~Using publicly available information for the Precedent Transactions, Greenhill reviewed the consideration paid in each such transaction and analyzed the transaction value implied by such consideration as a multiple of last 12 months (LTM) EBITDA.~~ The following table summarizes the reference range of valuation multiples for all Precedent Transactions Greenhill derived from the Precedent Transactions:

| | Implied Mean Multiples for Precedent Transactions | Implied Median Multiples for Precedent Transactions |
|---|---|---|
| Transaction Value to LTM EBITDA | 9.4x | 8.3x |

From this data Greenhill derived a range of multiples of 6.5x to 8.5x based on its professional judgment and experience in the pharmaceutical industry and applied such range of multiples to Warner Chilcott's EBITDA for the last 12-month period ended March 31, 2013, which resulted in a range of implied enterprise values for Warner Chilcott. Greenhill then subtracted debt (approximately $3,675 million) and added cash (approximately $290 million) to Warner Chilcott's implied enterprise value to arrive at a range of implied equity values. This analysis resulted in a range of prices per ordinary share of Warner Chilcott of $21.90 - $32.60, which were calculated using the methodology described above, and rounded to the nearest $0.10. Greenhill compared this range of implied prices per share to the Implied Value of the Consideration and the Unaffected Warner Chilcott Share Price.

*Premiums Paid Analyses*

Greenhill performed an analysis of the premiums paid in the Precedent Transactions discussed above under "*Precedent Transaction Analysis*" which involved target companies in the specialty pharmaceuticals industry that in Greenhill's judgment were relevant for its analysis. Although Greenhill analyzed the premiums implied by the selected transactions, none of these transactions or associated companies is identical to the transaction or to Warner Chilcott.

Using publicly available information at the time of the announcement of the relevant transaction, including company filings and third-party transaction databases, Greenhill reviewed the consideration paid in the Precedent Transactions and analyzed the premium of the consideration in each such transaction over the closing price of the target company on the last trading day before the announcement of the applicable transaction and the closing prices one week and one month before the announcement of the applicable transaction. In situations where abnormal price movements prior to announcement were observed by Greenhill, the premiums calculated were based on the closing share prices of the target on the trading days one day, one week and one month prior to the abnormal price movements. _This analysis indicated the following implied premium for each Precedent Transaction in which information on the premium paid was available:_

~~For the Precedent Transactions, Greenhill observed that the mean and median premium over the closing price of the target one day prior to the announcement was 39.0% and 39.2%, respectively, the mean and median premium over the average closing share price of the target one week prior to announcement was 40.2 and 41.2%, respectively, and the mean and median premium over the average closing share price of the target one month prior to announcement was 40.4 and 46.4%, respectively.~~

| Target | Purchaser | Announcement Month and Year | 1 Day Prior | 1 Week Prior | Implied Premium |
|---|---|---|---|---|---|
| | | | | | 1 Month Prior |
| Medicis Pharmaceutical Corporation | Valeant Pharmaceuticals International, Inc. | September 2012 | 38.1% | 35.4% | 33.7% |
| Par Pharmaceutical Companies, Inc. | TPG Capital | July 2012 | 36.7% | 39.5% | 49.0% |
| Cephalon, Inc. | Teva Pharmaceutical Industries Ltd. | May 2011 | 41.6% | 43.3% | 44.7% |
| King Pharmaceuticals Inc. | Pfizer, Inc. | October 2010 | 40.4% | 42.9% | 52.1% |
| Biovail Corporation | Valeant Pharmaceuticals International | June 2010 | 14.2% | 16.0% | 11.7% |
| Sepracor Inc. | Dainippon Sumitomo Pharma Co., Ltd. | September 2009 | 27.6% | 26.6% | 31.4% |
| Alpharma Inc. | King Pharmaceuticals, Inc. | November 2008 | 53.9% | 54.2% | 48.0% |
| Sciele Pharma, Inc. | Shionogi & Co., Ltd. | September 2008 | 60.9% | 63.0% | 63.3% |
| Barr Pharmaceuticals, Inc. | Teva Pharmaceutical Industries Ltd. | July 2008 | 42.1% | 50.3% | 58.3% |
| Axcan Pharma Inc. | TPG Capital | November 2007 | 34.4% | 30.8% | 11.7% |
| Mean | | | 39.0% | 40.2% | 40.4% |
| Median | | | 39.2% | 41.2% | 46.4% |

Greenhill then selected a representative range of premiums from 35% to 40% and applied this range of premiums to (i) the Unaffected Warner Chilcott Share Price, and (ii) the closing price per share of Warner Chilcott ordinary shares one day and one week prior to May 10, 2013, the date of media reports of a potential transaction between Actavis and Warner Chilcott, which is referred to as the unaffected price date. Greenhill also selected a representative range of premiums from 40% to 45% and applied this range of premiums to the closing price per share of Warner Chilcott ordinary shares one month prior to the unaffected price date. This analysis

implied a range of prices per ordinary share of Warner Chilcott of $19.00 - $21.70. Greenhill compared this range of implied prices per share to the Implied Value of the Consideration and the Unaffected Warner Chilcott Share Price.

*Value Creation Analysis Based on Discounted Cash Flow*

Greenhill performed a value creation analysis to determine the impact of the transaction on the intrinsic equity value of Actavis common stock owned by Actavis stockholders. A discounted cash flow analysis was performed to calculate the estimated present intrinsic equity value of the standalone unlevered, after-tax free cash flows of each of Actavis and Warner Chilcott, based upon the applicable items set forth in the Actavis Public Forecasts and the Actavis-Adjusted Warner Chilcott Management Case, as well as Actavis management's projected anticipated operational synergies and tax benefits, net of the projected corresponding costs of such synergies.

Greenhill performed a discounted cash flow analysis of Actavis on a standalone basis using the Actavis Public Forecasts for the second quarter of 2013 through 2017. Greenhill calculated a range of implied present values of the standalone, unlevered, after-tax free cash flows that Actavis was forecasted to generate from April 1, 2013, through December 31, 2017. Greenhill also calculated estimated terminal values for Actavis, as of December 31, 2017, by applying perpetuity growth rates ranging from negative 0.5% to 0.5% to the standalone, unlevered, after-tax free cash flows that Actavis was forecasted to generate in 2017. Greenhill then added the net present values of the standalone, unlevered, after-tax free cash flows for the second quarter of 2013 through 2017 to the implied present value of the estimated terminal value, in each case discounted to March 31, 2013, using discount rates ranging between 7.0% and 8.0%, to derive a range of implied enterprise values for Actavis. Greenhill then calculated a range of present values of Actavis common stock by subtracting Actavis' debt (approximately $6,456 million) and Actavis' non-controlling interest (approximately $18 million) and adding Actavis' cash and cash equivalents (approximately $337 million) to the range of implied enterprise values that it derived for Actavis. The discount rates and perpetuity growth rates used in this analysis were selected based on Greenhill's application of its professional judgment and expertise.

To calculate the pro forma intrinsic equity value of New Actavis, Greenhill summed (i) the mid-point of the discounted cash flow implied equity value range of Actavis, (ii) the mid-point of the discounted cash flow implied equity value range of Warner Chilcott (iii) the implied present value of the range of expected operational synergies, as projected by the management of Actavis, discounted using an 8.5% discount rate and a perpetuity growth rate range of negative 3.0% to negative 1.0% (net of acquisition integration costs) and (iv) the implied present value of the range of expected tax synergies, as projected by the management of Actavis, discounted using a 7.5% discount rate and a perpetuity growth rate range of negative 0.5% to 0.5%.

Greenhill then compared the value differential between Actavis stockholders' 76.8% ownership of the pro forma intrinsic equity value of New Actavis to Actavis' standalone intrinsic equity value as derived from (i) the discounted cash flow analysis of Actavis discussed above, (ii) the price per share of Actavis common stock as of May 17, 2013, and (iii) the price per share of Actavis as of 12:07 p.m. Eastern Daylight Time on May 10, 2013, which is referred to as the Unaffected Actavis Share Price. This analysis indicated the following ranges of implied gain in equity value to Actavis stockholders:

| Actavis Standalone Equity Value derived from: | Range of Implied Gain to Actavis Stockholders as Measured by Intrinsic Equity Value |
|---|---|
| Discounted Cash Flow Analysis of Actavis | 19.2% - 20.0% |
| Price of Actavis Common Stock as of May 17, 2013 | 8.0% - 25.9% |
| Unaffected Actavis Share Price | 25.9% - 46.7% |

*Value Creation Analysis Based on Trading Multiples*

Greenhill reviewed the potential value creation of the transaction for Actavis stockholders by comparing the Unaffected Share Price of Actavis with the potential pro forma market value as of December 31, 2013, of one New Actavis ordinary share after the transaction. Greenhill calculated a potential market value of one share of Actavis common stock, on a standalone basis, by multiplying estimated cash earnings per share (excluding amortization and one-time items) (EPS) for Actavis for 2014 as reflected in the Actavis

FOR SETTLEMENT PURPOSES ONLY

Public Forecasts by a 2014 EPS forward multiple of 12.9x, which was derived from 2013 IBES consensus estimates published prior to the date of the Unaffected Share Price for Actavis on a standalone basis. Greenhill also calculated a reference range of potential pro forma market values of New Actavis ordinary shares following the merger by multiplying the estimated EPS for New Actavis for 2014 by 2014 EPS forward multiples of (i) 11.1x, which is a blended multiple derived from the weighted average of the 2013 IBES consensus estimates for Actavis and Warner Chilcott, both published prior to the date of the Unaffected Share Price and (ii) 12.9x, which was derived from 2013 IBES consensus estimates for Actavis on a standalone basis published prior to the date of the Unaffected Share Price. Estimated financial data utilized by Greenhill for New Actavis for 2014 were based on the Actavis Public Forecasts, Actavis-Adjusted Warner Chilcott Management Case and expected operational and tax synergies, as provided by the management of Actavis. This analysis yielded the implied gain in equity value to Actavis stockholders set forth in the table below:

| Implied Value of: | Estimated Percentage Premium to the Unaffected Share Price of Actavis |
|---|---|
| Actavis Common Stock (Stand Alone Basis) | 11.6% |
| New Actavis Ordinary Share (Blended Multiple) | 31.3% |
| New Actavis Ordinary Share (Standalone Actavis Multiple) | 52.0% |

Greenhill also reviewed the potential value creation of the transactions for Actavis stockholders by comparing the Unaffected Share Price of Actavis with a range of potential pro forma market values of one New Actavis ordinary share after giving effect to the transactions. Greenhill calculated a reference range of enterprise values of New Actavis ordinary shares following the transactions by applying estimated EV to EBITDA multiples ranging from 8.0x to 12.0x, based on the range of EV to EBITDA multiples in the Selected Company Analysis described above, to estimated EBITDA for New Actavis for 2014. Greenhill then calculated a range of implied equity values per share of New Actavis ordinary shares by subtracting New Actavis' pro forma debt (approximately $10,131 million, without giving effect to any reductions in outstanding indebtedness arising from the completion of the transaction) and pro forma noncontrolling interest (approximately $18 million) and adding New Actavis' pro forma cash and cash equivalents (approximately $627 million) to the range of implied enterprise values that it derived for New Actavis, and divided the results by the pro forma number of outstanding shares of New Actavis provided by the management of Actavis. Estimated financial data utilized by Greenhill for New Actavis for 2014 were from the Actavis Public Forecasts, the Actavis-Adjusted Warner Chilcott Management Case and expected operational and tax synergies, as provided by the management of Actavis. This analysis resulted in an implied range of prices per ordinary share of New Actavis of $102.25 - $180.35. Greenhill compared this range of implied prices per share to the Unaffected Actavis Share Price.

Greenhill also performed a value creation analysis to determine the impact of the transactions on the intrinsic equity value of Actavis common stock owned by Actavis stockholders by comparing the value of the Actavis stockholders' 76.8% ownership of the pro forma intrinsic equity value of New Actavis and Actavis' standalone intrinsic equity value. Greenhill calculated a range of implied enterprise values for Actavis, on a standalone basis, by applying a range of 2014 EV to EBITDA multiples of 9.0x to 11.0x to Actavis' estimated 2014 EBITDA from the Actavis Public Forecasts. Greenhill then subtracted debt (approximately $6,456 million) and noncontrolling interest (approximately $18 million) and added cash (approximately $337 million) to Actavis' implied enterprise value to arrive at a range of implied equity values for Actavis.

Greenhill then calculated a range of implied enterprise values for New Actavis by applying a range of 2014 EV to EBITDA multiples of 9.0x to 11.0x to New Actavis' estimated 2014 EBITDA giving effect to potential operational and tax synergies. Greenhill then subtracted pro forma debt (approximately $10,131 million) and pro forma noncontrolling interest (approximately $18 million) and added pro forma cash (approximately $627 million) to New Actavis' implied enterprise values to arrive at a range of implied equity values for New Actavis. Estimated financial data of New Actavis were from the Actavis Public Forecasts, estimated financial data of Warner Chilcott were from the Actavis-Adjusted Warner Chilcott Management Case, and potential operational and tax synergies were based on projections provided by the management of Actavis.

FOR SETTLEMENT PURPOSES ONLY

Greenhill then compared the value differential between Actavis stockholders' 76.8% ownership of the pro forma intrinsic equity value of New Actavis to Actavis' standalone intrinsic equity value. This analysis yielded an implied gain in equity value to Actavis stockholders of 15.2% - 15.4%.

*Other Considerations*

The summary set forth above does not purport to be a complete description of the analyses performed by Greenhill, but simply describes, in summary form, the material analyses that Greenhill conducted in connection with rendering its opinion. The preparation of a fairness opinion is a complex process and is not necessarily susceptible to partial analysis or summary description. In arriving at its opinion, Greenhill did not attribute any particular weight to any analyses or factors considered by it and did not form an opinion as to whether any individual analysis or factor, considered in isolation, supported or failed to support its opinion. Rather, Greenhill considered the totality of the factors and analyses performed in determining its opinion. Accordingly, Greenhill believes that the summary set forth above and its analyses must be considered as a whole and that selecting portions thereof, without considering all of its analyses, could create an incomplete view of the processes underlying its analyses and opinion. Greenhill based its analyses on assumptions that it deemed reasonable, including assumptions concerning general business and economic conditions and industry-specific factors. Analyses based on forecasts or projections of future results are inherently uncertain, as they are subject to numerous factors or events beyond the control of the parties or their advisors. Accordingly, Greenhill's analyses are not necessarily indicative of actual values or actual future results that might be achieved, which values may be higher or lower than those indicated. Moreover, Greenhill's analyses are not and do not purport to be appraisals or otherwise reflective of the prices at which businesses actually could be bought or sold. In addition, no company or transaction used in Greenhill's analysis as a comparison is directly comparable to Actavis or the contemplated transaction. Because these analyses are inherently subject to uncertainty, being based on numerous factors or events beyond the control of the parties or their respective advisors, neither Actavis nor any other person assumes responsibility if future results are materially different from those forecasts or projections.

The exchange ratio and the transaction consideration were determined through arms' length negotiations between Actavis and Warner Chilcott and were approved by the Actavis board of directors. Greenhill provided advice to Actavis' board of directors during these negotiations. Greenhill did not, however, recommend any specific exchange ratio or amount of consideration to Actavis or the Actavis board of directors or that any specific exchange ratio or amount of consideration constituted the only appropriate consideration for the transaction. Greenhill's opinion did not in any manner address the underlying business decision to proceed with or effect the transaction.

The Actavis board of directors retained Greenhill based on its qualifications and expertise in providing financial advice and on its reputation as a nationally recognized investment banking firm. During the two years preceding the date of this opinion, Greenhill has not been engaged by, performed any services for or received any compensation from Actavis, Warner Chilcott, New Actavis or MergerSub, other than amounts that were paid to it under the letter agreement pursuant to which Greenhill was retained as a financial advisor to Actavis in connection with the transaction.

Actavis has agreed to pay Greenhill a transaction fee of $10 million of which $2 million was paid in connection with delivery of the opinion and announcement of the transaction and the remainder of which is contingent on completion of the transaction. In negotiating the fee payable to Greenhill, Actavis considered the fact that it intended to engage two financial advisors and, taking into account its financial analysis of the transaction, the fees that it expected should be payable to its financial advisors in the aggregate. Actavis has also agreed to reimburse Greenhill for certain out-of-pocket expenses incurred by it in connection with its engagement and will indemnify Greenhill against certain liabilities that may arise out of its engagement.

Greenhill's opinion was one of the many factors considered by the Actavis board of directors in evaluating the transaction and should not be viewed as determinative of the views of the Actavis board of directors with respect to the transaction.

In selecting Greenhill as one of its financial advisors in connection with the transaction, Actavis considered, among other things, its qualifications, capabilities, and reputation for providing high-quality financial advisory services. In addition, Greenhill has a long-standing relationship and is familiar with Actavis and has substantial knowledge of and experience in the pharmaceutical sector. Greenhill is an internationally recognized investment banking firm which regularly engages in the valuation of businesses and their securities in connection with mergers and acquisitions, underwritings, competitive bids and private placements. For the foregoing reasons, Actavis selected Greenhill as one of its financial advisors.

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CLIFFORD G. MARTIN, Individually and on
Behalf of All Others Similarly Situated,

Plaintiff,

v.

WARNER CHILCOTT PUBLIC LIMITED
COMPANY, et al.,

Defendant,

Civ. No. 2:13-cv-4566
Hon. Esther Salas, U.S. D.J.
Hon. Michael A. Hammer, U.S.M.J.

## ORDER SETTING SCHEDULE, CERTIFYING THE CLASS,
## AND PRELIMINARILY APPROVING PROPOSED SETTLEMENT

The parties to the above-captioned, consolidated class action (the "Action"), currently

pending before the United States District Court for the District of New Jersey, having applied

pursuant to Federal Rule of Civil Procedure 23(e) for an order preliminarily approving the

proposed settlement of the Action (the "Settlement") in accordance with the Stipulation and

Agreement of Compromise, Settlement, and Release entered into on April 29, 2014

(the "Stipulation"), upon the terms and conditions set forth in the Stipulation; the Stipulation

contemplating certification by this Court of a class in the Action, solely for the purposes of

settlement; the Court having read and considered the Stipulation and accompanying documents;

and all parties having consented to the entry of this Order,

NOW, THEREFORE, this _____ day of _____, 2014, upon application of the parties,

**IT IS HEREBY ORDERED** that:

1.      Except for terms defined herein, the Court adopts and incorporates the definitions

in the Stipulation for purposes of this Order.

#84066074v6

2.      Solely for purposes of settlement, the Court certifies, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), a class of any and all record holders and beneficial owners of ordinary shares of Warner Chilcott (which were traded on the NASDAQ) who held such shares at any time during the period beginning on February 1, 2012 through and including October 1, 2013 (the "Class Period"), including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, assigns and transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors in interest, predecessors, successors in interest, successors, and assigns, but excluding (a) Warner Chilcott; and (b) any member of the class who has validly and timely requested exclusion from the class (the "Class").

3.      Based on the record in the Action, the Court confirms that each of the pertinent provisions of Federal Rule of Civil Procedure 23 has been satisfied, and that the Action should be properly maintained according to the provisions of Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2).  Specifically, the Court finds that (a) the Class is so numerous that joinder of all members is impracticable; (b) there are common questions of law and fact, including whether the disclosures made by Warner Chilcott in connection with the Transaction were adequate and whether Plaintiff and any members of the Class were injured as a consequence of the Warner Chilcott's actions; (c) the claims of Plaintiff are typical of the claims of the Class in that they all arise from the same allegedly wrongful course of conduct and are based on the same legal theories; and (d) Plaintiff and Class Counsel (as defined below) have fairly and adequately protected and represented the interests of the Class.  Moreover, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent adjudications

#84066074v6

which would establish incompatible standards of conduct for Warner Chilcott, and, as a practical matter, the disposition of this Action will influence the disposition of any pending or future identical cases brought by other members of the Class, satisfying Rule 23(b)(1); and there were allegations that Warner Chilcott acted or refused to act on grounds generally applicable to the Class, satisfying 23(b)(2).

4. The Court certifies Plaintiff as the representative of the Class.  The law firms Brower Piven, A Professional Corporation, and Brodsky & Smith, LLC are certified as Class Counsel in the Action.

5. The proposed Settlement, as embodied in the Stipulation and the exhibits attached thereto, is preliminarily approved as fair, reasonable, and adequate, pending a final hearing on the proposed Settlement as provided herein.

6. A hearing (the "Settlement Hearing") shall be held on _____, 2014 at _____ _.m., Eastern Time, at the District Court for the District of New Jersey, Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Room MLK 5A, Newark, NJ 07101, to:

      a.     determine whether the Settlement should be approved by the Court as fair, reasonable, and adequate;

      b.     determine whether an Order and Final Judgment should be entered in the Action pursuant to the Stipulation;

      c.     hear and determine any objections to the Settlement or the award of attorneys' fees and expenses to Class Counsel;

      d.     consider the award of attorneys' fees and expenses to Class Counsel pursuant to the Stipulation; and

      e.     rule on such other matters as the Court may deem appropriate.

7. The Court reserves the right to adjourn the Settlement Hearing or any adjournment thereof, without further notice of any kind to the Class.

- 3 -

#84066074v6

8.      The Court reserves the right to approve the Settlement at or after the Settlement Hearing with such modification(s) as may be consented to by the parties to the Stipulation and without further notice to the Class.

9.      At least seventy-five (75) calendar days prior to the Settlement Hearing, Warner Chilcott or its successor-in-interest shall cause a Notice of Pendency and Settlement of Class Action (the "Notice"), substantially in the form annexed as Exhibit C to the Stipulation, to be mailed by United States mail, postage prepaid, to all reasonably identifiable members of the Class at their last known addresses set forth in the stock transfer records maintained by or on behalf of Warner Chilcott.  All record holders in the Class who were not also the beneficial owners of the shares of common stock of Warner Chilcott held by them of record are requested to forward the Notice to such beneficial owners of those shares.  Warner Chilcott or its successor-in-interest shall use reasonable efforts to give notice to such beneficial owners by (i) making additional copies of the Notice available to any record holder who, prior to the Settlement Hearing, requests copies for distribution to beneficial owners, or (ii) mailing additional copies of the Notice to beneficial owners as reasonably requested by record holders who provide names and addresses for such beneficial holders.  Warner Chilcott or its successor-in-interest shall be responsible for and shall pay all costs and expenses incurred in providing such Notice to the members of the Class.

10.     The Notice shall provide potential Class members with the opportunity to request exclusion from (*i.e.*, to opt out of) the Class.  Any such persons must submit a written request for exclusion ("Request for Exclusion"), which, to be effective, must include:  (i) the name, address, telephone number, and Social Security of the person seeking exclusion; (ii) a clear and unequivocal statement that the person wishes to be excluded from the Class; (iii) identification

- 4 -

and evidence of the shares for which the person seeks exclusion; and (iv) the signature of the person.  The Request for Exclusion must be mailed to the notice administrator and Class Counsel, at the addresses provided in the Notice, and must be postmarked no later than sixty (60) calendar days after the date on the Notice.

11.     Nominees who held Warner Chilcott common stock at any time from and including February 1, 2012 through and including October 1, 2013, for the beneficial ownership of another shall mail the Notice to all such beneficial owners of such common stock within ten (10) calendar days after receipt thereof or send a list of the names and addresses of such beneficial owners to Warner Chilcott's notice administrator within ten (10) calendar days of receipt, in which event Warner Chilcott's notice administrator shall promptly mail the Notice to such beneficial owners.

12.     The Court approves, in form and substance, the Notice.  The form and method of notice specified herein is the best notice practicable and shall constitute due and sufficient notice of the Settlement Hearing to all persons entitled to receive such notice, and fully satisfies the requirements of due process, Federal Rule of Civil Procedure 23, and applicable law.  Counsel to Warner Chilcott or its successor-in-interest shall, at least fourteen (14) calendar days prior to the date of the Settlement Hearing directed herein, file with the Court proof of mailing of the Notice.

13.     All proceedings in the Action, other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement, are hereby stayed and suspended until further order of this Court.

14.     Any member of the Class who objects to any aspect of the Settlement and/or the Order and Final Judgment to be entered in the Action, or who otherwise wishes to be heard, may appear in person or by his or her attorney at the Settlement Hearing and present evidence or

- 5 -

argument that may be proper and relevant; provided, however, that, except for good cause shown, no person other than Class Counsel and counsel for Warner Chilcott shall be heard and no papers, briefs, pleadings, or other documents submitted by any member of the Class shall be considered by the Court unless, not later than fourteen (14) calendar days prior to the Settlement Hearing directed herein:  (i) proof of membership in the Class; (ii) a statement of the objections by the member of the Class to any matters before the Court; and (iii) the grounds therefore or the reasons why such member of the Class desires to appear and be heard, as well as all documents or writings such person desires the Court to consider, are filed by such person with the Court, and, on or before such filing, are served by hand or mail on the following counsel of record:

Brian C. Kerr
BROWER PIVEN,
A Professional Corporation
475 Park Avenue South, 33rd Floor
New York, NY 10016
*Class Counsel for Plaintiffs*

Scott B. Luftglass
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
*Counsel to Warner Chilcott*

15.     Any member of the Class who fails to submit a Request for Exclusion or to object in the manner described above shall be deemed to have waived the right to object (including any right of appeal) and shall be forever barred from raising such objection in this or any other action or proceeding unless the Court orders otherwise.

16.     The Stipulation and any negotiations, statements, or proceedings in connection therewith, shall not be construed or deemed evidence of, a presumption of, concession of, or admission by, any of the Released Parties or any other person of any fault, liability, or wrongdoing as to any facts or claims alleged or asserted in the Action or otherwise, or that the

#84066074v6

Plaintiff, or Class Counsel, the Class, or any present or former stockholders of Warner Chilcott, or any other person, have suffered any damage attributable in any manner to any of the Released Parties.   The Stipulation and any negotiations, statements, or proceedings in connection therewith, shall not be construed or deemed evidence of, a presumption of, concession of, or admission of lack of merit of any of Plaintiff's claims.   The existence of the Stipulation, its contents, and any negotiations, statements, or proceedings in connection therewith, shall not be offered or admitted into evidence or referred to, interpreted, construed, invoked, or otherwise used by any person for any purpose in the Action or otherwise, except as may be necessary to enforce or obtain Court approval of the Settlement.   Notwithstanding the foregoing, any of the parties may file the Stipulation, or any judgment or order of the Court related hereto, in any other action that may be brought against them, in order to support any and all defenses or counterclaims based on *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim.

17.     If the Settlement is approved by the Court following the Settlement Hearing, an Order and Final Judgment will be entered as described in the Stipulation.

18.     All papers in support of the Settlement or the award of attorneys' fees and expenses shall be filed and served fourteen (14) calendar days prior to the deadline for Class members to object to the Settlement, and all reply papers shall be filed and served seven (7) calendar days before the Settlement Hearing.

19.     If the Settlement, including any amendment made in accordance with the Stipulation, is not approved by the Court or shall not become effective for any reason whatsoever, the Settlement (including any modification thereof made with the consent of the

- 7 -

parties as provided for in the Stipulation), and certifications herein and any actions taken or to be taken in connection therewith (including this Scheduling Order and any judgment entered herein) shall be terminated and shall become void and of no further force and effect, except for Warner Chilcott's obligation to pay for any expenses incurred in connection with the Notice and administration provided for by this Scheduling Order.  In that event, neither the Stipulation, nor any provision contained in the Stipulation, nor any action undertaken pursuant thereto, nor the negotiation thereof by any party, shall be deemed an admission, concession, or received as evidence in this or any other action or proceeding.

20.     The Court may, for good cause, extend any of the deadlines set forth in this Order without further notice to members of the Class and retains jurisdiction to consider all further applications arising out of or connected with the Settlement.

Dated: _____

_____
Honorable Esther Salas, U.S.D.J.

#84066074v6

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLIFFORD G. MARTIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WARNER CHILCOTT PUBLIC LIMITED COMPANY, et al.,<br><br>Defendant, | Civ. No. 2:13-cv-4566<br>Hon. Esther Salas, U.S. D.J.<br>Hon. Michael A. Hammer, U.S.M.J. |

**NOTICE OF PENDENCY AND SETTLEMENT OF CLASS ACTION,
SETTLEMENT HEARING, AND RIGHT TO APPEAR**

*A Federal Court authorized this Notice.  This is <u>not</u> a solicitation from a lawyer.*

TO:    ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF ORDINARY SHARES OF WARNER CHILCOTT PUBLIC LIMITED COMPANY ("WARNER CHILCOTT") WHO HELD SUCH SHARES AT ANY TIME DURING THE PERIOD BEGINNING ON AND INCLUDING FEBRUARY 1, 2012, THROUGH AND INCLUDING OCTOBER 1, 2013 (THE DATE OF THE CONSUMMATION OF THE ACQUISITION OF WARNER CHILCOTT BY ACTAVIS, INC. ("ACTAVIS")). PLEASE READ ALL OF THIS NOTICE CAREFULLY.  YOUR RIGHTS MAY BE AFFECTED BY THE LEGAL PROCEEDINGS IN THIS ACTION.

IF YOU HELD OR TENDERED THE ORDINARY SHARES OF WARNER CHILCOTT FOR THE BENEFIT OF ANOTHER, PLEASE PROMPTLY TRANSMIT THIS DOCUMENT TO SUCH BENEFICIAL OWNER(S).

## I.    <u>PURPOSE OF NOTICE</u>

The purpose of this Notice is to inform you of the proposed settlement (the "Settlement") of the above-captioned class action lawsuit (the "Action") pending in the United States District Court for the District of New Jersey (the "Court").  This Notice also informs you of the Court's preliminary approval of the Settlement and certification of the Class (as defined below) and notifies you of your right to participate in a hearing to be held on **[-------- --]**, 2014 at **[X:XX x]**.m. Eastern Time, at the District Court for the District of New Jersey, Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Room MLK 5A, Newark, NJ 07101 (the "Settlement Hearing"), to determine whether the Court should approve the Settlement as fair, reasonable, and adequate; and to consider other matters, including the payment of an award of attorneys' fees and expenses to Class Counsel (as defined below) as provided for in the

Stipulation (as defined below).

This Notice also is to inform you of your right to exclude yourself from the Settlement, provided that you timely and validly submit a request for exclusion in accordance with the instructions set forth herein (a "Request for Exclusion").

The Court has determined that the Action shall be maintained, for settlement purposes only, as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), by plaintiff Clifford G. Martin ("Plaintiff") as class representative on behalf of a class (the "Class") consisting of any and all record holders and beneficial owners of ordinary shares of Warner Chilcott (which are traded on the NASDAQ) who held such shares at any time during the period beginning on February 1, 2012 through and including October 1, 2013 (the date of consummation of the Transaction) (the "Class Period"), including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, assigns and transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors in interest, predecessors, successors in interest, successors, and assigns, but excluding (a) Warner Chilcott; and (b) any member of the class who has validly and timely requested exclusion from the Class.

The Court also has certified (i) Plaintiff as the representative of the Class; and (ii) the law firms Brower Piven, A Professional Corporation, and Brodsky & Smith, LLC as Class Counsel.

This Notice describes the rights you have under the Settlement and what steps you may, but are not required to, take in relation to the Settlement.  If the Court approves the Settlement, the parties will ask the Court at the Settlement Hearing to enter an Order and Final Judgment dismissing the Action with prejudice on the merits.  If you are a Class member, you will be bound by any judgment entered in the Action unless you submit a timely Request for Exclusion.

**THE FOLLOWING RECITATION DOES NOT CONSTITUTE FINDINGS OF THE COURT.  IT IS BASED ON STATEMENTS OF THE PARTIES AND SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE  COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES RAISED BY ANY OF THE PARTIES.**

## II.     BACKGROUND OF THE LITIGATION

On May 20, 2013, Warner Chilcott and Actavis announced that they had entered into an agreement (the "Transaction Agreement") pursuant to which Actavis agreed to acquire (and ultimately acquired) Warner Chilcott in a stock-for-stock "scheme of arrangement" under Irish law, pursuant to which Warner Chilcott shareholders received 0.160 shares in a new holding company incorporated in Ireland for each Warner Chilcott share that they owned (the "Transaction").

On June 18, 2013, Actavis Limited filed a Registration Statement on Form S-4 with the United States Securities and Exchange Commission (the "SEC"), which S-4 was amended and

#84066075v7

declared effective on July 31, 2013 (the "S-4").  The S-4 included a joint proxy statement of Actavis and Warner Chilcott and related public disclosures regarding the Transaction, which disclosures were provided to Warner Chilcott's shareholders in connection with shareholder votes on, among other things, whether to approve the proposed Transaction and related matters.

On July 29, 2013, Plaintiff commenced the Action by filing a class action complaint, which (a) alleges, among other things, that Warner Chilcott violated the federal securities laws by issuing an S-4 that omits certain material information; and (b) sought, among other things, to enjoin the Transaction.

On July 31, 2013, Actavis and Warner Chilcott announced, among other things, that the S-4 had been declared effective and that Warner Chilcott had scheduled meetings on September 10, 2013 for shareholders to vote on, among other things, whether to approve the proposed Transaction and related matters.

On August 7, 2013, the Parties executed an Agreed Confidentiality Stipulation and [Proposed] Protective Order to govern discovery in the Action, and, in response to requests by Plaintiff, Warner Chilcott produced to Plaintiff certain document discovery concerning the Transaction.

Throughout mid-August 2013, counsel for Plaintiff and Warner Chilcott engaged in arms'-length discussions regarding the allegations made by Plaintiff in the Action.  In connection with such discussions and negotiations regarding a potential resolution of the Action, counsel to the Parties negotiated various supplemental disclosures to be filed with the SEC by Warner Chilcott on a Current Report on Form 8-K.

On August 22, 2013, Warner Chilcott and Plaintiff (together, the "Parties") entered into a memorandum of understanding (the "MOU") setting forth the material terms of the Settlement, which included an agreement by Warner Chilcott that it would make certain supplemental disclosures (the "Supplemental Disclosures") in a Form 8-K filed with the SEC.

Also on August 22, 2013, Warner Chilcott filed a Form 8-K with the SEC containing the Supplemental Disclosures.[1]

On September 10, 2013, Warner Chilcott announced that its stockholders had approved the Transaction Agreement and the Transaction.

On October 1, 2013, Actavis and Warner Chilcott completed the Transaction and, as a result, Warner Chilcott became a wholly owned subsidiary of Actavis.

---

[1] In addition, on August 22, 2013, a second purported shareholder of the Company filed a putative class action lawsuit, captioned *Purnell v. Warner Chilcott Public Ltd. Co.*, Case No. 2.13-cv-5035-WJM-MF, asserting substantially identical claims as the previously filed *Martin* complaint.  On August 26, 2013, the plaintiff in the *Purnell* litigation voluntarily dismissed that litigation.

#84066075v7

Following the execution of the MOU, Class Counsel conducted additional discovery to confirm the reasonableness of the terms of the Parties' agreement, including the depositions of a managing director of Deutsche Bank (Warner Chilcott's financial advisory in connection with the Transaction) and a former member of the Warner Chilcott board of directors.

On April 29, 2014, the parties to the Action entered into a Stipulation and Agreement of Compromise, Settlement, and Release (the "Stipulation"), which sets forth the complete terms of the Settlement.

On _____ ___, 2014, the Court entered an order preliminarily approving the Settlement, certifying the Class for settlement purposes, certifying Plaintiff as the representative of the Class, certifying Class Counsel, setting a schedule for the Court's final review of the Settlement, and establishing customary notice and objection procedures for members of the Class.

## III.    THE SETTLEMENT

As a result of Plaintiff's prosecution and settlement of the Action, and in consideration for the full settlement and release of all Released Claims, Warner Chilcott included the Supplemental Disclosures in a Current Report on Form 8-K filed with the SEC on August 22, 2013.  Warner Chilcott acknowledges that the pendency and efforts to settle the Action were the sole causal factors underlying Warner Chilcott's decision to file with the SEC the Supplemental Disclosures.

## IV.    DISMISSALS AND RELEASES

The Stipulation provides that, subject to the approval of the Settlement by the Court, and pursuant to Federal Rule of Civil Procedure 23, for good and valuable consideration, the Action shall be dismissed on the merits with prejudice and against all members of the Class, and all Released Claims (as defined below) shall be completely, fully, finally, and forever dismissed, released, relinquished, settled, discharged, and dismissed with prejudice and without costs, as to all Released Parties.[2]

---

[2] "Released Parties" means, whether or not any or all of the following persons or entities were named, served with process, or appeared in the Action: (i) Warner Chilcott Public Limited Company, James H. Bloem, Roger M. Boissonneault, John P. Connaughton, Paul Herendeen, Tamar D. Howson, John A. King, Patrick J. O'Sullivan, Deutsche Bank Securities Inc., Actavis Limited, Actavis, Inc., Bank of America Merrill Lynch, and Greenhill & Co.; (ii) any person or entity which is or was related to or affiliated with any or all of the foregoing or in which any or all of them has or had a controlling interest, and which is or was involved in the Transaction; and (iii) the respective past or present family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, foundations, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, shareholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, underwriters, brokers, dealers, lenders, commercial bankers, attorneys, personal or legal representatives, accountants, insurers, co-insurers, reinsurers, and associates, of each and all of the foregoing.

#84066075v7

"Released Claims" means any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including unknown claims, that Plaintiff or any or all other members of the Class ever had, now has, or may have, whether direct, derivative, individual, class, representative, legal, equitable or of any other type, or in any other capacity, based on his, her, or its ownership of Warner Chilcott ordinary shares during the Class Period, against any of the Released Parties (as defined below), whether based on state, local, foreign, federal, statutory, regulatory, common or other law or rule, which arise out of, relate in any way to, or involve any of the actions, transactions, occurrences, statements, representations, misrepresentations, omissions, allegations, facts, practices, events, claims or any other matters, things or causes whatsoever, that have been, could have been, or in the future can or might be alleged, asserted, set forth, claimed, embraced, involved, or referred to in, or related to, the Action or the Transaction; provided, however, that the Released Claims shall not include the right to enforce the Stipulation or the Settlement.

The Stipulation provides that, subject to the approval of the Settlement by the Court, Warner Chilcott shall completely, fully, finally, and forever dismiss, release, relinquish, settle, and discharge Plaintiff and Class Counsel from all claims arising out of the commencement, prosecution, settlement, and resolution of the Action; provided, however, that such release does not include a release of the right to enforce the Stipulation or the Settlement.

If the Settlement becomes final, the releases will extend to any and all claims that Plaintiff or any other member of the Class do not know or suspect exist at the time of the Releases, including, without limitation, those which, if known, might have affected the decision to enter into or to object to the Settlement.  Class members shall be deemed to have expressly waived, relinquished, and released any and all provisions, rights, and benefits conferred by or under any law that may have the effect of limiting the releases set forth above, including section 1542 of the California Civil Code.[3]

If you fall within the Class definition and do not want to be barred from bringing a lawsuit concerning the Released Claims, you must exclude yourself from the Class and the Settlement by timely and validly submitting a Request for Exclusion in accordance with the instructions set forth in Section IX below.

---

[3] Section 1542 of the California Civil Code states:  "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

#84066075v7

## V.      REASONS FOR THE SETTLEMENT

Class Counsel have reviewed and analyzed the facts and circumstances relating to the claims asserted, as known by Plaintiff and his counsel to date, including conducting arm's-length discussions with Warner Chilcott's counsel, analyzing non-public documents produced by Warner Chilcott and documents obtained through public sources, applicable case law, and other authorities, consulting with an independent financial expert, and taking the depositions described above.  Based upon this investigation, Plaintiff decided to enter into the Stipulation and settle the Action after taking into account, among other things, (i) that the litigation of the Action and the Settlement have delivered substantial benefits to the Class; (ii) the facts developed during discovery; (iii) the attendant risks of continued litigation and the uncertainty of the outcome of the Action; (iv) the probability of success on the merits and the allegations made by Plaintiff, including the uncertainty relating to proof of those allegations; and (v) the desirability of permitting the Settlement to be consummated as provided by the terms of the Stipulation.

All Parties have concluded that the terms contained in the Stipulation are fair and adequate to Warner Chilcott, its stockholders, and members of the Class and that it is reasonable to settle the Action based upon the procedures and terms outlined herein and the benefits and protections offered hereby.

Warner Chilcott has denied, and continues to deny, all allegations of wrongdoing, fault, liability, or damage to Plaintiff or the Class, denies that it engaged in any wrongdoing, denies that it committed any violation of law, denies that the S-4 or any other public disclosures were in any way deficient, denies that it acted improperly in any way, believes that it acted properly at all times, believes the Action has no merit, and maintains that it has committed no violation of law whatsoever in connection with the Transaction, but wishes to settle the Action in order to, among other things, (i) eliminate the burden, inconvenience, expense, risk, and distraction of further litigation; (ii) finally put to rest and terminate all of the claims that were or could have been asserted against it; and (iii) thereby permit the Transaction to proceed without risk of injunctive or other relief;

## VI.     CLASS COUNSEL'S ATTORNEYS' FEES AND EXPENSES

After negotiating the substantive terms of the Settlement, the Parties negotiated an award of up to $325,000 for Plaintiffs' attorneys' fees and expenses (including costs, disbursements, and expert and consulting fees) in connection with the Action (the "Fee Application"), which, subject to the terms and conditions of this Stipulation and approval by the Court, will be paid to Plaintiffs' counsel, and which shall be the only fee application made in the Action.  Warner Chilcott agrees not to oppose the amount sought in the Fee Application provided it does not exceed the amount set forth in the preceding sentence.  The Court may consider and rule upon the fairness, reasonableness, and adequacy of the Settlement independently of any award of attorneys' fees and expenses.  Neither the resolution of, nor any ruling regarding, any award of attorneys' fees and expenses shall be a precondition to the Settlement or to the dismissal with prejudice of the Action.

#84066075v7

## VII.    CLASS ACTION DETERMINATION

The  Court has ordered that, for purposes of the Settlement, the Action shall be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2) with the Class defined as set forth above.  Inquiries or comments about the Settlement may be directed to Class Counsel as follows:

> Brian C. Kerr
> BROWER PIVEN,
> A Professional Corporation
> 475 Park Avenue South, 33rd Floor
> New York, NY 10016

## VIII.    SETTLEMENT HEARING

The  Court has scheduled a Settlement Hearing, which will be held  **[-------- --]**, 2014 at **[X:XX x]**.m. Eastern Time, at the District Court for the District of New Jersey, Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Room MLK 5A, Newark, NJ 07101, to (i) determine whether the Settlement should be approved by the Court as fair, reasonable, and adequate; (ii) determine whether an Order and Final Judgment should be entered in the Action pursuant to the Stipulation; (iii) hear and determine any objections to any aspect of the Settlement; (iv) consider the award to Class Counsel of attorneys' fees and expenses; and (v) rule on such other matters as the Court may deem appropriate.

The Court has reserved the right to adjourn the Settlement Hearing or any adjournment thereof, without further notice of any kind to the Class.  The Court has also reserved the right to approve the Settlement at or after the Settlement Hearing with such modification(s) as may be consented to by the parties to the Stipulation and without further notice to the Class.

## IX.    REQUEST FOR EXCLUSION

If you wish to exclude yourself from the Class, you must submit a Request for Exclusion by mailing or delivering a letter or postcard to the Notice Administrator and Class Counsel at the addresses listed below.  To be effective, the Request for Exclusion must include:  (1) your name, address, telephone number, and Social Security number; (2) a clear and unequivocal statement that you wish to be excluded from the Class; (3) identification and evidence of the shares for which you seek exclusion; and (4) your signature.  The Request for Exclusion must be mailed to the Notice Administrator and Class Counsel at the following addresses and postmarked by [_____].

> Brian C. Kerr
> BROWER PIVEN,
> A Professional Corporation
> 475 Park Avenue South, 33rd Floor
> New York, NY 10016
> *Class Counsel*

[To Come]
*Notice Administrator*

You cannot exclude yourself by telephone or by e-mail.

Warner Chilcott may (but are not required to) withdraw from and terminate the Settlement if putative Class members who held in excess of a certain number of shares of Warner Chilcott stock during the Class Period exclude themselves from the Class.

## X.   <u>RIGHT TO APPEAR AND OBJECT</u>

Any member of the Class who (1) objects to any aspect of the Settlement, the dismissal of the Action, the judgment to be entered in the Action, and/or the award of attorneys' fees and expenses to Class Counsel; or (2) otherwise wishes to be heard, may appear in person or by his or her or its attorney at the Settlement Hearing and present evidence or argument that may be proper and relevant.  If you want to do so, however, you must, not later than fourteen (14) calendar days prior to the Settlement Hearing, file with the Court, at the District Court for the District of New Jersey, Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Room MLK 5A, Newark, NJ 07101, the following: (1)  proof of your membership in the Class, (2) a statement of your objections to any matters before the Court, and (3) the grounds thereof, if you wish to appear and be heard, as well as documents or writings you desire the Court to consider.

Also, on or before the date you file such papers, you must serve them by hand or mail upon each of the following attorneys of record:

> Brian C. Kerr
> BROWER PIVEN,
> A Professional Corporation
> 475 Park Avenue South, 33rd Floor
> New York, NY 10016
> *Class Counsel*
>
> Scott B. Luftglass
> DAVIS POLK & WARDWELL LLP
> 450 Lexington Avenue
> New York, NY 10017
> *Counsel to Warner Chilcott*

**Any Class member who does not object to the Settlement or the award of fees and expenses to Class Counsel need not do anything at this time.**

Unless the Court otherwise directs, no person will be entitled to object to the approval of the Settlement or the judgment to be entered in the Action, or otherwise to be heard, except by serving and filing written objections as described above.  Any person who fails to object in the manner described above shall be deemed to have waived the right to object (including the right to appeal) and will be forever barred from raising such objection in this or any other action or proceeding.

- 8 -

## XI.     ORDER AND FINAL JUDGMENT OF THE COURT

If the Court determines that the Settlement is fair, reasonable, and adequate, the parties will ask the Court to enter an Order and Final Judgment, which will, among other things:

1.      approve the Settlement as fair, reasonable, and adequate, pursuant to Federal Rule of Civil Procedure 23;

2.      authorize and direct the performance of the Settlement in accordance with its terms and conditions and reserve jurisdiction to supervise the consummation of the Settlement provided herein; and

3.      dismiss the Action with prejudice on the merits and release the Released Parties from the Released Claims.

## XII.     NOTICE TO THOSE HOLDING STOCK FOR THE BENEFIT OF OTHERS

Brokerage firms, banks, and/or other persons or entities who held shares of Warner Chilcott common stock for the benefit of others are directed promptly to send this Notice to all of their respective beneficial owners (and will be reimbursed for any reasonable expenses incurred in doing so).  If additional copies of the Notice are needed for forwarding to such beneficial owners, any requests for such additional copies may be made to:
[To Come]

## XIII.  SCOPE OF THE NOTICE

This Notice is not all-inclusive.  The references in this Notice to the pleadings in the Action, the Stipulation, and other papers and proceedings are only summaries and do not purport to be comprehensive.  For the full details of the Action, claims asserted by the parties, and the terms and conditions of the Settlement, including a complete copy of the Stipulation, members of the Class are referred to the Court files.  You or your attorney may examine the Court files during regular business hours of each business day at the District Court for the District of New Jersey, Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Room MLK 5A, Newark, NJ 07101.

DO NOT WRITE OR TELEPHONE THE COURT.

Dated:[ _____ __], 2014


Form of notice approved by Court Order Dated _____, 2014

#84066075v7

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CLIFFORD G. MARTIN, Individually and on
Behalf of All Others Similarly Situated,

Plaintiff,

v.

WARNER CHILCOTT PUBLIC LIMITED
COMPANY, et al.,

Defendant,

Civ. No. 2:13-cv-4566
Hon. Esther Salas, U.S. D.J.
Hon. Michael A. Hammer, U.S.M.J.

---

## ORDER AND FINAL JUDGMENT

A hearing having been held before this Court (the "Court") on _____ __, 2014, pursuant to the Court's Order of _____ __, 2014 (the "Preliminary Approval Order"), upon a Stipulation and Agreement of Compromise, Settlement, and Release, executed on April 29, 2014 (the "Stipulation"), in the above-captioned, consolidated class action (the "Action"), which Preliminary Approval Order and Stipulation are incorporated herein by reference; it appearing that due notice of said hearing was given in accordance with the aforementioned Preliminary Approval Order and that said notice was adequate and sufficient; and the parties having appeared by their attorneys of record; and the attorneys for the respective parties having been heard in support of the proposed settlement (the "Settlement") of the Action; and an opportunity to be heard having been given to all other persons desiring to be heard as provided in the notice; and the entire matter of the Settlement having been considered by the Court,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, this ___ day of _____, 2014, as follows:

#84066076v7

1.      Unless otherwise defined herein, all defined terms shall have the meanings as set forth in the Stipulation.

2.      The Notice of Pendency and Settlement of Class Action, Settlement Hearing, and Right to Appear (the "Notice") has been given to the Class (as defined herein) pursuant to and in the manner directed by the Preliminary Approval Order; proof of the mailing of the Notice was filed with the Court; and full opportunity to be heard (and, with respect to potential members of the Class (as defined below), an opportunity to request exclusion from the Class) has been offered to all parties, the Class, and persons in interest.  The form and manner of the Notice is hereby confirmed to have been the best notice practicable under the circumstances and to have been given in full compliance with each of the requirements of Federal Rule of Civil Procedure 23, due process, and applicable law, and it is further determined that, unless otherwise indicated herein, all members of the Class are bound by the Order and Final Judgment herein.

3.      Based on the record in the Action, the Court reconfirms that each of the pertinent provisions of Federal Rule of Civil Procedure 23 has been satisfied, and that the Action should be properly maintained according to the provisions of Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2).  Specifically, the Court finds that (a) the Class is so numerous that joinder of all members is impracticable; (b) there are common questions of law and fact, including whether the disclosures made by Warner Chilcott in connection with the Transaction were adequate and whether Plaintiff and any members of the Class were injured as a consequence of the Warner Chilcott's actions; (c) the claims of Plaintiff are typical of the claims of the Class in that they all arise from the same allegedly wrongful course of conduct and are based on the same legal theories; and (d) Plaintiff and Class Counsel (as defined below) have fairly and adequately protected and represented the interests of the Class.  Moreover, the prosecution of separate

- 2 -

actions by individual members of the Class would create a risk of inconsistent adjudications which would establish incompatible standards of conduct for Warner Chilcott, and, as a practical matter, the disposition of this Action will influence the disposition of any pending or future identical cases brought by other members of the Class, satisfying Rule 23(b)(1); and there were allegations that Warner Chilcott acted or refused to act on grounds generally applicable to the Class, satisfying Rule 23(b)(2).

4.     The Court reconfirms that the Action is certified as a class for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), of any and all record holders and beneficial owners of ordinary shares of Warner Chilcott (which are traded on the NASDAQ) who held such shares at any time during the period beginning on February 1, 2012 through and including October 1, 2013 (the "Class Period"), including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, assigns and transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors in interest, predecessors, successors in interest, successors, and assigns, but excluding (a) Warner Chilcott; and (b) [insert the names of any shareholders who have timely and properly sought exclusion from the Class] (the "Class").

5.     The Court reconfirms Plaintiff as the representative of the Class.  The law firms Brower Piven, A Professional Corporation and Brodsky & Smith, LLC are reconfirmed as Class Counsel in the Action.

#84066076v7

6.     The Settlement is found to be fair, reasonable, and adequate, and is hereby approved pursuant to Federal Rule of Civil Procedure 23.  The parties to the Stipulation are hereby authorized and directed to comply with and to consummate the Settlement in accordance with its terms and provisions, and the Clerk is directed to enter and docket this Order and Final Judgment in the Action.

7.     This Court has jurisdiction over the subject matter of the Action, including all matters necessary to effectuate the Settlement and this Order and Final Judgment and over all parties to the Action.

8.     The Action and the Released Claims are hereby dismissed on the merits with prejudice as to Warner Chilcott and against all members of the Class on the merits and, except as provided in the Stipulation, without fees or costs (except as provided below in paragraph 15).

9.     Any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims, which Plaintiff or any or all other members of the Class ever had, now has, or may have, whether direct, derivative, individual, class, representative, legal, equitable or of any other type, or in any other capacity, based on his, her, or its ownership of Warner Chilcott ordinary shares during the Class Period, against any of the Released Parties (as defined below), whether based on state, local, foreign, federal, statutory, regulatory, common or other law or rule, which arise out of, relate in any way to, or involve any of the actions,

- 4 -

transactions, occurrences, statements, representations, misrepresentations, omissions, allegations, facts, practices, events, claims or any other matters, things or causes whatsoever, that have been, could have been, or in the future can or might be alleged, asserted, set forth, claimed, embraced, involved, or referred to in, or related to, the Action or the Transaction (collectively, the "Released Claims"), are individually and collectively, completely, fully, finally, and forever dismissed, released, relinquished, settled, and discharged; provided, however, that the Released Claims do not include the right to enforce the Stipulation or the Settlement.

10.    Warner Chilcott shall and hereby does completely, fully, finally, and forever dismiss, release, relinquish, settle, and discharge Plaintiff and Class Counsel from all claims arising out of the commencement, prosecution, settlement, and resolution of the Action; provided, however, that such release does not include a release of the right to enforce the Stipulation or the Settlement.

11.    "Released Parties" means, whether or not any or all of the following persons or entities were named, served with process, or appeared in the Action: (i) Warner Chilcott Public Limited Company, James H. Bloem, Roger M. Boissonneault, John P. Connaughton, Paul Herendeen, Tamar D. Howson, John A. King, Patrick J. O'Sullivan, Deutsche Bank Securities Inc., Actavis Limited, Actavis, Inc., Bank of America Merrill Lynch, and Greenhill & Co.; (ii) any person or entity which is or was related to or affiliated with any or all of the foregoing or in which any or all of them has or had a controlling interest, and which is or was involved in the Transaction; and (iii) the respective past or present family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, foundations, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents,

- 5 -

subsidiaries, divisions, affiliates, associated entities, shareholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, underwriters, brokers, dealers, lenders, commercial bankers, attorneys, personal or legal representatives, accountants, insurers, co-insurers, reinsurers, and associates, of each and all of the foregoing.

12.     The releases include any and all Unknown Claims.  Plaintiff and each and every member of the Class shall be deemed to have expressly waived, relinquished, and released any and all provisions, rights, and benefits conferred by or under any law of the United States or any state or territory of the United States, or principle of common law or foreign law, which may have the effect of limiting the Releases.  In particular, Plaintiff and each and every member of the Class shall be deemed by operation of law to have waived, relinquished, and released, to the fullest extent permitted by law, the provisions, rights, and benefits of section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiff and each and every member of the Class shall be deemed to have waived, relinquished, and released, to the extent they are applicable, and to the fullest extent permitted by law, the provisions, rights, and benefits of any law of any state or territory of the United States, federal law, or principle of common law, which is similar, comparable, or equivalent to section 1542 of the California Civil Code.  The parties to the Stipulation acknowledged, and the members of the Class by operation of law shall be deemed to have acknowledged, that the inclusion of Unknown

- 6 -

#84066076v7

Claims in the definition of Released Claims was separately bargained for and was a material element of the Settlement, and was relied upon by each and all of the parties in entering into the Settlement.

13.     Plaintiff and each and every member of the Class are hereby permanently barred and enjoined from asserting, commencing, prosecuting, assisting, instigating, continuing, or in any way participating in the commencement or prosecution of any action, whether directly, representatively, derivatively, or in any other capacity, asserting any claims that are, or relate in any way to, the Released Claims that are released pursuant to this Order and Final Judgment or under the Stipulation.

14.     Neither the Stipulation, the Settlement, this Order and Final Judgment, nor any act performed or document executed pursuant to or in furtherance of the MOU, the Stipulation, or the Settlement (i) is or may be deemed to be or may be used as an admission of, concession of, or evidence of, the validity or lack of validity of any Released Claims or any wrongdoing or liability of Defendants; (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal; or (iii) is or may be alleged or mentioned so as to contravene clause (i) above in any litigation or other action unrelated to the enforcement of the Stipulation.  Notwithstanding the foregoing, any of the Released Parties may file the Stipulation or any judgment or order of the Court related hereto, in any action that may be brought against them, in order to support any and all defenses or counterclaims based on *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim.

15.    Class Counsel are hereby awarded attorneys' fees and expenses in the total amount of $_____, which sum the Court finds to be fair and reasonable, and which shall be paid to Class Counsel in accordance with the terms of the Stipulation.

16.    The effectiveness of the Order and Final Judgment and the obligations of Plaintiff, Class Counsel, the Class, and Defendants under the Settlement shall not be conditioned upon or subject to the resolution of any appeal that relates solely to the issue of attorneys' fees and expenses.

17.    The Court further orders, adjudges, and decrees that all other relief be, and is hereby, denied, and that this Order and Final Judgment disposes of all the claims and all the parties in the above-styled and numbered action.

18.    Without affecting the finality of this Order and Final Judgment in any way, this Court retains jurisdiction over all matters relating to the administration and consummation of the Settlement and all parties hereto for the purpose of construing, enforcing, and administering the Settlement.

19.    All parties shall bear their respective attorneys' fees, costs, and other expenses consistent with the provisions set forth herein.

Dated: _____

_____
Honorable Esther Salas, U.S.D.J.

#84066076v7